IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DAVID F. JADWIN, D.O.,

    Plaintiff,

      vs.

COUNTY OF KERN, et al.,

    Defendants.

_____/

Case No. 1:07-cv-0026-OWW-TAG

ORDER GRANTING IN PART AND
DENYING IN PART SUBMITTED
ISSUES ON MOTIONS TO COMPEL
DISCOVERY RESPONSES

(Docs. 95, 96)

      On April 28, 2008, the Court heard Plaintiff's motion to compel the further deposition of Patricia Perez and request for sanctions (Doc. 95), and Plaintiff's motion to compel Defendant County of Kern's further responses to interrogatories and request for sanctions (Doc. 96).  The Court ruled from the bench as to both motions, but took under submission Plaintiff's request for $4,718.76 in sanctions as to the first motion, and Plaintiff's request for an order compelling further responses to interrogatories 46 and 47 and $2,000 in sanctions as to the second motion. The Court has read and considered the pleadings and the arguments presented, and makes the following ruling.

- 1 -

## A.      Discovery Overview

The purpose of discovery is to make trial "less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest extent possible," United States v. Proctor & Gamble, 356 U.S. 677, 683, 78 S. Ct. 983 (1958), and to narrow and clarify the issues in dispute, Hickman v. Taylor, 329 U.S. 495, 501, 67 S. Ct. 385 (1947).

Federal Rule of Civil Procedure 26(b)(1) defines the general scope of discovery, and provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense --including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action.  Relevant  information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.  All discovery is subject to the limitations imposed by Rule 26(b)(2).

"The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objection." Oakes v. Halvorsen Marine Ltd., 179 F.R.D. 281, 283 (C.D. Cal. 1998); Nestle Foods Corp. v. Aetna Casualty and Surety Co., 135 F.R.D. 101, 104 (D. N.J. 1990).

## B.      Deposition Standards

The Federal Rules governing depositions informs the conduct at depositions. Federal Rule of Civil Procedure 30(c)(2)  provides that:

> An objection at the time of the examination--whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition-- must be noted on the record , but the examination still proceeds; the testimony is taken subject to any objection.  An objection must be stated concisely in a nonargumentative and nonsuggestive manner.  A person may instruct a deponent not to answer only when necessary to preserve a privilege, enforce a limitation directed by the court, or to present a motion under Rule 30(d)(3).[1]

---

[1]Rule 30 (d)(3) refers to motion to terminate or limit a deposition.

An attorney representing a deponent or a party may object to questions asked a witness, provided the objections do not disrupt the deposition.  Disruptive objections are those that unduly prolong or unfairly frustrate a deposition, such as objections that are lengthy, involve colloquy, or suggest how the deponent should respond to a question.  Federal Rule of Civil Procedure § 30(d)(3) provides that:

> (3) Motion to Terminate or Limit.
>
>  (A) Grounds.  At any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party.  The motion may be filed in the court where the action is pending or the deposition is being taken.  If the objecting deponent or party so demands, the deposition must be suspended for the time necessary to obtain an order.
>
>  (B) Order.  The court may order that the deposition be terminated or may limit its scope and manner as provided in Rule 26(c).  If terminated, the deposition may be resumed only by order of the court where the action is pending.
>
>  (C) Award of Expenses.  Rule 37(a)(5) applies to the award of expenses.

When a deponent fails to answer a question or provides an evasive or incomplete answer, the remedy is a motion for an order compelling an answer or seeking a protective order. Fed.R.Civ.P. 30(d), 37(a)(3)(B), (a)(4).

## C.    Interrogatory Standards

Functions of interrogatories include obtaining evidence, information which may lead to evidence and admissions, and to narrow issues to be tried.  <u>United States v. West Virginia Pulp & Paper Co.</u>, 36 F.R.D. 250, 252 (S.D. N.Y. 1964).  Each interrogatory must "to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). If there are grounds for objecting, the grounds  "must be stated with specificity.  Any ground not stated in a timely fashion is waived unless the court, for good cause, excuses the failure." Fed. R. Civ. P. 33(b)(4). "The responding party must serve its answers and any objections within 30 days after being served with the interrogatories."  Fed. R. Civ. P. 33(b)(2).

///

1    "Parties must provide true, explicit, responsive, complete, and candid answers to

2    interrogatories."  Hansel v. Shell Oil Corp., 169 F.R.D. 303, 305 (E.D. Pa. 1996).  If a

3    responding party is unable to supply requested information, "the party may not simply refuse to

4    answer, but must state under oath that he is unable to provide the information and 'set forth the

5    efforts he used to obtain the information.'"  Hansel, 169 F.R.D. at 305 (quoting Milner v.

6    National School of Health Tech., 73 F.R.D. 628, 632 (E.D. Pa. 1977)).  Fed. R. Civ. P. 33 "is to

7    be given a broad and liberal interpretation in the interest of according to the parties the fullest

8    knowledge of the facts and of clarifying and narrowing the issues."  West Virginia Pulp & Paper

9    Co., 36 F.R.D. at 252.

10   **D.    Expenses and Sanctions**

11          When a motion for an order compelling discovery is granted, "the court must, after giving

12   an opportunity to be heard, require the party or deponent whose conduct necessitated the motion,

13   the party or attorney advising that conduct, or both to pay the movant's reasonable expenses

14   incurred in making the motion,  including attorney's fees. But the court must not order this

15   payment if: . . . (ii) the opposing party's nondisclosure, response, or objection was substantially

16   justified; or (iii) other circumstances make an award of expenses unjust.  Fed. R.Civ.P.

17   37(a)(5)(A).   Additionally, when the conduct  "impedes, delays, or frustrates the fair

18   examination of the deponent, the court may impose further "appropriate  sanctions," including

19   "the reasonable expenses and attorney's fees incurred by any party." Fed. R. Civ.P. 30(d)(2).

20   What constitutes reasonable expenses and appropriate sanctions is a matter for the Court's

21   discretion.  See Biovail Laboratories, Inc. v. Anchen Pharmaceuticals, Inc. 233 F.R.D. 648, 654

22   (C.D.Cal. 2006).

23   **E.    Analysis**

24          1.  Request for Sanctions on Motion to Compel Further Deposition

25          The Court granted Plaintiff's motion to compel the further deposition of Patricia Perez.

26   Because the motion was granted, the Court must determine whether an award of expenses is

27

28                                            - 4 -

appropriate.  The Court has read and considered the transcript of the deposition of Patricia Perez.  Ms. Perez testified that she is a clerical worker at Kern Medical Center.  The transcript reflects that Defendant's attorney did not instruct the witness not to answer a question, did not advise her to give an evasive answer, and did not move to suspend the deposition.  At worst, he made lengthy objections that included colloquy with Plaintiff's attorney, and in one instance told Plaintiff's attorney that his question was ridiculous[2] and the witness would not answer the question - although the transcript also reflects that the question eventually was answered.  The transcript also reflects that the conduct of Plaintiff's attorney was similarly not entirely conducive to an efficient deposition.  Many of the questions he asked appeared to confuse the witness, he noted his dissatisfaction with some of her answers, and at times he asked the witness questions that bordered on being derisive.  For example, when the witness repeatedly testified that she did not recollect when she received a particular document,  Plaintiff's attorney asked her if she remembered her birthday,  her home address, and the name of her attorney.

The following excerpt illustrates the occasional tenor of the deposition:

"Plaintiff's attorney: How many people were in payroll in 2006?

Witness: I don't remember.

Plaintiff's attorney: Was it a hundred people?

Witness: No.

Plaintiff's attorney: Was it one million people?

Witness: No.

Plaintiff's attorney: What's your estimate of how many people were in the payroll department in 2006?

Witness: My estimate -

Defendant's attorney: If she doesn't know, she doesn't know.

Plaintiff's attorney : If you don't know, don't answer.

---

[2]Plaintiff's attorney asked the following question: "So sitting here now as of today you can't tell me whether there's one million people in the payroll department?

1    Defendant's attorney: She already did.  She told you she didn't know.

2    Plaintiff's attorney: I'm asking for her estimate, Mark.

3    Defendant's attorney: She told you she didn't know.

4    Witness: I don't know.

5    Plaintiff's attorney: So sitting here now as of today you can't tell me whether
     there's one million people in the payroll department?

6
     Defendant's attorney: Counsel, that's ridiculous. She's not going  answer that
7    question.

8    Plaintiff's attorney: I'm asking for an estimate, Mark.

9    Defendant's attorney: No, not on none of those terms.  That's a ridiculous
     question.
10
     Witness: I can give you an answer if you just want an answer.
11
     Plaintiff's attorney: No, I don't want an answer. I want your estimate, your best
12   estimate.

13   Defendant's attorney. She can't do that. She doesn't know.  Move on.

14   Witness: I don't handle the staffing."

15
           Towards the end of the deposition, the witness was asked to describe the physical size of
16
     the human resources department, and was asked to estimate the number of people in the payroll
17
     department, whereupon the following exchange took place.
18
           "Plaintiff's attorney: Is it all six of the payroll department members that receive
19         leave of absence request forms for processing?

20   Witness: Rephrase that.

21   Plaintiff's attorney: Who among the payroll department members typically
     receives leave of absence request forms for processing?
22
     Witness: They are put in a yellow binder, and whoever is the person who has time
23   to –who's finished with their tasks, and they pick it up.  There's not a certain
     person.
24
     Plaintiff's attorney: So in other words - -
25
     Witness: We all work as a team.
26
     Plaintiff's attorney:  Okay. So in other words, all six of the members of the payroll
27

28                                            - 6 -

department are responsible for processing leave of absence request forms. Correct?

Witness: No.

Plaintiff's attorney:  Okay, I'm a little confused.  You said all of you worked as a team, but not all six of you are responsible.

Witness: Yeah.

Plaintiff's attorney: Correct? Okay.  So who is responsible for processing leave of absence  request forms in the payroll department?

Witness:  I'm sorry, rephrase that.

Plaintiff' attorney: Ms. Perez, we're going to be here all day just so you know.  I mean, I'm happy to do it, but your depo is going to be a lot longer than necessary if we can't get some kind of simple answers.

Defendant's attorney: Well, you've got to ask better questions, counsel.  Don't blame Ms. Perez,  She's doing her best.

Plaintiff's attorney: Well, Mark,, I'm asking very simple questions.

Witness: You're asking me how big is a building.

Plaintiff's attorney: What's unreasonable about that, Ms. Perez.

Defendant's attorney: Well, we could debate what it has to do with the lawsuit, counsel.  You might explain to us what the size of the human resources office has to do with Dr. Jadwin's claims, but we're not even going there because I know you can't.

Plaintiff's attorney: No, that is not true, Mark.

Defendant's attorney: So we're going to spend a lot of time.  As her how big the building  is.  Ask her. I mean, take your time.

Plaintiff's attorney:  Mark, first of all, yeah, actually I do have a purpose for it, but that's  all right.  I won't reveal it to you, Mark.

Defendant's attorney: Good.

Plaintiff 's attorney: Yeah.

Defendant's attorney: Don't reveal it. What's your question now.

Plaintiff's attorney: Ms. Perez, I'm gong to ask you one more time.

Witness. Yes.

Plaintiff's attorney: It's a simple question. Okay. Who in the payroll department is

responsible for processing leave of absence request forms.

Witness: The payroll department.

Plaintiff's attorney: I said who.

Witness: There's not a direct person responsible."

The deposition transcript as a whole reflects increasing frustration on the part of the witness and both attorneys.  However, it does not reflect conduct that rises to the level of being hostile, uncivil, or vulgar, or that constitutes a wilful exploitation of the discovery process. Based on the transcript of the deposition, the Court concludes that the tenor of the deposition was occasionally but not remarkably tense, the witness did not refuse to answer questions, and Defendant's attorney did not move to suspend the deposition.  Under these circumstances, an award of expenses or sanctions would be unjust.  Plaintiff's request for sanctions is denied. (Doc. 95).

    2.  <u>Motion to Compel Further Responses to Interrogatories 46 and 47</u>

Interrogatory 46 states:

"Identify each document or portion thereof contained in Plaintiff's FRCP Rule 26 initial disclosure that you contend is privileged; state the name of each privilege asserted; and state in detail the factual basis for each asserted privilege."

Defendant's Response:

"We do not understand this Interrogatory and are consequently unable to answer it. What is privileged about the documents Plaintiff produced?"

Interrogatory 47 states:

Identify each document or portion thereof contained in your FRCP Rule 26 initial disclosure that you contend is privileged; state the name of each privilege asserted; and state in detail the factual basis for each asserted privilege.

Defendant's Response:

"We do not understand this Interrogatory and are, consequently, unable to answer it.  Are you inquiring about our privilege log? "

1    Defendant's confusion about these two interrogatories is understandable.  Interrogatory

2   46 asks Defendant to identify and explain why it claims a privilege in documents disclosed by

3   Plaintiff.  Interrogatory 47 asks Defendant to identify and explain why it claims a privilege in

4   documents disclosed by Defendant.  In effect, these two contention interrogatories seek

5   production of a privilege log as to all documents disclosed by either side in their initial

6   disclosures.

7    A primary purpose of privilege is to protect legally confidential information.  Defendant's

8   obligation to assert a privilege relates only to documents that Defendant has withheld  from

9   disclosure - not to documents that Plaintiff has disclosed.  It is unlikely that Defendant would

10   claim a privilege in documents disclosed by Plaintiff, unless they contain confidential patient

11   health information.  Protection of patient health information has been addressed by at least two

12   prior orders in this case  (Docs. 29, 124).  Defendant's obligation to assert a privilege and

13   identify any privileged documents withheld from its initial disclosure, was triggered when the

14   initial disclosure was made and any document was withheld.  That time has already passed.

15    Moreover, neither of these two interrogatories seeks evidence.  As Plaintiff's attorney

16   represented at the hearing on this motion, the purpose of interrogatories 46 and 47 is

17   to require Defendants to state "which documents in the initial disclosures they will be claiming a

18   privilege challenge to admissibility."  In other words, Plaintiff wants to know during discovery,

19   precisely which documents Defendants will raise a privilege objection to at the trial.  Plaintiff has

20   provided no legal authority for the proposition that contention interrogatories may be used in this

21   manner, and the Court has found no such authority in its own research on this issue.  The Court

22   concludes that interrogatories 46 and 47 are beyond the scope of permissible discovery.

23   Fed.R.Civ.P. 26(b), 33(a)(2).  The motion to compel further responses to these interrogatories is

24   denied.

25   ///

26   ///

27

28                                                      - 9 -

1

3. <u>Request for Sanctions on Motion to Compel Further Interrogatory Responses</u>

2

Plaintiff's motion sought an order compelling further responses to ten interrogatories.

3

At the hearing on this motion, the Court ordered Defendant to provide further responses to

4

Interrogatories 1-7, and 48, and in this order has denied the motion to compel further responses

5

to interrogatories 46 and 47.  Accordingly, the motion to compel further interrogatory responses

6

(Doc. 96) is granted in part and denied in part.

7

When a motion to compel discovery responses is granted in part and denied in part, the

8

Court may, after giving an opportunity to be heard, apportion the reasonable expenses for the

9

motion.  Fed. R. Civ. P. 37(a )(5)(C).  Plaintiff has requested $2,000 in attorney's fees.

10

However, the declaration of Plaintiff's attorney does not provide an itemization and description

11

of the work performed, other than a statement that he has "spent and anticipate[s] spending

12

substantially in excess of 5 hours meeting and conferring with [opposing attorney] by phone, fax,

13

letter and email, researching and drafting these moving papers and attending the motion hearing

14

in Bakersfield, CA."  The declaration also fails to state that the fees incurred on the motion have

15

been charged to Plaintiff or that they are reasonable.  In the absence of this information, the Court

16

is unable to determine whether the fees incurred by Plaintiff were reasonable.  Plaintiff's request

17

for $2,000 in sanctions is denied without prejudice.

18

**ORDERS**

19

Based on the foregoing, IT IS HEREBY ORDERED that:

20

1.  Plaintiff's motion for an order to compel further answers to interrogatories 46 and 47

21

(Doc. 95) is DENIED, and Plaintiff's request for sanctions on the motion is DENIED without

22

prejudice; and

23

2.  Plaintiff's request for sanctions on the motion to compel the further deposition of

24

Patricia Perez (Doc. 96) is DENIED.

25

IT IS SO ORDERED.

26

Dated:   **May 13, 2008**                                               **/s/ Theresa A. Goldner**
                                                                                  UNITED STATES MAGISTRATE JUDGE

27

28