UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID F. JADWIN. D.O., | 1:07-cv-00026-OWW-TAG |
| Plaintiff, | ORDER ON LETTER REQUEST REGARDING DISCOVERY DISPUTE |
| vs. | (Doc. 202) |
| JENNIFER ABRAHAM, etc. et al., | ORDER REGARDING APPOINTMENT OF SPECIAL MASTER FOR DEPOSITIONS |
| Defendants. | |

On August 21, 2008, Plaintiff filed a letter "request" for a protective order, sanctions, and an order compelling answers to questions posed by Plaintiff's counsel at two August 19, 2008 depositions. (Doc. 202). On August 21, 2008, the Court conducted a conference regarding the discovery dispute. Attorney Eugene Lee appeared telephonically on behalf of Plaintiff. Attorney Mark Wassser appeared telephonically on behalf of Defendants. The Court makes the following orders regarding the discovery dispute that is the subject of the letter request and additional matters addressed at the hearing.

1. Background

Numerous depositions have been noticed in this case, and the discovery deadline is imminent. According to Defendants, Plaintiff has commenced 12 depositions, concluded only one of them, and adjourned the rest because of discovery disputes that arose during the depositions. To date, at least six of the depositions have been the subject of informal e-mail, telephone, and letter requests for judicial intervention during the depositions. According to Plaintiff, another recent deposition is also about to become the subject of a request for judicial intervention because of discovery disputes that arose during an August 21, 2008 deposition. (Doc. 202, pp. 4-5).

The relationship between Plaintiff's counsel and Defendants' counsel is strained at best.

Aside from the informal requests for judicial intervention, the strained relationship between counsel is evidenced by the fact that both of them have found it necessary to separately film each deposition. Plaintiff's counsel uses two web cameras to film the depositions.  One of his web cameras is trained on the deponent, and the other is trained on Defendants' counsel.  However, neither Defendants nor their counsel have objected to this arrangement.  Defendants have also arranged to have most of the depositions videotaped by a professional videographer.  According to counsel, this duplicative filming has, for the most part, improved the conduct of the depositions.  But it has not prevented on-going discovery disputes regarding the depositions.

2. <u>Deposition of Antoinette Smith</u>

The instant letter request for judicial intervention was triggered by Plaintiff's deposition of Ms. Antoinette Smith.  Ms. Smith is the Chief Nursing Officer at Kern Medical Center.  During the deposition, Plaintiff's counsel, Mr. Lee, deployed two web cameras. One of his web cameras was trained at Ms. Smith and the other was trained at Defendants' counsel, Mr. Wassser.  Defendants did not have a videographer present at the deposition.  Two significant disputes arose at this deposition, and the deposition was ultimately adjourned before completion by Plaintiff's counsel.  The first dispute occurred when Defendants' counsel objected to a question posed to Ms. Smith on the ground that it was repetitive, and instructed her not to answer the question.  The second dispute occurred when Plaintiff's counsel stated that he heard  "foot tapping" and repeatedly asked Ms. Smith if she was being signaled by foot taps from Defendants' counsel.  These disputes will  be addressed in reverse order.

     A. <u>The foot tapping and web camera incident</u>

Approximately two hours into Ms. Smith's deposition, Plaintiff's counsel asked Ms. Smith if Defendants' counsel was "tapping" on her foot.  Plaintiff's counsel stated on the record that he heard a tap, looked under the table, and saw Defendants' counsel's foot next to the witness's foot.  He asked Ms. Smith "is there a system that you guys have worked out?" When the witness replied no, Plaintiff's counsel continued to ask her if she was being signaled by her attorney.  Ms. Smith replied "No, sir. Absolutely not." Despite Ms. Smith's repeated denials under oath, Plaintiff's counsel continued to ask her if she was being signaled to answer in a certain way.  The transcript attached to Plaintiff's letter

1  request (Doc. 202-2, pp. 80-85)[1] reflects that after numerous questions on this subject, Defendants'
2  counsel took one of the web cameras and pointed it at his own feet.  The relevant portions of the
3  transcript is set forth below, to provide the context of this dispute.

*Question by Attorney Lee ( Plaintiff's counsel:)  So you're under oath Ms. Smith.  Are you sure you have not worked out a system of foot taps with Mr. Wassser, your attorney, to feed you answers or suggest them?*

*Answer:       I have never been so sure of anything in my life.*

*Mr. Lee:      Okay.*

*Answer:       It's an adamant no.*

*Mr. Lee:      Okay. Good. That's good to hear. Okay. I do note that Mr. Wassser's leg and foot continue to remain very close to Ms. Smith.*

*Mr. Wassser (Defendants' counsel):  My feet are not close to Ms. Smith.  Why don't you come over here and look at them.*

*Mr. Lee:      Yeah. I see it's - -*

*Mr. Wassser:  Why don't you bring the camera.  Here, let's take the camera - -*

*Mr. Lee:      I see it's about - - no. Excuse me, you're going to damage my camera.*

*Mr. Wassser:  That's where I'm sitting.  That's where I'm sitting. Okay? So we got on that tape.  We're going to leave it like this, just like this.*

*Mr. Lee:      Can you please let go of my camera, please. That's  my equipment, Mr. Wassser.*

*Mr. Wassser:  Well, but it's videotaping the situation of my feet. And that's  how they've been for  - - my feet have been in a situation they're in right now for maybe the last five minutes.*

*Mr. Lee:      Mr. Wassser, I'm going to have to warn you that if you touch my equipment again that you're not going to like what happens.*

*Mr. Wassser:  Well, don't threaten me but - -*

*Mr. Lee:      I'm not threatening you. I'm just telling you, you're not going to like what*

---

[1] The transcript provided by Plaintiff is noted as a "rough draft, not a certified transcript."

1  *happens next.*
2  *Mr. Wassser:  You're not going to make misstatements about something like that without me*
3  *verifying the facts.  You have the camera here. We're going to use it.*
4  *Mr. Lee:       Mr. Wassser, you're not to touch my equipment again. Do you understand?*
5  *Mr. Wassser:  I will touch the camera.   Anytime you misstate the facts, counsel, we will put*
6  *it on the record, which I just did.  Now, continue, please.*
7  *Mr. Lee:       Mr. Wassser, I'm just going to tell you again if you touch my camera again*
8  *you're not going to like what happens.*
9  *Mr. Wassser:   Why don't you finish the threat, sir.  What are you going to do to me?*
10 *Mr. Lee:       I'm just telling you,  Mr. Wassser, don't touch my equipment again.*
11 *Mr. Wassser:  I will touch your camera anytime I need to verify the conditions in the room to*
12 *counter your misstatements.  Now please continue.*
13 *Mr. Lee:       Mr. Wassser,  I'm just telling you not to touch it again.*
14 *Mr. Wassser:  I've heard you. Continue.*
15 *Mr. Lee:       Touch it again , and you're going to regret it.*
16 *Mr. Wassser:  Thank you, counsel.  I'll do whatever I want to verify the conditions in the*
17 *room that - -*
18 *Mr. Lee:       You can do that with your camera.  You and do it with your equipment.  You're*
19 *not to touch my equipment again.*
20 *Mr. Wassser:  I will if I - -*
21 *Mr. Lee:       Do you understand?*
22 *Mr. Wassser:   - - need to.  No.  Continue.*
23 *Mr. Lee:       No.  You're not going to touch my equipment if you need to.  Do you*
24 *understand.*
25 *Mr. Wassser:  No.*
26 *Mr. Lee:       You don't understand.*
27 *Mr. Wassser:  Continue with the deposition.*
28

**4**

| | | |
|---|---|---|
| 1 | *Mr. Lee:* | *Are you going to touch my computer next?* |
| 2 | *Mr. Wassser:* | *Continue with the deposition, Counsel.* |
| 3 | *Mr. Lee:* | *Am I permitted to touch your phone if I need to make a call, Mr. Wassser?* |
| 4 | *Mr. Wassser:* | *Do you want to borrow my phone?* |
| 5 | *Mr. Lee:* | *Yeah. Can I do that?* |
| 6 | *Mr. Wassser:* | *Here.* |
| 7 | *Mr. Lee:* | *Yeah.* |
| 8 | *Mr. Wassser:* | *Well, thank you very much.* |
| 9 | *Mr. Wassser.* | *Make the call.* |
| 10 | *Mr, Lee:* | *I'll be holding on to this, then.* |
| 11 | *Mr. Wassser:* | *No, give it back if you're not going to make a call.* |
| 12 | *Mr. Lee:* | *No. I'm going to be - - I do need to verify - - I've got to take a picture.* |

13  *Mr. Wassser:*  *Is that what we're going to do? Give me my phone back. If you want to*
14 *borrow it, I'll give it to you.*

15  *Mr. Lee:*  *Okay. Mr. Wassser, put my cameras back.*

16  *Mr. Wassser:*  *Give me my phone back.*

17  *Mr. Lee:*  *Thank you. You know, when lawyers go to law school that they regress a little*
18 *bit in maturity, I guess. Mr. Wassser has regressed in his age here.*

19  *I'm going to ask you again not to touch my camera, Mr. Wassser. It's not your*
20 *equipment.*

21  *Okay. Ms. Smith, you are under oath and you do understand that if your*
22 *attorney is signaling under the table to suggest answers to you that's not appropriate. Do you*
23 *understand that?*

24  *Mr. Wassser:*  *No signaling going on, Counsel.*

25  *Mr. Lee:*  *Okay. You know what? We're adjourning this deposition. I've asked you*
26 *not to touch my equipment multiple times. You continue to touch my camera. Let me just tell you right*
27 *now - -*

28

**5**

*Mr. Wassser: Don't make misstatements.*

*Mr. Lee:      Let the record reflect that Mr. Wasser has grabbed the camera by the stalk. The instructions on the camera specifically state you're only to grab it by the base. If you've damaged that camera, I'm going to ask for - - you to pay for that.*

*Mr. Wassser: Don't make - -*

*Mr. Lee:      Do you understand?*

*Mr. Wassser: Don't make statements - -*

*Mr. Lee:      Mr. Wassser, we're adjourning this deposition. You've  - - I suspect you've damaged my camera. It's not working. It's 11:21. We are off the record.*

*(End of transcript). (Doc. 202-2).*

B. <u>Relief requested</u>

Plaintiff's counsel seeks a protective order prohibiting Defendants' counsel from "touching or threatening to touch [his] personal property again without [his] permission." He also seeks sanctions against Defendants' counsel for damaging his personal property during Ms. Smith's deposition.

(1) <u>Protective order re personal property</u>

Fed. R. Civ. P. 26 (c) authorizes the Court to issue a protective order when the party seeking the order establishes good cause for it and it is necessary to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. The party seeking the protective order has the burden to persuade the court that a protective order is needed. Here, Plaintiff's counsel contends that he needs a protective order to protect against damage to his personal property at depositions, presumably, a web camera that he had trained on Defendants' counsel throughout the deposition. The Court finds it to be wholly inappropriate to train a dedicated web camera on opposing counsel throughout a deposition, and notes that the presence of such a camera, in and of itself, is likely to annoy one's opposing counsel. Nevertheless, the Court also notes that Defendants' counsel has not objected to the use of the web camera.

After reviewing the transcript of Ms. Smith's deposition and considering the conduct of both counsel during the deposition, as highlighted by the foregoing transcript excerpt,  the Court finds that

the conduct of Plaintiff's counsel and Defendants' counsel pertaining to the "foot tapping and web camera incident" establishes good cause for the issuance of a protective order against both counsel, to protect each of them from annoyance by the other during depositions.  Defendants' counsel should have refrained from moving the web camera.  Plaintiff's counsel should have refrained from escalating the conflict after the witness denied that she had been coached by "foot tap."  There was no need for either counsel to threaten or insult the other, and no need for Plaintiff's counsel to goad Defendants' counsel by obtaining possession of his phone and then refusing to return it to him, as a retaliation in kind that only exacerbated the situation.

It should not be necessary for any court to have to regulate the type of conduct which has been exhibited in Ms. Smith's deposition.  However, in this instance, the Court finds it necessary to do so to ensure the orderly conduct of depositions in this case.   Accordingly, Mr. Wassser and Mr. Lee are ordered not to touch each other's personal property at the depositions in this case, without the other's permission.

(2) <u>Sanctions regarding personal property</u>

In his letter brief, Plaintiff's counsel states that he paid $129.99 for his web camera. However, no declarations, invoices, or repair statements have been filed, and the record is uncertain regarding the existence, nature, or extent of any actual property loss.  Similarly, no declarations or information have been presented to establish the expense of the deposition appearance or attorney's fees incurred for the instant letter request.  The Court has also considered the conduct of both counsel at the depositions, and find that both Plaintiff's counsel and Defendants' counsel contributed to the deterioration of decorum that resulted in the "foot tapping and web camera incident."  The Court has considered the totality of the circumstances surrounding Ms, Smith's deposition  and the lack of evidence of actual  loss and expense, and finds that such circumstances make an award of expenses or sanctions unjust. Accordingly, the request for sanctions regarding personal property is denied without prejudice.

C. <u>Additional relief requested</u>

Plaintiff also seeks an order to compel Ms. Smith to answer the question she was instructed not to answer and  to reconvene the deposition, and for further sanctions against Defendants' counsel.

**7**

(1) <u>Instructing Ms. Smith not to answer</u>

During Ms. Smith's deposition, Plaintiff's counsel asked her a series of questions regarding why she voted to remove Plaintiff from his position at Kern Medical Center. Defendants' counsel repeatedly objected to these questions on the ground that they had been asked and answered. By the Court's count, based on the deposition transcript, he objected on this ground at least ten times. (Doc. 202-2, pp. 18-24, 33, 35). Eventually, Defendants' counsel instructed the witness not to answer the following question, because "[s]he's not answering the same question yet again." (Doc. 202-2, p. 36.) In this context, he also told Plaintiff's counsel that "we're over a dozen times on this" and "[y]ou've covered it ad nauseam." (Doc. 202-2, pp. 35-36). Ms. Smith was instructed not to answer the following question:

> Besides Dr. Jadwin's physical unavailability and absence from the hospital, what other basis did you hear about at the removal meeting to - - that dictated - - that persuaded you to vote in favor of removing Dr. Jadwin? (Doc. 202-2, p. 35).

After further objection and colloquy between counsel, including mutual threats of adjournment, both counsel agreed to submit the dispute to the Court and proceeded with the deposition, i.e., at least until Plaintiff's counsel adjourned the deposition over the foot tapping and web camera incident.

The Court has reviewed the deposition transcript and concludes that the question Ms. Smith was instructed not to answer is a legitimate follow-up question and was not "asked and answered." Moreover, an objection that the question might have been repetitive was not a proper basis to instruct the witness not to answer it. The behavior of counsel during a deposition is governed by Fed. R. Civ. P. 30(c)(2), which provides that:

> Objections. An objection at the time of the examination - whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition - must be noted on the record, but the examination still proceeds, the testimony is taken subject to any objection. An objection must be stated concisely in a nonargumentative and nonsuggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to conform to a limitation ordered by the court, or to present a motion under Rule 30(d)(3).

Instructing Ms. Smith not to answer the follow-up question regarding her reasons to vote to remove Plaintiff from his position violated Fed. R. Civ. P. 30 (c)(2). Plaintiff's request for an order compelling

Ms. Smith to answer the question is granted.

(2) <u>Reconvening Ms. Smith's deposition</u>

The transcript reflects that Plaintiff adjourned Ms. Smith's deposition because of the foot tapping and web camera incident, not because Ms. Smith was instructed not to answer the question discussed above. In light of the Court's order compelling Ms. Smith to answer the question, the Court also grants Plaintiff's request to reconvene the deposition, to allow Ms. Smith to answer the question and any appropriate follow-up questions.

(3) <u>Sanctions</u>

The Court has considered Plaintiff's request for sanctions or expenses with respect to Plaintiff's letter request for an order to compel and to reconvene Ms. Smith's deposition. However, Plaintiff has failed to provide any documentation regarding his expenses or the attorney's fees he has incurred in requesting such relief. Accordingly, the Court finds that such circumstances render an award of expenses or sanctions unjust at this time. Plaintiff's request for sanctions is denied without prejudice.

3. <u>Deposition of Barbara Patrick</u>

On August 19, 2008, Plaintiff also deposed Ms. Barbara Patrick. Ms. Patrick is a former member and chair of the Kern County Board of Supervisors. Plaintiff contends that Defendants' counsel made numerous speaking objections during the deposition, and complains that the deponent "played word games" and "deliberately misinterpreted" his questions. (Doc. 202). Plaintiff requests an order compelling answers, reconvening the deposition and imposing sanctions. Plaintiff also requests a protective order against speaking objections.

A. <u>Speaking objections</u>

In his letter request, Plaintiff cites to eleven instances of alleged speaking objections during Supervisor Patrick's deposition, referencing portions of what appears to be an incomplete "rough draft" deposition transcript. (Doc. 202-3). The referenced portions are 43:16-46:4, 47:10-11, 63:14-64:12, 64:24-65:12, 62:1-63:1, 47:24-48:5, 48:9-25, 50:23-59:1, 64:14-18, 48:6-49:18, and 66:4-6.

A speaking objection is an objection that is argumentative or which suggests an answer to a witness. Speaking objections are prohibited by Fed. R. Civ. P. 30(c)(2), discussed above, which

provides in relevant part that : "[a]n objection must be stated concisely in a nonargumentative and nonsuggestive manner." The Court finds that the objections to the questions posed by Plaintiff's counsel and referenced above are improper speaking objections that violate Rule 30(c)(2). The Court grants Plaintiff's request for an order compelling a response to the questions that are cited at 43:16-46:4, 47:10-11, 63:14-64:12, 64:24-65:12, 62:1-63:1, 47:24-48:5, 48:9-25, 50:23-59:1, 64:14-18, 48:6-49:18, and 66:4-6 of the deposition transcript. Plaintiff's request to reconvene Supervisor Patrick's deposition is granted, but only to allow her to answer those questions and any appropriate follow-up questions, within the time limit for her deposition set previously by the Court.

### B. Admonition

Defendants' counsel is admonished to comply with Fed. R. Civ. P. 30(c )(2), which prohibits speaking objections.

### C. Request for sanctions

As to sanctions or expenses, the Court notes that Plaintiff has provided only a partial draft deposition transcript, which ends in the middle of a sentence on page 66 of the transcript. This incomplete draft does not reflect why or when the deposition was adjourned. Moreover, as with the request for sanctions as to Ms. Smith's deposition, Plaintiff has failed to provide any documentation of his expenses or the attorney's fees he has incurred in requesting relief as to the deposition of Supervisor Patrick. Accordingly, the Court finds that such circumstances render an award of expenses or sanctions unjust at this time. Plaintiff's request for sanctions is denied without prejudice.

### 4. Special Master

#### A. Request for Special Master

At the hearing on the above discovery disputes, Defendants requested the appointment of a discovery referee to be present during depositions. Plaintiff objected to the appointment of a discovery referee, primarily based on the additional expense. The Court has considered the request, and finds that in light of (1) the numerous ongoing and continuing disputes that have arisen at nearly every deposition taken in this case to date, (2) the numerous informal telephone, email, and letter requests from counsel for the parties requesting judicial intervention during the depositions, (3) the strained relationship

between such counsel and their inability to cooperate with each other at depositions, as reflected by the foregoing orders, the instant case is an appropriate one for the appointment of a special master for depositions. The Court further finds that the appointment of a special master is likely to facilitate the prompt, efficient, and orderly conduct of depositions in this case, is likely to minimize further deposition disputes, and outweighs the expense to the parties.

B. <u>Proposed appointment of special master</u>

As discussed at the August 21, 2008 hearing on this matter, the Court proposes to appoint Kenneth M. Byrum as special master for depositions in this case. Fed. R. Civ. P. 53 (a)(1)(C). A copy of Mr. Byrum's curriculum vitae is attached to this order. Given the ongoing discovery and related deadlines, the parties are directed to respond to the proposed appointment of special master no later than 5:00 p.m. on Wednesday, August 27, 2008, and also to suggest any other candidates for appointment by that date and time. Upon appointment, the special master may be present at and referee disputes at any or all of the depositions in this case, in order to ensure the prompt, efficient, and orderly conduct of the depositions, and will be required to report to the Court.

C. <u>Expense of special master</u>

Mr. Byrum charges $300 per hour. If Mr. Byrum is appointed as special master, except for the reconvened depositions of Ms. Smith and Supervisor Patrick, each side shall bear ½ of the fees and costs. This means that Plaintiff will pay ½ of the fees and costs, and Defendants will pay ½ of the fees and costs. As to the reconvened depositions of Ms. Smith and Supervisor Patrick, Defendants will pay all of the special master's fees and costs.

D. <u>Special master's affidavit</u>

Mr. Byrum is directed to file with the Court forthwith an affidavit disclosing whether there is any ground for disqualification under 28 U.S.C. § 455. The Clerk of the Court is directed to serve Mr. Byrum with a copy of the last amended complaint and answer in this action.

IT IS SO ORDERED.

Dated:  **August 22, 2008**                              **/s/ Theresa A. Goldner**
                                                                              UNITED STATES MAGISTRATE JUDGE