# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID F. JADWIN, D.O.,<br><br>                **Plaintiff,**<br><br>      **v.**<br><br>COUNTY OF KERN; PETER BRYAN (BOTH individually and in his former capacity as Chief Executive Of Kern Medical Center); IRWIN HARRIS, M.D.; and DOES 1 through 10, inclusive,<br><br>              **Defendants.** | 1:07-CV-00026-OWW-DLB<br><br>**MEMORANDUM DECISION AND ORDER RE DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** |

## I. INTRODUCTION

Before the court is a motion collectively brought by Defendants County of Kern ("County"), Peter Bryan and Irwin Harris, M.D., for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Defendants contend that certain claims in the Second Amended Complaint filed by Plaintiff David Jadwin, D.O., are barred because Plaintiff failed to comply with the requirements of California's Government Claims Act ("Government Claims Act"), Cal. Gov't Code §§ 900 et seq.[1]

As the pleadings reveal, pursuant to the Government Claims Act, Plaintiff presented a written claim to the County on July 3,

---

[1] While some California courts have referred to the statutory scheme as the "Tort Claims Act," the California Supreme Court has indicated that "Government Claims Act" is an appropriate appellation. *See City of Stockton v. Superior Court*, 42 Cal. 4th 730, 27-28 & n.7 (2007).

2006 ("Claim"), which was not acted upon by the County and thus deemed rejected. (Doc. 241 at Ex. 2-3.) Defendants maintain that this Claim did not encompass the state law claims that Plaintiff ultimately asserted in his Second Amended Complaint; accordingly, Plaintiff's state law claims, which should have been presented to the County in his government Claim, are barred.

## II. BACKGROUND[2]

### A. Plaintiff's Employment With The County And Chronology of Events Preceding The Presentment Of His Claim

As alleged, on October 24, 2000, pursuant to an employment contract with the County, Plaintiff served as the Chair of the Pathology Department at Kern Medical Center ("KMC") and as the Medical Director of the KMC clinical laboratory. (Doc. 241 at 9.) The County expected Plaintiff to perform administrative duties as the Chair of Pathology, perform clinical duties as a pathologist, and oversee KMC's blood bank and transfusion service. (*Id.*) Plaintiff's stated employment term was through November 30, 2006. (*Id.*)

On or about November 12, 2002, the County modified Plaintiff's employment contract. The County increased Plaintiff's compensation and extended his term of employment to October 4, 2007. (*Id.*)

On or about December 16, 2005, due to severe depression, Plaintiff began a medical leave. (*Id.* at 6, 19.) On or about January 13, 2006, Plaintiff submitted a copy of his psychiatrist's certification stating that Plaintiff needed a reduced work schedule

---

[2] The information in this section is taken from Plaintiff's Second Amended Complaint.

leave from, at minimum, December 16, 2005, to March 16, 2006. (*Id.* at 19.)  The Human Resources ("HR") Department formally approved of the leave. (*Id.*)

On or about March 16, 2006, via e-mail Plaintiff informed Peter Bryan, Chief Executive Officer of KMC, that Plaintiff would take Bryan's suggestion and take two to three additional months of leave. (*Id.*)  Plaintiff also indicated that he had a surgery scheduled for March 22, 2006, and that he anticipated a several-week recovery period. (*Id.*)

On or about April 20, 2006, Plaintiff received a notice from HR that his leave of absence had expired on March 15, 2006, and that, to extend his leave, he needed to submit a Request for Leave of Absence form by April 25, 2006. (*Id.* at 20.)  Around April 26, 2006, Plaintiff submitted the requested form along with another certification from his psychiatrist stating that, due to his serious medical condition, Plaintiff needed a six-month to one-year extension on his leave, i.e., an extension on his reduced work schedule leave. (*Id.*)

On or about April 28, 2006, Bryan, in a meeting with Plaintiff, Karen Barnes (Deputy County Counsel) and Steve O'Conner from HR, ordered Plaintiff to take a full-time medical leave from May 1, 2006, to June 16, 2006, instead of continuing his reduced work schedule. (*Id.*)  Bryan stated that he needed to know by June 16, 2006, whether Plaintiff would resign as the Chair of Pathology and indicated that if Plaintiff resigned, Plaintiff still could serve as a staff pathologist. (*Id.*) Bryan further required Plaintiff to commence working full-time on June 17, 2006, or to resign, because "the hospital needs you here full-time." (*Id.* at

3

20-21.)

On or about June 2, 2006, Plaintiff wrote Bryan and requested additional time, due to certain physical ailments, to make a decision regarding his continued employment. Plaintiff indicated that he underwent nasal surgery in early May and in late May he fell down a staircase and injured his ankle – given these events, Plaintiff had not considered or rendered a decision regarding his employment situation and could not come to the office by June 16. (*Id.* at 21.)

On or about June 14, 2006, Bryan e-mailed Plaintiff and informed him that he could have ninety days of Personal Necessity Leave after which he could return to work as a pathologist, but Bryan was withdrawing Plaintiff's appointment as the Chair of the Pathology Department. (*Id.*) Bryan wrote: "[m]y decision to do this, Dr. Jadwin, is based solely on your inability to provide consistent and stable leadership in the department for most of the past eight to nine months. You have used all of your sick and vacation time in addition to using all available time under the medical leave provisions of County policy. It is unfortunate that you had your accident which delayed your return but the hospital needs to move on." (*Id.*) Later, on or about June 14, 2006, Bryan sent a letter addressed to Plaintiff reiterating that Bryan was rescinding Plaintiff's chairmanship and stating that the "Department of Pathology needs a full-time chairman." (*Id.* at 21-22.) Plaintiff submitted his Claim to the County less than one month later.

B. <u>Plaintiff's Claim To The County</u>

Plaintiff submitted his Claim to the County on a form entitled

**4**

"CLAIM AGAINST THE COUNTY OF KERN," which he dated July 3, 2006.[3] A separate typed document is attached to the Claim and in it, Plaintiff asserted various claims.

### 1. Breach of Contract

Plaintiff labeled his first claim "Breach of Contract." Plaintiff asserted that pursuant to an employment contract with the County he was the Chair of Pathology at KMC. (Doc. 241 at Ex. 2.) On June 14, 2006, Bryan informed Plaintiff that Plaintiff was "being stripped of [his] chairmanship effective June 17, 2006, due to his taking excessive sick leaves. As of June 14, 2006, [Plaintiff] had taken 12 weeks of CFRA sick leave and approx. 3-4 weeks of County sick leave based on doctor's certifications which he submitted." (*Id.*) Plaintiff asserted that in "stripping [Plaintiff] of chairmanship" Bryan failed to comply with the KMC bylaws which were incorporated into his employment contract. (*Id.*)

### 2. Wrongful Demotion/Termination

Plaintiff labeled his second claim "Wrongful Demotion/Termination in Violation of Cal. Bus. & Prof. C. § 2056 & Conspiracy Relating Thereto."[4] Plaintiff asserted that Bryan's

---

[3] The Claim is attached as an exhibit to the Second Amended Complaint.

[4] California Business and Professions Code § 2056(c) provides that "[t]he application and rendering by any person of a decision to terminate an employment or other contractual relationship with, or otherwise penalize, a physician and surgeon principally for advocating for medically appropriate health care consistent with that degree of learning and skill ordinarily possessed by reputable physicians practicing according to the applicable legal standard of care violates the public policy of this state. No person shall terminate, retaliate against, or otherwise penalize a physician and surgeon for that advocacy, nor shall any person prohibit, restrict,

"demotion" of Plaintiff constituted a "constructive termination," as he no longer felt "welcome at KMC." (*Id.*) This unwelcome sentiment was "reinforced" when on June 26, 2006, Bryan informed Plaintiff that "he was no longer permitted to enter KMC grounds, contact any KMC employee or faculty member or access any KMC equipment or networks for any reason for the remainder of his leave." (*Id.*)

Plaintiff asserted that his demotion by Bryan was in retaliation for "raising concerns[,]" in e-mails and various communications to "Bryan and other medical staff leadership[,]" "relating to patient health care." (*Id.*) Plaintiff listed some of these concerns, which he described as "crisis issues which critically jeopardized patient health care at KMC":

i) [the] need for follow-up on failure of a formerly-employed KMC pathologist to detect cancer diagnoses in numerous patient prostate biopsies;

ii) chronically incomplete or inaccurate KMC blood component product chart copies, in violation of state regulations and accreditation standards of JCAHO, CAP, and AABB;

iii) chronically inadequate fine needle aspirations collected by KMC radiologists leading to incomplete and/or incorrect patient diagnoses and greatly increased expense for KMC;

iv) [the] need for KMC pathology dept. I) to review outsourced pathology diagnoses prior to undergoing major therapy in reliance on those diagnoses and ii) to approve outsourcing of pathology to outside vendors; and

v) [the] need for effective oversight of blood usage program by pathology dept.

---

or in any way discourage a physician and surgeon from communicating to a patient information in furtherance of medically appropriate health care."

Plaintiff claimed that he raised these concerns prior to the date that Bryan informed Plaintiff that Plaintiff was being stripped of his chairmanship (June 14, 2006). (*Id.*)

### 3. Per Se Libel/Ratification by KMC

In a third claim, "Per Se Libel/Ratification by KMC," Plaintiff asserted that he received a letter dated October 17, 2005, from Drs. Eugene Kercher (President of KMC Medical Staff), Scott Ragland (President-elect of KMC Medical Staff), Jennifer Abraham (Past President of KMC Medical Staff) and Irwin Harris (KMC Chief Medical Officer) which informed Plaintiff that "three letters written by [Plaintiff's] colleagues at KMC expressing 'dissatisfaction' with [Plaintiff] would be 'entered into your medical staff file.'" (*Id.*) Plaintiff asked to see the three letters, but his request was refused. Plaintiff asserts that in so "reprimanding" him, Drs. Kercher, Ragland, Abraham and Harris "failed to comply with KMC bylaws." (*Id.*) Later, on January 6, 2006, Plaintiff received a letter from Barnes to which were attached redacted versions of the three letters. (*Id.*) One of the letters was "defamatory" and "maliciously defamed [Plaintiff's] professional competence." (*Id.*)

### 4. Related Causes of Action

In a catchall paragraph headed "Related Causes of Action," Plaintiff stated he "also seeks to bring claims of intentional infliction of emotional distress, negligent hiring, negligent supervision and negligent retention in relation to the foregoing." (*Id.*)

On his Claim form, Plaintiff indicated that he "met with Mr. Bernard Barmann [County Counsel] with respect to the foregoing on

**7**

February 9, 2006." (*Id.*)

C.   Plaintiff's Second Amended Complaint

On October 7, 2008, approximately two years and three months after he submitted his Claim to the County, Plaintiff filed his Second Amended Complaint in this action.

Plaintiff's Second Amended Complaint contains eleven claims, all arising from his employment with the County.  As alleged, on October 4, 2006, after his Personal Necessity Leave ended, Plaintiff decided to return to work at KMC as a staff pathologist. (Doc. 241 at 22.)   Prior to his return, Plaintiff signed an amendment to his employment contract which reduced his base salary by over thirty-five percent. (*Id.*)

On or about November 28, 2006, Plaintiff "finally" reported his concerns about patient care issues and "non-compliance with applicable laws and regulations and accreditation standards" to the "Authorities," defined in the Second Amended Complaint as the Joint Commission on Accreditation of Hospital Organizations, the College of American Pathologists, and the California Department of Health Services. (*Id.* at 7, 10-11, 32.)

On or about December 4, 2006, Plaintiff submitted a written complaint to KMC leadership about additional concerns regarding the quality of patient care and the deterioration of the Pathology Department. (*Id.* at 7.)  Around December 7, 2006, David Culberson, interim Chief Executive Officer of KMC, sent a letter to Plaintiff informing Plaintiff that he was being placed on paid administrative leave pending resolution of a personnel matter. (*Id.* at 8, 23.) On April 4, 2007, Plaintiff placed Defendant County on notice that his involuntary paid leave was denying him the ability to earn income

**8**

from professional fee billing and that Plaintiff's physician believed that part-time work would be "therapeutic" for Plaintiff. (*Id.* at 23.)

The County notified Plaintiff that he would remain on paid administrative leave until his employment contract expired on October 4, 2007, and that the County did not intend to renew his contract. (*Id.* at 8.)  On October 4, 2007, Plaintiff's employment contract expired. (*Id.*)

The state law claims in Plaintiff's Second Amended Complaint (which are the subject of Defendants' motion) are all statutory. Two of them are statutory "whistleblower" claims (as Plaintiff calls them), and the remainder of the state law claims arise under California's Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code §§ 12900 et seq.  Because Defendants' motion deals only with Plaintiff's state law claims, Plaintiff's federal law claims are not discussed.   The following is a brief summary of Plaintiff's state law claims.

1. <u>Whistleblower Claims</u>

Plaintiff's first claim is for "Retaliation in Violation of Health & Safety Code § 1278.5." (Doc. 241 at 31.)   That section currently provides in pertinent part:

> (b)(1)  No health facility shall discriminate or retaliate, in any manner, against any patient, employee, member of the medical staff, or any other health care worker of the health facility because that person has done either of the following:
>
> > (A) Presented a grievance, complaint, or report to the facility, to an entity or agency responsible for accrediting or evaluating the facility, or the medical staff of the facility, or to any other governmental entity.
> >
> > (B) Has initiated, participated, or cooperated in

**9**

>an investigation or administrative proceeding related to, the quality of care, services, or conditions at the facility that is carried out by an entity or agency responsible for accrediting or evaluating the facility or its medical staff, or governmental entity.
>
>(2) No entity that owns or operates a health facility, or which owns or operates any other health facility, shall discriminate or retaliate against any person because that person has taken any actions pursuant to this subdivision.

Cal. Health & Safety Code § 1278.5(a)-(b)(2).[5]  Plaintiff asserts that during his employment he reported concerns he was having regarding suspected unsafe care and conditions of patients at KMC. He raised these concerns to various parties including Bryan, key members of KMC's medical staff, his employer, Barmann, and the Authorities. (Doc. 241 at 10, 31.) Plaintiff claims that he was unlawfully retaliated against "because he engaged in whistleblowing activity protected" by the statute. (*Id.* at 31.)

Plaintiff's second claim is for "Retaliation In Violation of Lab. Code § 1102.5." (*Id.*)  That section provides in pertinent part:

>(b) An employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation.

Cal. Labor Code § 1102.5(b).  Plaintiff alleges that he reported

---

[5] **Section 1278.5 was amended effective January 1, 2008 (before Plaintiff filed his Second Amended Complaint).  The excerpted portions of the statute were taken from this amended version which remains in current force.  For purposes of this order only, it is assumed that the amended version was in effect at all material times.  The impact of the amendment will be addressed in a separate order.**

his reasonable suspicions about illegal, non-complaint, and unsafe care and conditions of patients at KMC. (Doc. 241 at 32.) Plaintiff reported such matters to various parties including Bryan, key members of KMC's medical staff, his employer, Barmann, and Authorities. (Doc. 241 at 10, 32.). Plaintiff claims that he was unlawfully retaliated against "because he engaged in activity protected" by the statute. (*Id*. at 32.)

**2. FEHA Claims**

Plaintiff's third claim is for a violation of California's Moore-Brown-Roberti Family Rights Act, i.e., the "CFRA" (Cal. Gov't Code §§ 12945.1, 12945.2).[6] The CFRA provides certain family care and medical leave rights to employees, § 12945.2, and makes it unlawful for an employer to "refuse to hire, or to discharge, fine, suspend, expel, or discriminate against, any individual because of . . . . [the] individual's exercise of the right to family care and medical leave" under the statute, § 12945.2(*l*)(1). Plaintiff alleges that Defendants retaliated against him for "requesting and taking medical leave." (Doc. 241 at 33.)

Plaintiff's fifth claim for a "Violation of CFRA Rights" alleges that Defendants, in contravention of California Government Code § 12945.2(a), violated Plaintiff's rights under the CFRA by denying him a "medically necessary reduced work schedule" and "requiring [him] to take full-time medical leave when he was ready, willing, and able to work part-time." (Doc. 241 at 35.)

In his sixth claim, Plaintiff alleges a violation of California Government Code § 12940(a), which prohibits an employer

_____

[6]  The CFRA is a part of the FEHA.

11

from, among other things, discriminating against an employee on the basis of disability. Plaintiff alleges that Defendants, "through their course of conduct[,] denied [him] a benefit of employment, in whole or in part, because he is an individual with known disabilities." (Doc. 241 at 35.) Plaintiff alleges that his "depression" is a disability. (*Id.* at 23-24.)

In his seventh claim, Plaintiff asserts that Defendants violated California Government Code § 12940(m), which makes it unlawful for "an employer . . . to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee."

In his eighth claim, Plaintiff asserts that Defendants violated California Government Code § 12940(n), which makes it unlawful for "an employer . . . to fail to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition."

In his eleventh claim, Plaintiff asserts that Defendants violated California Government Code § 12940(h), which makes it unlawful for "any employer . . . to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." At the time he filed this action on January 6, 2007 (i.e., the filing date of his first complaint), Plaintiff was still employed with the County. Plaintiff's Second Amended Complaint

asserts that he opposed employment practices forbidden under the FEHA "by filing a charge with the DFEH and filing this lawsuit, which included claims brought under the FEHA" and, as a consequence, he was retaliated against. (Doc. 241 at 39-40.)

As is evident from the pleadings, and as Defendants point out, none of Plaintiff's state law claims in the Second Amended Complaint were specifically mentioned in Plaintiff's earlier Claim to the County.

### III.    STANDARD FOR JUDGMENT ON THE PLEADINGS

A party may move for judgment on the pleadings after the pleadings are closed. Fed. R. Civ. P. 12(c).  A Rule 12(c) motion challenges the legal adequacy of the opposing party's pleadings. *Westlands Water Dist. v. Bureau of Reclamation*, 805 F. Supp. 1503, 1506 (E.D. Cal. 1992).  In deciding the motion, a court must take "all material allegations of the non-moving party as contained in the pleadings as true, and constr[ue] the pleadings in the light most favorable to th[at] party." *Doyle v. Raley's Inc.*, 158 F.3d 1012, 1014 (9th Cir. 1998). "[T]he allegations of the moving party which have been denied are assumed to be false." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1990).

To prevail on a Rule 12(c) motion, the moving party must "clearly establishe[] on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Id*.  A judgment on the pleadings in favor of a moving defendant is "not appropriate if the complaint raises issues of fact that, if proved, would support the plaintiff's legal theory." *Winter v. I.C. Sys. Inc.*, 543 F. Supp. 2d 1210, 1212 (S.D. Cal. 2008) (*citing General Conference Corp. of*

13

*Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989)).  A judgment on the pleadings also is not appropriate if the court "goes beyond the pleadings to resolve an issue; such a proceeding must properly be treated as a motion for summary judgment" pursuant to Rule 12(d). *Hal Roach Studios,* 896 F.2d at 1550.  A district court may, however, "consider certain materials – documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice – without converting the motion to dismiss [or motion for judgment on the pleadings] into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *see also Summit Media LLC v. City of Los Angeles*, 530 F. Supp. 2d 1084, 1096 (C.D. Cal. 2008).

In assessing the adequacy of the opposing party's pleadings, the legal standard applied to a motion for judgment on the pleadings is the same as the standard applied to a Rule 12(b)(6) motion to dismiss. *See Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).

## IV.  CALIFORNIA'S GOVERNMENT CLAIMS ACT

Subject to inapplicable exceptions, the Government Claims Act dictates that "all claims for money or damages against local public entities" must be presented to them, § 905, and "no suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented . . . until a written claim therefor has been presented to the public entity and has been acted upon . . . or has been deemed to have been rejected," § 945.4.  A claim for personal injury or property damage must be presented within six months after accrual, and all other

**14**

claims must be presented within a year. § 911.2; *see also City of Stockton v. Superior Court*, 42 Cal. 4th 730, 738 (2007). The failure to timely present a claim for money or damages to a public entity "bars a plaintiff from filing a lawsuit against that entity*." City of Stockton*, 42 Cal. 4th at 738 (internal quotation marks omitted).

A plaintiff must comply with the Government Claims Act not only when asserting a claim for money or damages against a public entity, but also when asserting a claim for money or damages against another public employee (former or current) for an act or omission falling within the scope of that employee's public employment (in such cases, presentation to the public employer, not the individual, is required). *Maynard v. City of San Jose,* 37 F.3d 1396, 1406 (9th Cir. 1994); *Wilson-Combs v. Cal. Dep't of Consumer Affairs,* 555 F. Supp. 2d 1110, 1118 (E.D. Cal. 2008); *Julian v. City of San Diego*, 183 Cal. App. 3d 169, 175 (1986).

In terms of required content, a claim presented to a public entity must show all of the following:

(a) The name and post office address of the claimant.

(b) The post office address to which the person presenting the claim desires notices to be sent.

(c) The date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted.

(d) A general description of the indebtedness, obligation, injury, damage or loss incurred so far as it may be known at the time of presentation of the claim.

(e) The name or names of the public employee or employees causing the injury, damage, or loss, if known.

(f) The amount claimed if it totals less than ten thousand dollars ($10,000) as of the date of presentation of the claim, including the estimated amount of any

> **prospective injury, damage, or loss, insofar as it may be known at the time of the presentation of the claim, together with the basis of computation of the amount claimed. If the amount claimed exceeds ten thousand dollars ($10,000), no dollar amount shall be included in the claim. However, it shall indicate whether the claim would be a limited civil case.**

Cal. Gov't Code § 910. A claim must "fairly describe what [the] entity is alleged to have done." *Stockett v. Ass'n Of Cal. Water Agencies Joint Powers Ins. Auth.*, 34 Cal. 4th 441, 446 (2004). The Government Claims Act is intended "to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation." *Id.* at 446 (internal quotation marks omitted).

With respect to the congruence between a presented claim and a plaintiff's ultimate complaint, "[i]f a plaintiff relies on more than one theory of recovery against the [public entity], each cause of action must have been reflected in a timely claim." *Nelson v. California*, 139 Cal. App. 3d 72, 79 (1982); *see also Stockett,* 34 Cal. 4th at 447; *Dixon v. City of Livermore*, 127 Cal. App. 4th 32, 40 (2005); *Fall River Joint Unified Sch. Dist. v. Superior Court*, 206 Cal. App. 3d 431, 434 (1988). "In addition, the factual circumstances set forth in the written claim must correspond with the facts alleged in the complaint; even if the claim were timely, the complaint is vulnerable to a demurrer if it alleges a factual basis for recovery which is not fairly reflected in the written claim." *Id.* at 79; *see also Stockett,* 34 Cal. 4th at 447; *Dixon*, 127 Cal. App. 4th at 40; *Fall River Joint Unified Sch. Dist.*, 206 Cal. App. 3d at 434.

The timely presentation of a claim under the Government Claims Act is not merely a procedural requirement, it is an actual

"element of the plaintiff's cause of action." *Shirk v. Vista Unified Sch. Dist.*, 42 Cal. 4th 201, 209 (2007). As such, in the complaint, the plaintiff "must allege facts demonstrating or excusing compliance with the claim presentation requirement. Otherwise, his complaint . . . fail[s] to state facts sufficient to constitute a cause of action." *State v. Superior Court (Bodde)*, 32 Cal. 4th 1234, 1243 (2004); *see also Shirk*, 42 Cal. 4th at 209.

## V. DISCUSSION AND ANALYSIS

Defendants take issue with the variance between Plaintiff's original government Claim and the state-law claims ultimately asserted in Plaintiff's Second Amended Complaint. In opposition to the motion, Plaintiff argues, among other things, that any variance between his Claim and the FEHA claims asserted in his Second Amended Complaint is irrelevant because his FEHA claims are exempt from the Government Claims Act requirements.[7] At oral argument on the motion, Defendants conceded the point and argued that their

---

[7] Plaintiff also argues that Defendants' Rule 12(c) motion violates this court's "ruling" on October 6, 2008. Plaintiff contends that, at the hearing on October 6, 2008, the court ruled that any Rule 12 motions filed in response to Plaintiff's Second Amended Complaint should be subsumed within the Defendants' forthcoming motion for summary judgment. The docket entry generated that day, the substance of which came from the court's statements on the record, dictates that "Dispositive Motions" must be filed by November 11, 2008. A Rule 12(c) motion is a dispositive motion and Defendants filed it concurrently with their motion for summary judgment. Although Defendants could have done it differently, the filing of a separate Rule 12(c) motion technically complies with the docket entry. Perhaps because Plaintiff believed Defendants' Rule 12(c) motion was improper (as a separate motion), Plaintiff filed his opposition to this motion well past the opposition deadline. Despite being untimely, Plaintiff's opposition has been considered.

motion for judgment on the pleadings is directed only at Plaintiff's non-FEHA (and non-federal) claims. Defendants did not specify which particular statutory claims they concede are exempt "FEHA" claims.

**A.   FEHA Claims**

Although the Government Claims Act provides no statutory exemption for FEHA claims, applicable case law provides that "compliance with the Tort Claims Act is not required for state law FEHA claims." *Mangold v. Cal. Pub. Utilities Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995); *see also Rojo v. Kliger*, 52 Cal. 3d 65, 80 (1990) (noting that "actions under [the] FEHA are exempt from general Tort Claims Act requirements" (citing *Snipes v. City of Bakersfield*, 145 Cal. App. 3d 861, 868-69 (1983))); *Lozada v. City of San Francisco*, 145 Cal. App. 4th 1139, 1166 n.13 (2006) (recognizing that FEHA claims are exempt from the Government Claims Act); *Gatto v. County of Sonoma*, 98 Cal. App. 4th 744, 764 (2002) (same). FEHA claims are exempt because the FEHA's statutory scheme "includes a functionally equivalent claim process." *Gatto*, 98 Cal. App. 4th at 764. "Under the FEHA, the employee must exhaust the administrative remedy provided by the statute by filing a complaint with the Department of Fair Employment and Housing . . . and must obtain from the Department a notice of right to sue in order to be entitled to file a civil action in court based on violations of the FEHA." *Romano v. Rockwell Int'l, Inc.*, 14 Cal. 4th 479, 492 (1996).

Only two of Plaintiff's state law claims are non-FEHA claims, i.e., his first claim for retaliation under § 1278.5 of the Health & Safety Code, and his second claim for retaliation under § 1102.5

18

of the Labor Code. The remaining claims are all FEHA claims that come with their own "functionally equivalent claim process," *Gatto*, 98 Cal. App. 4th at 764.

Plaintiff's third claim is for retaliation in violation of the CFRA, and Plaintiff's fifth claim is for a denial of his CFRA rights. The CFRA is a part of the FEHA; accordingly, the exhaustion of administrative remedies under the FEHA is required for CFRA claims, including Plaintiff's claims here. *See Mora v. Chem-Tronics, Inc.*, 16 F. Supp. 2d 1192, 1201 (S.D. Cal. 1998); *Flores v. Cal. Pac. Med. Ctr.*, No. C04-1846 MMC, 2005 WL 2043038, at *2 n.1 (N.D. Cal. Aug. 24, 2005). Plaintiff's sixth claim for disability discrimination, seventh claim for failure to provide reasonable accommodation, and eighth claim for failure to engage in the interactive process are all FEHA claims and the exhaustion of administrative remedies under the FEHA is required for such claims. *Rodriguez v. Airborne Express*, 265 F.3d 890, 896-98 (9th Cir. 2001) (disability discrimination); *Ramirez v. Silgan Containers,* No. CIV F 07-0091 AWI DLB, 2007 WL 1241829*,* at *4-5 (E.D. Cal. Apr. 26, 2007) (reasonable accommodation/interactive process). Finally, the eleventh claim for retaliation for opposing employment practices forbidden under the FEHA requires exhaustion of administrative remedies under the FEHA. *See Okoli v. Lockheed Technical Operations Co.*, 36 Cal. App. 4th 1607, 1612-13, 1617 (1995). The third, fifth, sixth, seventh, eighth, and eleventh claims are all FEHA claims governed by their own "functionally equivalent claim process," *Gatto*, 98 Cal. App. 4th at 764, and are exempt from the Government Claims Act requirements. This leaves the two state law whistleblower claims.

B. **Whistleblower Claims**

Plaintiff's government Claim did not specifically raise whistleblower claims under the Health & Safety Code or the Labor Code – he did not even mention these laws. At oral argument on the motion, the parties debated the significance of this omission. Defendants contended that this omission is fatal whereas Plaintiff argued that all that matters is whether there is factual equivalence (or a lack thereof) between the Claim and the Second Amended Complaint to put the public employer on notice. Defendants focused on the test articulated by numerous California courts:

> If a plaintiff relies on more than one theory of recovery against the [public entity], each cause of action must have been reflected in a timely claim.

*Nelson*, 139 Cal. App. 3d at 79; *Dixon*, 127 Cal. App. 4th at 40; *Fall River Joint Unified Sch. Dist.*, 206 Cal. App. 3d at 434; *see also Stockett,* 34 Cal. 4th at 447.

*Stockett* involved a claim to a public employer by a former employee who asserted he was wrongfully terminated in violation of public policy for supporting a female employee's sexual harassment complaints. 34 Cal. 4th at 444. After his claim was denied, the plaintiff brought an action against his former public employer and later moved to amend the complaint to assert that he was wrongfully terminated in violation of public policy not only because he opposed sexual harassment in the workplace (as specified in his claim), but also for exercising his First Amendment right of free speech by objecting to his employer's practice of not purchasing insurance on the open market, and because he objected to a conflict of interest. *Id.*

The court stated that the Government Claims Act "requires *each*

*cause of action* to be presented by a claim complying with section 910." *Id.* at 447 (emphasis added). *Stockett* explained: "[w]hile Stockett's claim did not specifically assert his termination violated the public policies favoring free speech and opposition to public employee conflicts of interest, these theories do *not* represent additional *causes of action* and hence need not be separately presented under section 945.4." *Id.* (emphasis added.) The court continued in a footnote: "JPIA [the defendant] acknowledged at trial, and does not argue otherwise in its briefs, that under the primary right analysis used in California law, Stockett's claim of dismissal in violation of public policy constitutes only a single cause of action even though his dismissal allegedly violated several public policies." *Id.* at 447 n.3 (internal citation omitted).

Under California law, the violation of a "primary right" gives rise to only *one* cause of action, but potentially several different theories of recovery.

> The primary right theory is a theory of code pleading that has long been followed in California. It provides that a 'cause of action' is comprised of a 'primary right' of the plaintiff, a corresponding 'primary duty' of the defendant, and a wrongful act by the defendant constituting a breach of that duty. The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action. A pleading that states the violation of one primary right in two causes of action contravenes the rule against splitting a cause of action.

> As far as its content is concerned, the primary right is simply the plaintiff's right to be free from the particular injury suffered. It must therefore be distinguished from the *legal theory* on which liability for that injury is premised: Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief.

21

. . . .

> [T]he primary right theory . . . does not concern itself
> with *theories* of liability . . . but with the plaintiff's
> underlying right to be free from the injury itself.

*Crowley v. Katleman*, 8 Cal. 4th 666, 681-83 (1994) (internal
citations, emphasis and internal quotation marks omitted). Alleging
"additional motivations and reasons for [a] single action of
wrongful termination" adds legal theories to a complaint, not
causes of action. *Stockett*, 34 Cal. 4th at 448; *see also Takahashi
v. Bd. of Educ.*, 202 Cal. App. 3d 1464, 1476 (1988) ("[P]laintiff
specifically alleges that each act complained of caused the
dismissal (wrongful discharge, conspiracy, unconstitutional
discharge, discharge in violation of state civil rights) or was a
consequence of the termination (emotional distress, damages), part
and parcel of the violation of the single primary right, the single
harm suffered.").  The primary right asserted in *Stockett* was to be
free from wrongful termination of employment in violation of public
policy.

Not only must "each cause of action" – as that term is used in
California jurisprudence – be reflected in a timely claim, "the
factual circumstances set forth in the written claim must
correspond with the facts alleged in the complaint." *Nelson*, 139
Cal. App. 3d at 79.  "[T]he complaint is vulnerable to a demurrer
if it alleges a factual basis for recovery which is not fairly
reflected in the written claim." *Stockett*, 34 Cal. 4th at 447
(internal quotation marks omitted).

> A complaint's fuller exposition of the factual basis
> beyond that given in the claim is not fatal, so long as
> the complaint is not based on an entirely different set
> of facts. Only where there has been a complete shift in
> allegations . . . have courts generally found the

22

**complaint barred. Where the complaint merely elaborates or adds further detail to a claim, but is predicated on the same fundamental actions or failures to act by the defendants, courts have generally found the claim fairly reflects the facts pled in the complaint.**

*Stockett*, 34 Cal. 4th at 447. *Stockett* provided a couple of examples, from California cases, where the factual divergence between the claim and complaint was too great. *See Lopez v. S. Cal. Med. Group*, 115 Cal. App. 3d 673, 676-77 (1981) (concluding that a claim alleging that an automobile accident was caused by the state's negligence in issuing a driver's license to the defendant despite his epileptic condition was insufficient to permit an amended complaint that based liability instead on the state's neglect in failing to suspend or revoke the license despite the defendant's non-compliance with accident reporting and financial responsibility laws); *Donohue v. State*, 178 Cal. App. 3d 795, 803-04 (1986) (concluding that a claim alleging that an automobile accident was caused by the Department of Motor Vehicles' negligence in allowing an uninsured motorist to take a driving test did not give adequate notice of the claim in the complaint that the accident was caused by the department's negligence in failing to properly supervise and instruct the driver during the driving exam). Basing liability on a different wrongful act than was reflected in the claim is fatal. *See Stockett*, 34 Cal. 4th at 448 (discussing and distinguishing *Fall River,* stating that "Stockett's complaint, in contrast, alleged liability on the same wrongful act.").

Plaintiff's Claim contains two claims pertinent to his whistleblower allegations – his claim for "Wrongful

Demotion/Termination in Violation of Cal. Bus. & Prof. C. § 2056 & Conspiracy Relating Thereto" and his claim for "Per Se Libel/Ratification by KMC."

Taking the later claim first (Per Se Libel/Ratification by KMC), Plaintiff's Claim asserts that in a letter dated October 17, 2005, from Drs. Kercher, Ragland, Abraham, and Harris, Plaintiff was informed that three letters of dissatisfaction would be entered in his medical staff file. Plaintiff asserts that in so reprimanding him, these doctors "failed to comply with KMC bylaws." When Plaintiff later viewed the contents of the three letters of dissatisfaction, "one" of them, from Dr. William Roy, was "defamatory" and "maliciously defamed Complainant's professional competence." In his Second Amended Complaint, Plaintiff does not assert a claim for libel per se (or breach of KMC bylaws). Rather, Plaintiff claims that the reprimand letter dated October 17, 2005, was unlawful retaliation for engaging in whistleblowing activity under Health & Safety Code § 1278.5.

In his Second Amended Complaint, Plaintiff asserts that on October 12, 2005, he gave a presentation at a monthly KMC oncology conference "highlighting concerns regarding a patient that might need a hysterectomy, and the need for *Internal Pathology Review*." (Doc. 241 at 14) (Emphasis added.) Allegedly, "[a]fter the conference, Harris solicited letters of disapproval from conference participants, including Roy." (*Id*. at 6.) Then, on or about October 17, 2005, Plaintiff was ordered to attend a meeting with Kercher, Harris and Ragland during which they informed Plaintiff that "they had received letters of disapprobation

('Disapprobation Letters') from three conference participants – one of which was the Roy [l]etter – and would be issuing a letter of *reprimand* later that day which would be entered into Plaintiff's medical staff file." (*Id*. at 15-16.) (Emphasis added.) Later that day, Harris, Kercher, Ragland and Abraham "issued a formal letter of *reprimand* addressed to Plaintiff which stated 'Your repeated misconduct at the Tumor Conference on October 12, 2005 was noted by numerous attendants, three of which have written letters of their dissatisfaction, which will be entered into your medical staff file.'" (*Id*. at 16.) (Emphasis added.)

In a section of the Second Amended Complaint entitled "Whistleblowing" Plaintiff asserts that he engaged in various whistleblowing activities including reporting "the need for *Internal Pathology Review*." (*Id.* at 10.) (Emphasis added.) In a section of the Second Amended Complaint entitled "Adverse Action" Plaintiff lists "adverse employment actions" allegedly taken against him including "reprimands." (Doc. 241 at 27.) In Plaintiff's retaliation claim under § 1278.5, Plaintiff incorporates all previous allegations (including the ones just discussed) and Plaintiff asserts that he was retaliated against for engaging in "whistleblowing activity." (Doc. 241 at 31.) To the extent his claim under § 1278.5 attempts to premise liability on the "reprimand" letter dated October 17, 2005, and the associated letters of dissatisfaction, Plaintiff's claim is new and not previously described in his prior government Claim.

Assuming *arguendo* that Plaintiff's "libel per se/Ratification by KMC" claim, as stated in Plaintiff's Claim, and his retaliation

claim under § 1278.5, as stated in his Second Amended Complaint, are based on the violation of the same primary right, the factual variance between these claims is too great.  Plaintiff's claim that in reprimanding him the doctors "failed to comply with the KMC bylaws" and one of the letters of dissatisfaction was "defamatory" in nature is entirely different from the allegation that the reprimand letter dated October 17, 2005, was unlawful retaliation for Plaintiff's engagement in protected whistleblowing under § 1278.5 of the Health & Safety Code.  The breaching of KMC's bylaws, or the defaming of Plaintiff's character, is different wrongful conduct than unlawfully retaliating against Plaintiff for engaging in whistleblowing.  Although a complaint can add further detail to a claim, Plaintiff's Second Amended complaint asserts a basis for recovery that was not fairly described in his Claim.  To the extent Plaintiff's claim under § 1278.5 of the Health & Safety Code attempts to premise liability on the ground that the reprimand was unlawful retaliation for Plaintiff's engaging in whistleblowing, it is barred.

As to the "Wrongful Demotion/Termination in Violation of Cal. Bus. & Prof. C. § 2056 & Conspiracy Relating Thereto" claim, Plaintiff alleges that he suffered a particular injury: a "demotion," i.e., being removed from his chairmanship position.[8] Even though this demotion has provided the basis for multiple legal theories because it allegedly violated several laws including the Health & Safety and Labor Codes, these legal theories, based on the

---

[8] Plaintiff also referred to it as a "termination."

26

same injury, comprise but one cause of action for the violation of one primary right, i.e., the right to be free from unlawful demotion.  As in *Stockett*, Plaintiff did not need to separately present these additional statutory theories.

In terms of factual variance, Plaintiff asserts in his Claim that he was demoted by Bryan (i.e., he lost his chairmanship) because Plaintiff raised "concerns relating to patient health care" in e-mails and communications to Bryan and other leaders on the medical staff.  Plaintiff listed several of these concerns in his Claim, including "chronically incomplete or inaccurate KMC blood component product chart copies, in violation of state regulations and accreditation standards of JCAHO, CAP, and AABB." (Doc. 241 at Ex. 2.)

The Second Amended Complaint repeats these same facts to allege, in an indirect way, that Plaintiff raised these concerns to various parties, including Bryan, key members of KMC's medical staff, his employer, and Barmann, and was demoted for doing so in violation of § 1278.5 of the Health & Safety Code and § 1102.5 of the Labor Code.  To this extent, his Second Amended Complaint asserts a factual basis for recovery that is fairly reflected in his government Claim — both are based on Plaintiff's alleged wrongful demotion for his engagement in whistleblowing activity. Plaintiff's Second Amended Complaint, however, goes much further.

Plaintiff' Second Amended Complaint contains allegations that *post-date* his Claim.[9] These new allegations include the following:

* On or about September 18, 2006, Barnes sent Plaintiff's attorney a proposed amendment ('Amendment') to the Second Contract which included a base salary reduction of over 35% ('Paycut') . . . .

* On or about September 22, 2006, Plaintiff executed the Amendment memorializing the Paycut and submitted it to Barnes.

* On or about October 3, 2006, the Board of Supervisors for Defendant County voted to approve the Amendment.

* On October 4, 2006, Plaintiff's 90-day personal necessity leave ended and Plaintiff returned to work at KMC as a staff pathologist. Plaintiff's former subordinate, Defendant Dutt, was chosen to replace Plaintiff as Acting Chair of Pathology.

* Between on or about October 4, 2006 until on or about December 7, 2006, Defendant Dutt yelled at, harassed, insulted, ridiculed Plaintiff, both verbally and in a series of emails.

* On or about November 28, 2006, after almost six years of trying to reform KMC from within, Plaintiff finally blew the whistle on KMC, formally reporting his Concerns to the Joint Commission on Accreditation of Hospital Organizations, the College of American Pathologists, and the California Department of Health Services ('Authorities').

* On or about December 4, 2006, Plaintiff submitted a written complaint to KMC leadership about numerous additional concerns regarding the quality of patient care and the deterioration of the pathology department.

* On or about December 4, 2006, Plaintiff sent a letter addressed to Culberson and carbon-copied to key members of KMC's medical staff and administration, protesting Defendant Dutt's behavior and raising additional concerns about patient care quality, safety and legal noncompliance.

---

[9] These allegations also post-date the letter the County sent to Plaintiff "dated September 15, 2006 . . . giving notice that Plaintiff's [Claim] was deemed rejected by operation of law." (Doc. 241 at 29.)

> **\* On December 7, Plaintiff was placed on involuntary administrative leave allegedly 'pending resolution of a personnel matter'.**
>
> **\* On December 7, 2006, Defendants County and Harris placed Plaintiff on administrative leave, denying him the opportunity to earn professional fees of roughly $100,000 per year as provided for in Plaintiff's employment contract . . . .**
>
> **\* On December 13, 2006, Plaintiff sent a letter to David Culberson ('Culberson'),interim Chief Executive Officer of KMC, and carbon-copied to members of KMC's medical staff leadership, informing him that he had reported his Concerns to the Authorities.**

(Doc. 241 at 7-8, 22-23, 27.) Plaintiff's whistleblower claims allege that he finally blew the whistle to "Authorities" on or about November 28, 2006, and, as a result, he was retaliated against in violation of § 1278.5 of the Health & Safety Code and § 1102.5 of the Labor Code. (*Id.* at 30-31.) Months *after* he submitted his original Claim, the County allegedly reduced his compensation via an amendment to his employment contract and forced him to take administrative leave. Plaintiff's attempt to base whistleblower claims under § 1278.5 of the Health & Safety Code and § 1102.5 of the Labor Code on wrongful retaliatory acts and whistleblowing that post-date his Claim creates a fatal variance between his Second Amended Complaint and his Claim.

At oral argument on the motion, Plaintiff pointed out that he filed a supplemental claim with the County to include post-Claim events. The Second Amended Complaint does allege that, "[o]n April 23, 2007, Plaintiff filed a supplemented Tort Claims Act complaint with the County of Kern, supplemented to reflect events occurring after the filing of the initial Tort Claims Act complaint on July

29

3, 2006." (Doc. 241 at 29.)[10]  In response, Defendants argued that although Plaintiff filed a supplemental claim on April 23, 2007, Plaintiff filed his initial federal Complaint in this action months earlier on January 6, 2007, and the initial Complaint contained his whistleblower claims under Health & Safety Code § 1278.5 and Labor Code § 1102.5.

A review of Plaintiff's initial Complaint[11] reveals that Defendants are correct; Plaintiff asserted whistleblower claims under Health & Safety Code § 1278.5 and Labor Code § 1102.5. (Doc. 2.)  More important, these claims are based on alleged retaliatory acts and whistleblowing that post-date Plaintiff's Claim and pre-date Plaintiff's supplemental claim submitted to the County.  The allegations that post-date Plaintiff's Claim and pre-date his supplemental claim include:

> * On or about September 18, 2006, Barnes sent Plaintiff a proposed amendment ('Amendment') to the Second Contract

---

[10]  This alleged "supplemented Tort Claims Act complaint" is not attached to the Second Amended Complaint.

[11]  In a motion for judgment on the pleadings, a district court may consider matters of judicial notice without converting the motion into a motion for summary judgment. *Ritchie*, 342 F.3d at 908.  A district court may take judicial notice of "matters of public record." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (internal quotation marks omitted); *see also Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1198 (9th Cir. 1988) ("[T]he court may properly look beyond the complaint only to items in the record of the case or to matters of general public record."). Plaintiff's prior pleadings in this case are matters of public record, which are judicially noticeable. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006); *Pavone v. Citicorp Credit Servs., Inc.*, 60 F. Supp. 2d 1040, 1045 (S.D. Cal. 1997).  Plaintiff's prior pleadings may be considered. Fed. R. Evid. 201(c).

which included a base salary reduction of over 35% ('Paycut') . . . .

*On or about September 22, 2006, Plaintiff executed the Amendment memorializing the Paycut and submitted it to Barnes.

* On or about October 3, 2006, the Board of Supervisors for Defendant County voted to approve the Amendment.

* On October 4, 2006, Plaintiff's 90-day personal necessity leave ended and Plaintiff returned to work at KMC as a staff pathologist. Plaintiff's former subordinate, Philip Dutt, MD ('Dutt'), was chosen to replace Plaintiff as Acting Chair of Pathology.

* Between on or about October 4, 2006 until on or about December 7, 2006, Dutt yelled at, harassed, insulted and ridiculed Plaintiff, both verbally and in a series of emails.

* Finally, on or about November 28, 2006, after almost six years of trying to reform KMC from within in vain, Plaintiff formally reported his Concerns to the Joint Commission on Accreditation of Hospital Organizations, the College of American Pathologists, and the California Department of Health Services ('Authorities').

* Plaintiff submitted a written complaint to KMC leadership on December 4, 2006 about numerous additional concerns regarding the quality of patient care and the deterioration of the pathology department.

* On or about December 4, 2006, Plaintiff sent a letter addressed to Culberson and carbon-copied to key members of KMC's medical staff and administration, protesting Dutt's behavior and raising additional concerns about patient care quality, safety and legal noncompliance.

* On December 7, Plaintiff was placed on involuntary administrative leave allegedly 'pending resolution of a personnel matter'.

* On or about December 7, 2006, Culberson sent a letter addressed to Plaintiff informing him that he was being placed on involuntary paid administrative leave 'pending resolution of a personnel matter'.

* On December 13, 2006, Plaintiff sent a letter addressed to David Culberson ('Culberson'), interim Chief Executive Officer of KMC, and carbon-copied to members of KMC's medical staff leadership, informing him that 'KMC leadership has left me no choice but to report the above

31

issues (Concerns) to the appropriate state and accrediting agencies (Authorities)'.

(Doc. 2 at 8, 11-12, 25-26.)  These post-Claim allegations in Plaintiff's initial Complaint are identical, or nearly identical, to the post-Claim allegations in Plaintiff's Second Amended Complaint set forth above.  After Plaintiff's initial Complaint, Plaintiff filed a First Amended Complaint on January 8, 2007, and it contained all of these same allegations.  (Doc. 15 at 9, 12-13, 26-27.)

Plaintiff's attempt in his Second Amended Complaint (Doc. 241 at 31-32) to assert claims under the Health & Safety Code and the Labor Code based on post-Claim retaliation is problematic.  This post-Claim retaliation was advanced by Plaintiff as a basis for liability in his initial Complaint which he filed before he had submitted any supplemental claim to the County.  By resorting to litigation first, Plaintiff violated the letter, spirit and purpose of the Government Claims Act.

The Government Claims Act "requires a plaintiff to present a claim *before* bringing suit against a public entity." *Dixon*, 127 Cal. App. 4th at 40 (emphasis added); *see also Shirk*, 42 Cal. 4th at 208 ("*Before* suing a public entity, the plaintiff must present a timely written claim . . . .") (emphasis added).  "The legislature's intent to require the presentation of claims *before* suit is filed could not be clearer." *City of Stockton*, 42 Cal. 4th at 746. "Submission of a claim to a public entity pursuant to [the Act] is a *condition precedent* to a [civil] action." *Javor v. Taggart*, 98 Cal. App. 4th 795, 804 (2002) (emphasis added)

(alteration in original) (internal quotation marks omitted).  The purpose of the Government Claims Act is "to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, *without the expense of litigation*." *Stockett*, 34 Cal. 4th at 446 (emphasis added) (internal quotation marks omitted).  The Government Claims Act gives "the governmental entity an opportunity to settle just claims *before* suit is brought" and "enable[s] the public entity to engage in fiscal planning for potential liabilities and to avoid similar liabilities in the future." *Lozada*, 145 Cal. App. 4th at 1151 (emphasis added) (internal quotation marks omitted).

Before he submitted a supplemented claim to the County, Plaintiff filed a lawsuit and asserted whistleblower claims under the Health & Safety and Labor Codes based on retaliation that occurred after his original Claim.  Plaintiff did not submit these new claims to the County *before* he sued on them and did not give the County the opportunity to investigate and settle these claims without the expense of litigation.  These claims are raised in his Second Amended Complaint.  They are barred.  *See Janis v. Cal. State Lottery Comm'n*, 68 Cal. App. 4th 824, 828, 831 (1998) (concluding that an additional claim in Plaintiff's first amended complaint was barred by the Government Claims Act notwithstanding that, five days after filing the first amended complaint, the plaintiff presented a corresponding additional claim to the public entity defendant, and stating, "[plaintiff] did not file the administrative claim asserting the [additional claim] until after [the plaintiff] filed its civil complaint, and accordingly, [the

plaintiff] cannot maintain the civil action.").[12]

Even though Plaintiff's Second Amended Complaint was filed well after Plaintiff actually submitted his supplemental claim to the County, the presentation of a timely claim is (and was) a substantive "element" of Plaintiff's new whistleblower claims. *Shirk*, 42 Cal. 4th at 209. At the time Plaintiff filed his initial Complaint, one of the necessary elements of his new whistleblower claims was missing – he had not presented any claim including them. This substantive defect in Plaintiff's initial Complaint was not remedied by later pleadings, including his Second Amended Complaint. *See Radar v. Rogers*, 49 Cal. 2d 243, 247 (1957) ("[A] supplemental complaint cannot aid an original complaint which was filed before a cause of action had arisen."); *Morse v. Steele*, 132 Cal. 456, 458 (1901) ("This action was prematurely brought. For that reason the original complaint must fall. In such a case a supplemental complaint has no place as a pleading."); *Walton v. Kern County*, 39 Cal. App. 2d 32, 34 (1940) ("The general rule is that where an action is prematurely brought, and the original complaint must fall, a supplemental complaint has no place as a pleading" and "[o]rdinarily, a plaintiff's cause of action must have arisen before the filing of the complaint and he may not recover in a cause of action arising after the suit is filed");

---

[12] There are cases in which courts have permitted the complaint to go forward where it was prematurely filed within a relatively short time *after* the plaintiff had submitted a claim to the public defendant, or where after the filing of the complaint, the plaintiff applied for and obtained relief from the claims statute requirements. *See Bodde*, 32 Cal. 4th at 1243-44. No such scenario exists here.

Eileen C. Moore & Michael Paul Thomas, California Civil Practice Procedure, § 7.33 (2008) ("A plaintiff's cause of action must have arisen before the filing of the original complaint and he or she may not, by way of a supplemental complaint, recover when facts occurring after the suit is filed have given rise to the cause of action."); *cf*. *Sparrow v. U.S. Postal Serv.*, 825 F. Supp. 252, 255 (E.D. Cal. 1993) (stating, with respect to the Federal Tort Claims Act, that "[i]f the claimant is permitted to bring suit prematurely and simply amend his complaint after denial of the administrative claim, the exhaustion requirement would be rendered meaningless").[13]

Although Plaintiff does not invoke Government Code § 910.6, it is unavailing in this case. That section provides:

> A claim may be amended at any time before the expiration of the period designated in Section 911.2 or before final action thereon is taken by the board, whichever is later, if the claim as amended relates to the same transaction or occurrence which gave rise to the original claim. The amendment shall be considered a part of the original claim for *all purposes*.

§ 910.6 (emphasis added). Assuming, *arguendo*, that "all purposes"

---

[13] Because presentation of a claim under the Government Claims Act is a substantive element of the plaintiff's later-filed claim, a presentation failure is not an affirmative defense. *See Wood v. Riverside Gen. Hosp.*, 25 Cal. App. 4th 1113, 1119 (1994) ("Since compliance with the claims statute is an element of plaintiff's cause of action, failure to comply is not an affirmative defense."); *see also Illerbrun v. Conrad*, 216 Cal. App. 2d 521, 524-25 (1963) (concluding that where a claims presentation requirement in a City charter and ordinance was a condition precedent to litigation and an "integral part of the plaintiff's cause of action" the failure to comply with it was not an affirmative defense or a plea in abatement). Although Defendants did not specifically allege Plaintiff's failure to comply with the Government Claims Act in their Answer, this omission is immaterial.

means that if a lawsuit was filed *after* the submission of an original claim but *before* the submission of a timely amended claim, the amended claim would be "considered part of the original claim" and, by operation of law, would be regarded as having been presented *before* the lawsuit was filed, this reading of § 910.6 does not help Plaintiff here.  Section 910.6 comes into play only when the claim "as amended relates to the *same* transaction or occurrence *which gave rise to the original claim.*" (Emphasis added.)  The retaliatory acts that occurred months *after* Plaintiff's Claim did not "give rise to [his] original claim." Subsequent retaliation under the Health & Safety Code and the Labor Code is not the same "transaction or occurrence" that gave rise to the original claim.  Even assuming, *arguendo*, Plaintiff's supplemental claim on April 23, 2007, contained allegations regarding the purported retaliation and whistleblowing that occurred months after his original Claim (and further assuming that the supplemental claim was timely), the supplemental claim is not within § 910.6.

The Second Amended Complaint also contains allegations regarding purported retaliation that took place after Plaintiff's Claim, and after Plaintiff's supplemental claim.  In his Second Amended Complaint, Plaintiff asserts that "[o]n May 1, 2007, Defendant County sent an email to Plaintiff notifying him of its decision not to renew Plaintiff's employment contract, which was not due to expire until October 4, 2007, and to 'let the contract run out.'" (Doc. 241 at 8.)  Plaintiff apparently alleges this was an adverse employment action. (Doc. 241 at 27.)

In a prior complaint, i.e. Plaintiff's "Second Supplemental Complaint," filed on June 13, 2007, Plaintiff also alleged that the May 1, 2007, notification of the County's decision was an adverse employment action. (Doc. 30 at 33.) Plaintiff sued over this action, premising liability for his whistleblower claims on it, before he had filed any claim or supplemental claim with the County to reflect this event. His second supplemental claim came months later, on October 16, 2007, after he had already filed his Second Supplemental Complaint. (Doc. 241 at 30.) Presentation of a claim is a condition precedent to litigation, and resorting to litigation first frustrates the purpose of the Government Claims Act.

In an effort to save his whistleblower claims, Plaintiff raises several arguments.

Plaintiff argues that Defendants conceded in discovery responses that Plaintiff has exhausted all of his "administrative remedies," and as a result, Defendants' motion is baseless. (Doc. 293 at 1.) Plaintiff's argument goes beyond the pleadings. In any event, "[t]he doctrine of exhaustion of administrative remedies has no relationship whatever to" the "claim-filing requirements of the Government Code" which exist "for the benefit of the state." *Bozaich v. State*, 32 Cal. App. 3d 688, 698 (1973). Unlike the claim-filing requirements, "[t]he doctrine of exhaustion of administrative remedies evolved for the benefit of the courts" and its "basic purpose is to secure a preliminary administrative sifting process." *Id*. (internal quotation marks omitted). Even if it were proper to consider the fact that Defendants conceded in discovery that Plaintiff "exhausted his administrative remedies"

(which may be true with respect to Plaintiff's FEHA claims), this concession does not help Plaintiff.

Plaintiff also argues that before he filed his Claim he sent a detailed letter to the County in which he mentioned all of his potential claims. This argument goes beyond the pleadings. Even if it were proper to consider this argument, it is without merit. Any letter he sent *before* his Claim did not, and could not, include the alleged retaliatory acts and whistleblowing that occurred *after* his Claim.

Finally, Plaintiff argues that a complaint he submitted to the Department of Fair Employment and Housing ("DFEH") on July 31, 2006 (stamped received on August 3, 2006), attached to the Second Amended Complaint, put Defendants on notice of all of his claims, including his whistleblower claims. This argument lacks merit for multiple reasons. First, this July 2006 DFEH complaint did not, and could not, contain any of the post-Claim retaliatory acts and whistleblowing that occurred after Plaintiff submitted this DFEH complaint.[14] Second, more importantly, asserting non-FEHA claims in a DFEH complaint does not satisfy the Government Claims Act requirements. *See Linkenhoker v. Rupf*, No. C-06-05432-EDL, 2007 WL 404783, at *8 (N.D. Cal. Feb. 2, 2007); *Williams v. County of Marin*, No. C03-2333 MJJ, 2004 WL 2002478, at *11 (N.D. Cal. Sept. 8, 2004).

---

[14] Plaintiff's later-filed DFEH complaint dated November 12, 2006 (stamped received on November 14, 2006), which is attached to the Second Amended Complaint, also does not contain any allegations regarding Plaintiff's post-Claim whistleblowing, or his involuntary administrative leave which started in December 2006.

To the extent Plaintiff's claims under § 1278.5 of the Health & Safety Code and § 1102.5 of the Labor Code attempt to premise liability on whistleblower retaliation that occurred *after* Plaintiff presented his Claim, and to the extent such alleged unlawful retaliation was sued upon before Plaintiff submitted a claim or "supplemented" claim to the County, they are barred.  For example, Plaintiff cannot maintain his whistleblower claims on the theory that because of his whistleblowing, Defendants committed an act of unlawful retaliation by placing Plaintiff on paid administrative leave.  To the extent, however, that Plaintiff's whistleblower claims are predicated on his alleged retaliatory demotion, they survive.

## VI.    CONCLUSION

For the foregoing reasons, Defendants' motion is GRANTED in part without leave to amend.  To the extent Plaintiff's claim under § 1278.5 of the Health & Safety Code is premised on the ground that the reprimand was unlawful retaliation for Plaintiff's engaging in whistleblowing, it is barred.  Plaintiff's additional post-Claim whistleblower claims are also barred.  As to all remaining grounds, the motion is DENIED.

IT IS SO ORDERED.

Dated:   April 3, 2009                    _____/s/ Oliver W. Wanger_____
                                          UNITED STATES DISTRICT JUDGE

**39**