1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICE OF EUGENE LEE
Eugene D. Lee (SB#: 236812)
555 West Fifth Street, Suite 3100
Los Angeles, CA 90013
Phone: (213) 992-3299
Fax: (213) 596-0487
email: elee@LOEL.com

Attorneys for Plaintiff
DAVID F. JADWIN, D.O.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID F. JADWIN, D.O., | Civil Action No. 1:07-cv-00026 OWW TAG |
| Plaintiff, | PLAINTIFF'S CONSOLIDATED MOTIONS *IN LIMINE* 1-17. |
| v. | DATE: May 8, 2009 |
| COUNTY OF KERN, et al., | TIME: 12:00 p.m. |
| Defendants. | CRTM: U.S. Dist. Ct., Crtm. 3 |
| | 2500 Tulare St., Fresno CA |
| | TRIAL: May 12, 2009 |
| | Action Filed: January 6, 2007 |

TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

    Please take notice that on May 8, 2009, at 12:00 a.m., or as soon thereafter as the Court may hear

the matter, before the Honorable Oliver Wanger, United States District Court, Courtroom 3, 2500 Tulare

St, Fresno, California, Plaintiff David F. Jadwin, D.O., will and hereby does move, pursuant to the

Court's Order Following Preliminary Pretrial Conference, for orders *in limine* as follows.

    This consolidated motion is made pursuant to Federal Rules of Evidence 401-404, 615, 702, 703

or 705, as specified below, and is based on the attached Memorandum of Points and Authorities,

Declaration of Eugene Lee, the pleadings and other papers on file in this action, and any and all

documentary evidence or oral argument that may be presented in connection with the hearing on this

motion.

1

2

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Plaintiff David F. Jadwin, D.O. ("Plaintiff" or "Dr. Jadwin") is the former Chair of Pathology at Kern Medical Center ("KMC" or "the hospital")

In October of 2005, the senior medical staff's decided to place multiple letters of reprimand in Dr. Jadwin's credentials file for a 5-minute time overrun during a 1-hour medical conference. The fallout from this even exacerbated Dr. Jadwin's chronic depression to the point that it became disabling and Dr. Jadwin was forced to request and was granted a reduced work schedule medical leave as an accommodation. When Dr. Jadwin requested an extension of his reduced work schedule leave, Defendant Peter Bryan, Chief Executive Officer of KMC, both withdrew his accommodation and interfered with his right (under the Family and Medical Leave Act, the California Family Rights Act, and the California Fair Employment and Housing Act) to a medically necessary reduced work schedule, by requiring him to go on full-time medical leave instead, so as to burn up his medical leave allotment. Mr. Bryan also threatened Plaintiff with termination should he not return to work full-time despite his disability.

Roughly six weeks later, during which Plaintiff was expressly ordered not to contact anyone or enter the hospital premises on threat of termination, Mr. Bryan recommended and Defendant County of Kern ("KC" or "the county") endorsed the decision to unilaterally demote Plaintiff solely for "unavailability" due to his medical leave, his subsequent absence from the hospital and his failure to make any effort to contact anyone at the hospital. Further, KC conditioned Dr. Jadwin's return to work as a regular pathologist on his release to full time work, and acceptance of disparate terms and conditions, including an excessive pay cut and abbreviated duration of the employment contract.

Although the Pathology Department "continue(d) to function well" while Dr. Jadwin was on part-time leave; within months of his removal as Chair, it was in "chaos". Two months after Dr. Jadwin had returned to work as a demoted staff pathologist, KMC placed Dr. Jadwin on administrative leave "pending resolution of a personnel matter." KC gave Dr. Jadwin no procedural due process as guaranteed by the Fourteen Amendment. Dr. Jadwin remained on administrative leave for another ten

months until his contract expired on October 4, 2007. No one from KC contacted him about his administrative leave or renewal of his employment contract or responded to his numerous requests for an explanation.

KC then decided not to renew Dr. Jadwin's contract: "he had been on medical leave, and had requested even more leave, and for that reason and the fact that he was suing us, we decided not to renew his contract."

### A.   MOTION 1 TO EXCLUDE NON-PARTY WITNESSES FROM THE COURTROOM.

Plaintiff hereby moves *in limine* for an order excluding all witnesses from the courtroom, other than Plaintiff and a single designated representative of Defendant County of Kern ("Defendant County"), until they have been dismissed as a witness.

Rule 615 of the Federal Rules of Evidence provides that "[a]t the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses." Fed. Rule Evid., Rule 615. Under Rule 615, such an exclusion order shall not apply to "a party who is a natural person" or to "an officer or employee of a party which is not a natural person designated as its representative by its attorney." *Id.*

Pursuant to Rule 615, Plaintiff hereby requests that the Court issue an order excluding all witnesses from the courtroom, except for Plaintiff and a single designated representative of Defendant County. In order to ensure that the purpose of Rule 615 is not defeated, in the event Defendant County designates a witness as its representative, Plaintiff requests that the order make clear that Defendant County may designate only one such representative and may not designate different representatives at different times during the trial.

### B.   MOTION 2 TO EXCLUDE EVIDENCE AND CONTENTIONS NOT DISCLOSED DURING DISCOVERY HEREIN.

Plaintiff moves *in limine* for an order excluding introduction of any evidence or contention not disclosed during discovery in this action, including, but not limited to, a poster entitled "Peter's Rules" and Exhibit 2 (Government Claims Act Complaint) to the Second Amended Complaint, both of which were disclosed to Plaintiff only this past week. In fact, to date, the poster has never been produced to Plaintiff. Discovery in this action closed in August 2008.

Defendants may not offer at trial any evidence that they failed to produce through discovery or through their initial disclosures, unless such evidence is being offered solely for purposes of impeachment. In particular, Defendants may not introduce any witnesses, information, or documents, which were not disclosed by Defendants prior to the discovery cut-off date in this action, as extended in the Court's Order of June 3, 2008 (Doc. 149).

Rule 37 of the Federal Rules of Civil Procedure states, in pertinent part:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.

Rule 37 further states:

> If a party . . . fails . . . to serve answers or objections to interrogatories submitted under Rule 33, after proper service of the interrogatories, or . . . to serve a written response to a request for inspection submitted under Rule 34, after proper service of the request, the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under subparagraphs (A), (B), and (C) of subdivision (b)(2) of this rule.[1]

Subparagraph (B) of subdivision (b)(2) authorizes a court to issue an order prohibiting a "party from introducing designated matters in evidence." In other words, when a party fails to produce evidence in response to written discovery, Rule 37 permits a court to exclude such evidence at trial. *See also Zhang v. American gem Seafoods, Inc.*, 339 F.3d 1020, 1028 (9th Cir. 2003) (holding that the district court did not abuse its discretion in excluding evidence which was not produced until after the discovery cut-off date and where the only reason offered as a basis for nondisclosure was that there was a "rash of discovery"); See also, *Soderbeck v. Burnett County*, 821 F.2d 446, 452-454 (7th Cir. 1987) ("under Rule 37, if a party fails to serve proper answers to another party's interrogatories, the court may prohibit that party from introducing into evidence matters that were requested but not disclosed in those interrogatories").

Here, Defendant failed to disclose a poster entitled "Peter's Rules" (which still has not been produced to Plaintiff) and Exhibit 2 (Government Claims Act Complaint) to the Second Amended Complaint in response to Plaintiff's Request for Production No. 5 demanding production of any and all

---

[1] Under Rule 37, "an evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond." F.R.C.P. Rule 37(a)(3).

1   documents relating to the Fifth Affirmative Defense. Further, Defendant failed to reference this poster or

2   Exhibit 2 (Government Claims Act Complaint) to the Second Amended Complaint in its 3/13/08

3   Response and 5/28/08 Supplemental Response to Plaintiff's Interrogatory No. 3 asking Defendants to

4   state all facts on which Defendant relied for its Fifth Affirmative Defense.

5       Plaintiff has been prejudiced. Plaintiff was foreclosed from questioning the many witnesses he

6   was forced to depose regarding the Fifth Affirmative Defense about the "Peter's Rules" poster to

7   determine its effect, if any, on the working environment and relations between staff and Dr. Jadwin.

8   Further, Plaintiff was foreclosed from questioning deponents about whether the poster was taken

9   seriously or humorously, whether the "rules" contained therein were enforced, enforced inconsistently,

10  or ignored.

11      Defendants are not entitled to introduce at trial any evidence that they failed to disclose through

12  discovery or as part of their initial disclosures. Defendants' failure to produce such evidence is "without

13  substantial justification," given that they have had nearly two years to conduct discovery in this matter

14  and produce evidence in support of their claims. In addition, because trial is set to begin on May 12,

15  2009, Plaintiff Dr. Jadwin would be substantially prejudiced if Defendants were permitted to offer into

16  evidence information and documents which they did not previously produce and, in the case of the

17  poster, have yet to produce.

18      Accordingly, this Court should issue an order pursuant to Rule 37 prohibiting Defendants from

19  offering at trial any evidence not produced through discovery or their initial disclosures.

20      **C.    MOTION 3 TO EXCLUDE ANY REFERENCE TO DEFENDANT'S MEDICAL EXAMINATION AS "INDEPENDENT".**

21      Plaintiff hereby moves *in limine* for an order excluding any reference to Dr. Burchuk as an

22  "INDEPENDENT MEDICAL DOCTOR" or Dr. Burchuk's examination of Plaintiff as an

23  "INDEPENDENT MEDICAL EXAMINATION" or "INDEPENDENT MEDICAL EVALUATION"

24  and to Dr. Burchuk's report as an "INDEPENDENT MEDICAL REPORT", or any other terminology

25  that implies that the Rule 35 mental examination of Plaintiff conducted by Defendants' Rule 35

26  examiners (Robert Burchuk, M.D. and his consultant, David Allen) was of an "independent" nature.

27      Plaintiff David A. Jadwin. D.O., anticipates that Defendants will use the term "Independent

1    Mental Examination" or "Independent Medical Evaluation" to refer to the Rule 35 mental examination

2    which Defendants demanded that Plaintiff submit to because they have already done so in the past.

3          Pursuant to Federal Rule of Evidence 201, Plaintiff requests judicial notice that Defendants

4    demanded a Rule 35 examination of Plaintiff's mental state, hired and paid Dr. Burchuk and his assistant

5    to conduct the examination, and that neither Plaintiff nor the court participated in the selection of the Dr.

6    Burchuk and his assistant. [Fed. R. Evid. 201]. Who pays the piper calls the tune, so Dr. Burchuk and his

7    assistant were paid to report findings that favor the defense.

8          The court should exclude such evidence because it is irrelevant in that it does not tend to prove

9    or disprove an essential element of a claim or defense. [Fed. R. Evid. 401-402]. The nomenclature of

10   "independent" has somehow invaded the vernacular related to such examinations, but there is no

11   statutory basis for the term "independent" to be used in connection with a defense mental examination.

12   [Fed. R. Civ. Pro. 35]. Nor is there anything "independent" about a Rule 35 mental examination. By

13   their very nature, the proceedings in this case are adversarial.

14         Even if such evidence had probative value, it is *de minimus*, and is outweighed by the probability

15   that admission of such evidence would necessitate undue consumption of time and judicial resources,

16   create substantial danger of undue prejudice to Plaintiff, and confuse and mislead the jury. (Fed. R.

17   Evid. 403; see also, *People v. Wagner* (1982) 138 Cal.App.3d 473, 481 (medical records that contained

18   medical terminology that could have confused and mislead the jury was properly excluded)].

19         Any comment or attempted introduction of the above evidence will be improper and highly

20   prejudicial to plaintiff. Even if the court were to sustain an objection to the evidence at trial and to

21   instruct the jury to disregard it, the evidence would be so prejudicial that the plaintiff would not receive

22   a fair trial.

23         Plaintiff further asks this court for an order admonishing the defendant and its witnesses as well

24   as counsel not to introduce any such evidence in any form, and not to suggest, comment directly or

25   indirectly upon, or refer to any such evidence in any way before the jury.

26   **D.    MOTION 4 TO LIMIT EXPERT TESTIMONY TO DISCLOSED THEORIES
            AND OPINIONS OF DESIGNATED EXPERTS.**

27         Plaintiff hereby moves *in limine* to limit the testimony of experts only to those theories and

28

USDC, ED Case No. 1:07-cv-00026 OWW TAG
PLAINTIFF'S CONSOLIDATED MOTIONS *IN LIMINE* 1-18.                                    6

1  opinions stated at the respective depositions or final reports of designated experts.

2  First, Defendants' failure to designate any such witnesses as experts pursuant to Rule 26(a)(2)

3  renders their proposed testimony inadmissible under Rule 37(c)(1). Rule 26(a)(2) of the Federal Rules of

4  Civil Procedure sets forth the requirements for designating any witness expected to present testimonial

5  evidence under Rules 702, 703 or 705 of the Federal Rules of Evidence. Expert evidence that is <u>not</u>

6  disclosed pursuant to Rule 26(a) is inadmissible at trial. Fed. R. Civ. Proc., Rule 37(c)(1). Thus, if a

7  party fails to make the required expert witness disclosures pursuant to Rule 26(a)(2), the introduction of

8  the expert's testimony is improper, and any other party may bring a motion *in limine* to exclude the

9  expert's testimony. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1105-1107 (9th Cir.

10  2001) (holding that exclusion of expert's testimony was appropriate remedy for failing to fulfill required

11  disclosure requirements of Rule 26(a)).

12  Second, Rule 701 and Rule 702 state, respectively, that lay witnesses cannot proffer opinion

13  testimony that is not based on their own personal perception or that is based on scientific, technical or

14  other specialized knowledge within the scope of Rule 702 (*i.e.*, they cannot provide "expert" testimony),

15  and that experts must be qualified to offer expert testimony as a result of their knowledge, skill,

16  experience, training or education. In light of these requirements, any expert testimony by unqualified lay

17  witnesses is inadmissible pursuant to Rule 37(c)(1).

18  Defendant designated as its experts Robert Burchuk, M.D. (DME), Rick Sarkisian (Plaintiff's -

19  vocational employability, earning capacity, and work-life expectency), Constantine Boukidis (Plaintiff's

20  economic losses), and Thomas McAfee, M.D. (Plaintiff's performance as chair, core physician, and

21  professional relationships with other KMC staff). Nonetheless, Plaintiff anticipates that Defendants may

22  attempt to introduce expert testimony by unqualified lay witnesses, such as Bill Taylor, Jennifer

23  Abraham, Scott Ragland, and others regarding the guidelines and requirements of the monthly tumor

24  board, and Renita Nunn, Steve O'Connor , Sandra Chester and Patricia Perez regarding the

25  reasonableness of Plaintiff's notice of need for medical leave, and/or experts, such as David Allen, a

26  psychometric test consultant, whom Defendant has included in its witness list, that they did not

27  designate as experts pursuant to Rule 26(a)(2).

28  Plaintiff also anticipates that Dr. Ragland, a professed novice in FNAs who is not a pathologist,

will offer his opinion that the customary method for conducting outside review of FNA slides is flawed, and that the best method for sending FNA slides to outside review is to send as little information as possible with the slides so that the reviewer can conduct a double-blind study, and that UCLA's review of KMC's FNA slides was worthless because it did not follow this method.

Plaintiff also anticipates that members of the "peer review" committee who were not pathologists could opine that the FNA reports show that the work of Dr. Jadwin and other KMC pathologist was tardy because of the date on which the "final diagnosis" was entered into the record might be months from the date on which the "original diagnosis" was entered.

Plaintiff also anticipates that Dr. Abraham, a weight loss doctor and not a pathologist, will opine that Dr. Jadwin lacked collegiality and violated professional norms because he did not contact outside pathologists, point out discrepancies between his findings and theirs, and allow them an opportunity to "correct" their findings "off the record" somehow.

Obviously, neither Dr. Ragland, nor Dr. Abraham are experts on pathology or FNAs and are not qualified to form opinions on such matters, let alone opine on them. At this point in the litigation, Defendants' failure to disclose other expert testimony they plan to rely upon cannot be anything other than willful, and is not harmless or substantially justified. Therefore, expert testimony by anyone not designated as an expert is improper and should be excluded. If Defendants have not designated them as experts, there is no way for Plaintiff to determine whether any lay witnesses offering expert testimony even have the basic foundational qualifications for formulating such testimony.

In light of the foregoing, Plaintiff requests an order limiting expert testimony to disclosed theories and opinions. Further, Plaintiff requests an order admonishing Defendant, its witnesses, and counsel from trying to elicit or introduce such lay opinion evidence in any way before the jury.

**E.   MOTION 5 TO EXCLUDE SPECULATIVE INFORMATION IN THE FORM OF OPINIONS UPON WHICH ANY OF DEFENDANT'S EXPERT WITNESSES RELIES IN FORMING HIS OPINIONS.**

Plaintiff moves *in limine* for an order precluding Defendant, its counsel, and any expert witnesses shall from referring to, interrogating about, commenting on, arguing or relying upon or in any other manner attempting to introduce into evidence in any way, any allegations, documents, or written or oral testimony or any reference or inference to **speculative information** in the form of opinions upon

1 | which the expert witness relies in forming his or her expert opinions.

2 |      In *Hartford Accident & Indemnity Co. vs. Industrial Accident Commission, Gerald F. Houlahan*

3 | (1934) 140 Cal.App. 482, 35 P.2d 366, the court stated the following concerning expert testimony:

> "It is not sufficient that the referee or commissioner be satisfied as laymen of the correctness of [the expert's] view, but the law requires that they shall reach their conclusion on the basis of legally competent evidence. A mere surmise or conjecture does not constitute a 'foundation sufficient to support a finding of fact.'" (*Id.*, 35 P.2d at 368, emphasis added.)

7 |      Plaintiff anticipates that Defendant's experts, Thomas McAfee in particular, will offer opinions

8 | which he formed based on the actual allegations contained in Defendant's Answer, the actual questions

9 | posed by defense counsel to Plaintiff during his deposition, on opinions of non-experts regarding

10 | Plaintiff's competence as a pathologist and Chair of Pathology, and on the gossip that pervaded the

11 | workplace at KMC.

12 |      Any comment or attempted introduction of the above evidence will be improper and highly

13 | prejudicial to plaintiff. Even if the court were to sustain an objection to the evidence at trial and to

14 | instruct the jury to disregard it, the evidence would be so prejudicial that the plaintiff would not receive

15 | a fair trial.

16 |      Accordingly, Plaintiff asks this court for an order prohibiting the use of such improper

17 | speculative evidence, and admonishing the defendant and its witnesses as well as counsel not to

18 | introduce any such evidence in any form, and not to suggest, comment directly or indirectly upon, or

19 | refer to any such evidence in any way before the jury.

20 |      Plaintiff further requests this court to direct defense counsel to caution, warn, and instruct

21 | witnesses including Thomas McAfee not to make any reference to such evidence, and to follow this

22 | same order.

23 |      **F.    MOTION 6 TO EXCLUDE EVIDENCE OF COLLATERAL SOURCES.**

24 |      Plaintiff moves *in limine* for an order precluding Defendant, its counsel, and any expert

25 | witnesses shall from referring to, interrogating about, commenting on, arguing or relying upon or in any

26 | other manner attempting to introduce into evidence in any way, any allegations, documents, or written or

27 | oral testimony or any reference or inference to payments by a collateral source. The court should

28 | exclude such evidence because it is irrelevant in that it does not tend to prove or disprove an essential

1   element of a claim or defense. [Fed. R. Evid. 401-402]. Alternatively, if the court finds that such

2   evidence has some probative value, it should still exclude it. Any probative value is *de minimus*, and is

3   outweighed by the probability that admission of such evidence would necessitate undue consumption of

4   time and judicial resources, create substantial danger of undue prejudice to Plaintiff, and confuse and

5   mislead the jury. [Fed. R. Evid. 403]

6       A defendant may not mitigate damages from collateral payments where the plaintiff has been

7   compensated by an independent source, such as insurance, pension, continued wages or disability

8   payments. *Helfend v. Southern Cal. Rapid Transit Dist.* (1970) 2 Cal.3d 1, 17-18. The principle

9   espoused in the *Helfend* decision, known as the "collateral source rule," is well-recognized by the courts

10  of this state. See *Hrnjak v. Graymar, Inc.* (1971) 4 Cal.3d 725, 728-29 (prejudicial error to allow

11  evidence of plaintiff's receipt of compensation under medical payments section of automobile liability

12  policy); *Gersick v. Shilling* (1950) 97 Cal.App.2d 641, 649-50 (error to allow testimony that plaintiff's

13  medical bills were paid by his insurer).

14      Here, Defendant exacerbated Dr. Jadwin's chronic depression by creating a hostile work

15  environment and failing to provide reasonable accommodation in the form of part-time work from April

16  28 to September 11, 2006. *Bagatti v Dept of Rehabilitation* (2002) 97 Cal. App. 4th 344; *Huffman vs.*

17  *Interstate Brands Cos.* 121 Cal. App 4th 679, 695.(2004). Dr. Jadwin was forced to seek medical

18  treatment for the exacerbation of his chronic depression, and his medical insurer partially paid for this

19  treatment. These facts are squarely on point with the *Gersick* and *Hrnjak* decisions cited above.

20  Allowing evidence of such insurance payments would be wholly inconsistent with the collateral source

21  rule and would be prejudicial error. See *Hrnjak v. Graymar, Inc.* (1971) 4 Cal.3d 725 and *Gersick v.*

22  *Shilling, supra,* (1950) 97 Cal.App.2d 641.

23      Any comment or attempted introduction of the above evidence will be improper and highly

24  prejudicial to plaintiff. Even if the court was to sustain an objection to the evidence at trial and to

25  instruct the jury to disregard it, the evidence would be so prejudicial that the plaintiff would not receive

26  a fair trial.

27      Accordingly, plaintiff asks this court for an order prohibiting any collateral source and

28  admonishing the defendants and their witnesses as well as counsel not to introduce any evidence in any

form, and not to suggest, comment directly or indirectly upon, or refer to the evidence in any way before the jury asserting any such defenses claims or explanations including argument contrary to such admission of liability.

The court is further requested to direct defense counsel to caution, warn, and instruct witnesses not to make any reference to such evidence and to follow the same order.

### G.    MOTION 7 TO EXCLUDE EVIDENCE OF PRIOR CLAIMS, DEFENSES, OR PARTIES HEREIN.

Plaintiff moves *in limine* for an order precluding Defendant, its counsel, and any expert witnesses shall from referring to, interrogating about, commenting on, arguing or relying upon or in any other manner attempting to introduce into evidence in any way, any allegations, documents, or written or oral testimony or any reference or inference to prior claims, defenses, or parties that have been dismissed from or abandoned in this case.

Evidence is only relevant if it has a tendency to prove or disprove a fact that is of consequence to the determination of the action. (Fed. R. Evid., Rule 401.) The facts that are of consequence to the determination of the action are generally determined by the pleadings, motions and pre-trial orders on file therein. *See*, *e.g.*, *Clark v. Martinez,* 295 F.3d 809, 814 (8th Cir. 2002). Evidence that is not pertinent to the issues established by these documents (*e.g.*, evidence that tends to prove or disprove facts related to claims that have been dismissed) is immaterial, and it would be error to allow the introduction of such evidence. (Fed. R. Evid., Rule 402.)

Plaintiff has reason to believe that Defendants will attempt to introduce irrelevant, immaterial evidence at trial. Specifically, Plaintiff anticipates that Defendants will attempt to introduce evidence relating to their dismissed affirmative defenses, Plaintiff's dismissed whistleblowing, defamation, and wage claims, and the dismissed claims against the individual defendants that are no longer at issue in this litigation. Such evidence is irrelevant and immaterial and should be excluded on those grounds.

If the court finds that there is some degree of relevancy to this evidence, then such evidence should still be excluded because it would necessitate undue consumption of time and judicial resources, create substantial danger of undue prejudice to Plaintiff, and confuse and mislead the jury. (Fed. R. Evid., Rule 403.)

1    Because evidence pertaining to Defendants' dismissed affirmative defenses and Plaintiff's

2    dismissed claims is of no consequence to the determination of the action, the only purpose it can serve is

3    to cast Plaintiff in a negative light and create an undue prejudice against him in the minds of the jurors;

4    or to cast Defendants in a favorable light and create undue prejudice in their favor in the minds of the

5    jurors. Furthermore, there is an additional danger of prejudice because Plaintiff has relied upon the

6    rulings of this Court in preparing his case for trial, and is not prepared to defend himself against the

7    affirmative defenses and meritless contentions that this Court previously dismissed. Defendants should

8    be required to defend on the merits, not on their ability to create an effective evidentiary ambush.

9    Any comment or attempted introduction of the above evidence will be improper and highly

10   prejudicial to plaintiff. Even if the court were to sustain an objection to the evidence at trial and to

11   instruct the jury to disregard it, the evidence would be so prejudicial that the plaintiff would not receive

12   a fair trial.

13   Accordingly, Plaintiff asks this court for an order prohibiting the use of such irrelevant and

14   prejudicial evidence, and admonishing the defendant and its witnesses as well as counsel not to

15   introduce any such evidence in any form, and not to suggest, comment directly or indirectly upon, or

16   refer to any such evidence in any way before the jury.

### H.      MOTION 8 TO EXCLUDE EVIDENCE IN SUPPORT OF UNPLED DEFENSES.

18   Plaintiff moves *in limine* for an order precluding Defendant, its counsel, and any expert

19   witnesses from attempting to introduce at trial evidence supporting unpled defenses.

20   Evidence is only relevant if it has a tendency to prove or disprove a fact that is of consequence to

21   the determination of the action. (Fed. R. Evid., Rule 401.) The facts that are of consequence to the

22   determination of the action are generally determined by the pleadings, motions and pre-trial orders on

23   file therein. *See Clark v. Martinez*, 295 F3d 809, 814 (8th Cir. 2002). Evidence that is not pertinent to

24   the issues (*e.g.*, evidence that tends to prove or disprove facts related to any affirmative defenses not

25   raised by Defendants in their Answer) is immaterial, and it would be error to allow the introduction of

26   such evidence. (Fed. R. Evid., Rule 402.)

27   Plaintiff Dr. Jadwin anticipates that Defendants may attempt to introduce at trial evidence to

28   show that accommodating Plaintiff would cause Defendant undue hardship; that Dr. Jadwin was a health

or safety risk; that Dr. Jadwin was a "key employee" for purposes of medical leave; after-acquired evidence; avoidable consequences evidence; and/or that Defendant would have taken adverse actions against Plaintiff anyway for legitimate, non-discriminatory, non-retaliatory reasons. Evidence in support of an affirmative defense not at issue in this litigation is clearly irrelevant and immaterial and should be excluded on those grounds.

In addition, such evidence should be excluded because it would necessitate undue consumption of time and judicial resources, create substantial danger of undue prejudice to Plaintiff, and confuse and mislead the jury. (Fed. R. Evid., Rule 403.) Plaintiff will suffer undue prejudice if Defendant is allow to introduce evidence supporting unpled defenses, and then to move to conform its answer to proof at trial.

Thus, there is a very real danger of prejudice because Plaintiff not prepared to defend himself against new affirmative defenses that were not alleged by Defendants in their Answer. Defendants should be required to succeed on the merits of their pleaded defenses, not on their ability to create an effective evidentiary ambush.

Accordingly, Plaintiff asks this court for an order prohibiting the use of such irrelevant and prejudicial evidence, and admonishing the defendant and its witnesses as well as counsel not to introduce any such evidence in any form, and not to suggest, comment directly or indirectly upon, or refer to any such evidence in any way before the jury.

## I.     MOTION 9 TO EXCLUDE EVIDENCE REGARDING OTHER LITIGATION.

Plaintiff Dr. Jadwin anticipates that Defendants will attempt to introduce at trial evidence regarding other pending litigation between the parties, or prior litigation involving Dr. Jadwin. Evidence in support of other litigation not at issue in this litigation is clearly irrelevant and immaterial and should be excluded on those grounds.

Evidence is only relevant if it has a tendency to prove or disprove a fact that is of consequence to the determination of the action. (Fed. R. Evid., Rule 401.) The facts that are of consequence to the determination of the action are generally determined by the pleadings, motions and pre-trial orders on file therein. *See Clark v. Martinez*, 295 F3d 809, 814 (8th Cir. 2002). Evidence that is not pertinent to the issues (*e.g.*, evidence that tends to prove or disprove facts related to Plaintiff's claims or Defendant's Fifth Affirmative Defense) is immaterial, and it would be error to allow the introduction of such

1   evidence. (Fed. R. Evid., Rule 402.).

2       Moreover, to the extent defendant wishes to use other lawsuits to impugn plaintiff's character as

3   litigious, such evidence would be considered inadmissible character evidence, as specific instances of

4   conduct are not admissible to attack or support a witness' credibility. *Pan v. State Personnel Board*

5   (1986) 180 Cal. App 3d 351, 361; Evid. Code §1101.

6       Alternatively, if the court finds that such evidence is relevant, it should be excluded because it

7   would necessitate undue consumption of time and judicial resources, create substantial danger of undue

8   prejudice to Plaintiff, and confuse and mislead the jury. (Fed. R. Evid., Rule 403.) Admission of

9   evidence that creates the potential of a trial within a trial is disfavored. [*Zubulake v. UBS Warburg* LLC,

10  382 F. Supp. 2d 536, 543 (SD-NY, 2005)]. Courts have been cautious of permitting evidence of other

11  lawsuits even for impeachment purposes. *Lowenthal v. Mortimer* (1954) 125 Cal.App. 2d 636, 641, 270

12  p. 2d 942. In *Grenadier v. Surface Transp. Corporation* 271 App.Div. 460, 966 N.Y.S. 2d 130, cited

13  with approval in *Mortimer*, the defendant filed an accident report admitting to previous accidents. On

14  cross-examination, counsel elicited admissions the driver actually had more than two prior accidents,

15  this for the sole purpose of attacking the credibility of the witness. The Court commented:

16      "whether or not that was the object of the respondent's counsel, we think that the obvious
        effect of such testimony was to prejudice the minds of the jurors ... The extent to which
17      disparaging questions, not relevant to the issue but bearing on the credibility of a
        witness, may be put upon cross-examination is discretionary for the trial court ...
18      However, in the exercise of its discretion, the Court must keep such cross-examination
        within reasonable bounds ... In our view, in the circumstance of this case, such testimony
19      was improper and prejudicial." *Grenadier* at 66 N.Y.S. 2d at pg. 131. Other jurisdictions
        are in accord: *Brownhill v. Kivlin,* 317 Miss. 168, 57 N.E. 2d 539; *Nesbit v. Cumberland*
20      *Contracting Company,* 196 Md. 36, 75 A. 2d, 339; *Harper v. Dees,* 214 Ark. 111, 214
        S.W. 2d 788; *Ryan v. International Harvester Co. of America*, 204 Minn. 177, 283 N.W.
21      129.

22      Moreover, the *Lowenthal* Court held that the introduction of the substance of the other lawsuits

23  could have had no effect other than to prejudice the jury against the plaintiffs. "For litigiousness, in the

24  eyes of most people, it reflects more upon character than upon impairment of health." *Lowenthal, supra,*

25  125 Cal. App 2d at 641.

26      Because evidence pertaining to other litigation is of no consequence to the determination of the

27  action, the only purpose it can serve is to serve as impermissible character evidence so as to cast

28  Plaintiff in a negative light or Defendants in a positive light and create an undue prejudice against

Plaintiff or for Defendants in the minds of the jurors. At the same time, such evidence is not probative as to what occurred during Plaintiff's employment at KMC from October of 2005 to October of 2007.

Furthermore, there is an additional danger of prejudice because Plaintiff not prepared to defend himself against allegations relevant to other litigation that are not at issue in this litigation. Defendants should be required to succeed on the merits of their defenses, not on their ability to create an effective evidentiary ambush.

Accordingly, Plaintiff asks this court for an order prohibiting the use of such irrelevant and prejudicial evidence, and admonishing the defendant and its witnesses as well as counsel not to introduce any such evidence in any form, and not to suggest, comment directly or indirectly upon, or refer to any such evidence in any way before the jury.

**J.    MOTION 10 TO EXCLUDE REFERENCES TO PLAINTIFF'S DECISIONS RELATING TO PROSECUTION OF THIS CASE.**

Evidence is only relevant if it has a tendency to prove or disprove a fact that is of consequence to the determination of the action. (Fed. R. Evid., Rule 401.) The facts that are of consequence to the determination of the action are generally determined by the pleadings, motions and pre-trial orders on file therein. *See Clark v. Martinez*, 295 F3d 809, 814 (8th Cir. 2002). Evidence that is not pertinent to the issues (*e.g.*, evidence that tends to prove or disprove facts related to any affirmative defenses not raised by Defendants in their Answer) is immaterial, and it would be error to allow the introduction of such evidence. (Fed. R. Evid., Rule 402.)

Plaintiff Dr. Jadwin anticipates that Defendants will attempt to introduce at trial evidence regarding other litigation decisions, such as, the decision:

a)    not to bring certain claims;

b)    not to call a listed witness;

c)    to use videotaped deposition testimony instead of calling a live witness;

d)    not to introduce any disclosed document into evidence;

e)    not to call a treating physician;

Evidence regarding Plaintiff's litigation decisions (or rather Plaintiff's counsel's litigation

decisions) is subject to attorney-client confidential communications privilege, attorney work product privilege, as well as being clearly irrelevant and immaterial, and should be excluded on those grounds.

Alternatively, if the court finds that such evidence is relevant, it should be excluded because it would necessitate undue consumption of time and judicial resources, create substantial danger of undue prejudice to Plaintiff, and confuse and mislead the jury. (Fed. R. Evid., Rule 403.) Because evidence regarding Plaintiff's decisions on how to prosecute his claims is of no consequence to the determination of the action, the only purpose it can serve is to cast Plaintiff in a negative light or Defendants in a positive light and create an undue prejudice against Plaintiff or for Defendants in the minds of the jurors. At the same time, such evidence is not probative as to what occurred during Plaintiff's employment at KMC from October of 2005 to October of 2007.

It is improper for the defendant to argue that the jury should draw an adverse inference from the plaintiff's failure to call a particular witness unless there is some basis for drawing the inference. See, *Smith v. Covell* (1980) 100 Cal. App. 3d 947, 956-957; *Neumann v. Bishop* (1976) 59 Cal. App. 3d 451, 479, 482. An adverse inference does not arise from a party's failure to call a particular witness if both parties had an equal opportunity to call the witness at trial. *Smith, supra*, at pp. 956-957. In *Smith*, the plaintiffs sued the defendant for personal injuries arising from an automobile accident. During rebuttal argument, the defendant commented over objection on the plaintiffs' failure to call the physicians who treated one of the plaintiffs. The court of appeal held that allowing this argument was prejudicial error:

> Defense counsel in his rebuttal argument commented on plaintiffs' failure to call as witnesses the doctors ... who treated [one plaintiff] for injuries sustained in the accident; the implication was that such doctors would have testified adversely to plaintiffs' case ... . These doctors were equally available to subpoena by defendant had she chosen to call them. The inferences raised by counsel's argument were improper. Id. at pp. 957-960.

Accordingly, allowing Defendant to argue or raise an adverse inference regarding Plaintiff's failure to call a treating physician would be improper, and cause substantial danger of undue prejudice to Plaintiff, and confuse and mislead the jury. [Fed. R. Evid., Rule 403]. Similarly, allowing Defendant to argue or raise an adverse inference regarding Plaintiff's failure to call any other witness or fail to introduce a listed exhibit would be improper, and cause substantial danger of undue prejudice to Plaintiff, and confuse and mislead the jury. [Fed. R. Evid., Rule 403].

Accordingly, Plaintiff asks this court for an order prohibiting the introduction of such privileged,

irrelevant and prejudicial evidence, and admonishing the defendant and its witnesses as well as counsel not to introduce any such evidence in any form, and not to suggest, comment directly or indirectly upon, or refer to any such evidence in any way before the jury.

**K.    MOTION 11 TO EXCLUDE REFERENCES TO PLAINTIFFS' CLAIM FOR ATTORNEY'S FEES AND LITIGATION EXPENSES PURSUANT TO CALIFORNIA GOVERNMENT CODE § 12926; CALIFORNIA LABOR CODE § 2699, CALIFORNIA HEALTH & SAFETY CODE § 1278.5(G) AND/OR CODE OF CIVIL PROCEDURE § 1021.5, 29 U.S.C. § 2617(A)(3), 42 U.S.C. § 1988, AND ALL OTHER AND ADDITIONAL LEGAL BASES.**

Evidence is only relevant if it has a tendency to prove or disprove a fact that is of consequence to the determination of the action. (Fed. R. Evid., Rule 401.) The facts that are of consequence to the determination of the action are generally determined by the pleadings, motions and pre-trial orders on file therein. *See Clark v. Martinez*, 295 F3d 809, 814 (8th Cir. 2002). Evidence that is not pertinent to the issues (*e.g.*, evidence that tends to prove or disprove facts related to any affirmative defenses not raised by Defendants in their Answer) is immaterial, and it would be error to allow the introduction of such evidence. (Fed. R. Evid., Rule 402.)

Plaintiff Dr. Jadwin anticipates that Defendants will attempt to introduce at trial evidence regarding a prevailing plaintiff's right to statutory fees under FEHA, CFRA, and FMLA. A prevailing plaintiff's entitlement to statutory attorney's fees is not a jury question, so it is clearly irrelevant and immaterial at trial and should be excluded on those grounds.

Accordingly, Plaintiff asks this court for an order prohibiting the use of such irrelevant evidence, and admonishing the defendant and its witnesses as well as counsel not to introduce any such evidence in any form, and not to suggest, comment directly or indirectly upon, or refer to any such evidence in any way before the jury.

Plaintiff further requests this court to direct defense counsel to caution, warn, and instruct witnesses not to make any reference to such evidence, and to follow this same order.

**L.    MOTION 12 TO EXCLUDE REFERENCES THAT THIS LAWSUIT OR A VERDICT IN THIS CASE FOR PLAINTIFF OR AGAINST DEFENDANT, OR SUITS AGAINST HEALTH CARE PROVIDERS AND/OR VERDICTS IN SUCH SUITS FOR PLAINTIFFS, GENERALLY, WILL OR MIGHT HAVE ANY OF THE FOLLOWING EFFECTS:**

•    Is, will, or might be a financial burden on the public.

USDC, ED Case No. 1:07-cv-00026 OWW TAG
PLAINTIFF'S CONSOLIDATED MOTIONS *IN LIMINE* 1-18.                                                    17

1    • Will threaten or adversely affect the financial stability and viability of

2    Kern Medical Center, Kern County or the State of California.

3    • Will or might increase the number and/or frequency of medical and/or

4    other health care liability claims.

5    • Will or might adversely affect the affordability, accessibility and/or

6    availability of health care and treatment available to the citizens of Kern

7    County, California or nationally.

8    • Will or might adversely affect the reputation, ability, availability and

9    willingness of other health care providers to render health care services in the

10   future, and any reference to the adverse effect a judgment would have upon

11   this or any community's need for additional health care providers.

12   • Will or might cause a serious public problem of availability or

13   affordability of health care professional liability insurance in the County of

14   Kern, the State of California or nationally.

15   • Will or might contribute to a health care crisis in Kern County, the State of

16   California or nationally.

17       Evidence is only relevant if it has a tendency to prove or disprove a fact that is of consequence to

18   the determination of the action. (Fed. R. Evid., Rule 401.) The facts that are of consequence to the

19   determination of the action are generally determined by the pleadings, motions and pre-trial orders on

20   file therein. *See Clark v. Martinez*, 295 F3d 809, 814 (8th Cir. 2002). Evidence that is not pertinent to

21   the issues (*e.g.*, evidence that tends to prove or disprove facts related to any affirmative defenses not

22   raised by Defendants in their Answer) is immaterial, and it would be error to allow the introduction of

23   such evidence. (Fed. R. Evid., Rule 402.)

24       Plaintiff Dr. Jadwin anticipates that Defendants will attempt to introduce at trial evidence

25   regarding the fiscal impact that an adverse judgment might have on Defendant's ability to provide

26   adequate patient care at KMC or provide other services to the citizens of Kern County. Evidence in

27   support not at issue in this litigation is clearly irrelevant and immaterial and should be excluded on those

28   grounds.

Alternatively, if the court finds that such evidence is relevant, it should be excluded because it would necessitate undue consumption of time and judicial resources, create substantial danger of undue prejudice to Plaintiff, and confuse and mislead the jury. (Fed. R. Evid., Rule 403.). Because evidence pertaining to the fiscal impact of an adverse judgment on Defendant and its patients is not at issue herein, the only purpose it can serve is to cast Plaintiff in a negative light or Defendants in a positive light and create an undue prejudice against Plaintiff or for Defendants in the minds of the jurors. At the same time, such evidence is not probative as to what occurred during Plaintiff's employment at KMC from October of 2005 to October of 2007.

Accordingly, Plaintiff asks this court for an order prohibiting the use of such irrelevant and prejudicial evidence, and admonishing the defendant and its witnesses as well as counsel not to introduce any such evidence in any form, and not to suggest, comment directly or indirectly upon, or refer to any such evidence in any way before the jury.

Plaintiff further requests this court to direct defense counsel to caution, warn, and instruct witnesses not to make any reference to such evidence, and to follow this same order.

Plaintiffs specifically reserve and do not waive by this *in limine* item, their right to voir dire the jury on any bias or prejudice toward or against tort reform, the alleged cost and availability of health care crisis. This *in limine* item is directed at arguments concerning the effect of this lawsuit or a verdict in this case as opposed to juror bias or prejudice on certain publicized topics.

## M.    MOTION 13 TO EXCLUDE EVIDENCE OF PLAINTIFF'S CHARACTER.

Plaintiff Dr. Jadwin anticipates that, in order to justify Defendants taking adverse employment actions against him, Defendants will try to introduce evidence of his character.

In each of its Answers, Defendant alleged:

As a fifth affirmative defense, Defendants allege that, during Plaintiff's employment at Kern Medical Center, Plaintiff was arrogant, disagreeable, uncooperative, intimidating, overbearing, self-righteous and unfriendly; that Plaintiff refused to work collaboratively or professionally with the medical staff at Kern Medical Center; that he made unfounded, frivolous and repetitive complaints and criticisms of Kern Medical Center, its policies and procedures; and made unfounded and frivolous complaints against members of the medical staff at Kern Medical Center and that Plaintiff's behavior contributed to and was the direct and proximate cause of any stresses, disabilities or injuries that Plaintiff believes he sustained. [Answer to the Second Amended Complaint at 12:14-22].

1    In ruling on Plaintiff's renewed motion to strike the Fifth Affirmative Defense, the Court ruled

2    that the above language essentially rebutted causation, but could be "fairly read as pleading affirmative

3    defenses of unclean hands and/or equitable estoppel."

4        Plaintiff propounded Interrogatory No. 3 asking Defendant to state "each and every fact that

5    YOU contend supports YOUR Fifth Affirmative Defense." Defendant responded as follows:

6    RESPONSE TO INTERROGATORY NO. 3
     Defendants will rely on the testimony of persons who worked with Plaintiff regarding
7    the nature of his interpersonal communications and relationships with co-workers; his
     overbearing and dismissive attitude towards other members of the hospital staff; his
8    intimidating style; his disrespectful and disagreeable interpersonal dealings, and his
     physical confrontations with other persons in the hospital. The Defendants will offer
9    testimony about the efforts members of the medical staff and management made to
     counsel Plaintiff and his angry and dismissive responses to those efforts. Defendants will
10   show how Plaintiff's working relationships in the hospital steadily eroded and unraveled
     as a result of Plaintiff's behavior. The testimony will be supported by letters, e-mails and
11   other writings, all of which have been previously produced.

12   SUPPLEMENTAL RESPONSE TO INTERROGATORY NO.3
     Plaintiff physically assaulted Dr. Lau in a room at KMC; falsely accused Dr. Ragland of
13   being an "impaired" physician and being "incompetent", of having a substance abuse
     problem, an emotional or cognitive function disorder, and an intellectual level of
14   functioning well below the high school graduate level; he demanded that Dr. Ragland
     undergo immediate drug testing, be referred to the physician well-being committee, and
15   that his patient care duties be monitored until Ragland could be evaluated. Plaintiff
     publicly accused Dr. Roy of being a "bad doctor" and committing malpractice and
16   repeatedly threatened Dr. Roy with lawsuits to recover damages for what Plaintiff
     termed Dr. Roy's "imprudent public behavior." Plaintiff repeatedly threatened
17   legal action as a means of resolving his differences with members of the medical staff;
     repeatedly usurped time allocated to other speakers at monthly oncology conferences to
18   make speeches, criticize other physicians and providers, inappropriately debate other
     members of the medical staff and disrupt the conference; wrote many letters and e-mails,
19   all of which have been produced, in which he complained about other members of the
     medical staff and non-medical staff, made false accusations against KMC and members
20   of the KMC medical staff and demanded that various members of the KMC medical
     staff be "investigated"; he made derogatory comments about and complained about Dr.
21   Abraham, including accusing her of being "nothing more than a weight-loss doctor." He
     made derogatory comments about and complained about Dr. Kercher, Dr. Harris, Dr.
22   Roy, Dr. Naderi, Dr. Taylor, Dr. McBride, Dr. Martin, Dr. Ang, Dr. Lang, Dr. Liu and
     Dr. Shertudke, he wrote many e-mails and letters, all of which have been produced,
23   falsely alleging that KMC was in violation or non-compliance with state law and
     accepted health care protocols; he used e-mail and memos to avoid more personal
24   communication with KMC staff and as a vehicle for verbal retaliation for a variety of
     perceived wrongs and personal slights, he resisted repeated efforts by Peter Bryan, Dr.
25   Harris, Dr. Abraham, Dr. Kercher, Dr. Ragland and Dr. Kolb to counsel him and
     facilitate an improvement in relationships between Plaintiff and other members of the
26   medical staff; he dismissed the opinions and observations of other members of KMC
     staff if their opinions and observations did not coincide with his own, he proposed a new
27   protocol for fine needle aspirations without discussing it with the Radiology Department
     and pouted and became openly antagonistic with other members of KMC staff when it
28   was not adopted; he proposed a change in the record keeping for blood product chart

copies that would have violated state laws on the integrity of patient records and made accusations to several KMC staff members when it was not adopted. Plaintiff drove Dr. Aug, Dr. Lang, Dr. Liu, Denise Long and Jane Thornton from the Pathology Department as a result of his continual micro-managing of their work, criticism, interference with their work and insistence that they devote disproportionate time to preparing reports and forms of minimal importance; he created frustration and stress in other members of the staff as a result of the same behaviors, he insisted that staff in the Pathology Department devote extraordinary time to compiling information of minimal importance and dismissed their resulting concerns about workload; repeatedly tried to monopolize Medical Executive Committee and Quality Management committee meetings with issues of personal interest and complaints about KMC and other members of the medical staff; ignored and dismissed medical texts and other authorities that did not agree with his opinions and dismissed the related concerns of staff; resisted requests from treating physicians that he send pathology reports out for a second opinion and interfered with patient care while feuding with treating physicians over the preparation and release of pathology reports, interfered with staff; including Evangeline Gallegos, by performing their jobs and ignored requests that he let them to their work and do his own job. Plaintiff adopted policies for the Pathology Department but applied them inconsistently and selectively; he did not comply with his own policies despite insistence that others comply; he gave staff inconsistent and contradictory instruction and dismissed their resulting concerns. Plaintiff frequently became emotional and argumentative over routine hospital management and administration issues and gradually destroyed the collegiality and teamwork essential to effective hospital operation. He routinely retaliated against staff members he perceived as non-supportive by threatening them, making allegations against them and demanding they be investigated. Plaintiff frequently demanded that various members of the KMC staff "apologize" to him for statements made in the course of peer-review and quality management processes. Plaintiff's typical response to disagreements was to blame and accuse others, verbally assault them and, ultimately, make complaints against them.

The court should exclude such evidence as irrelevant. Evidence is only relevant if it has a tendency to prove or disprove a fact that is of consequence to the determination of the action. (Fed. R. Evid., Rule 401).

**1.** NEXUS

Defendant's allegations regarding Plaintiff's character and conduct fail to break the causal chain between the protected activity/characteristic and the adverse employment actions that Defendant took against Plaintiff. The Ninth Circuit has made it clear that any type of McDonnell-Douglas pretext analysis is irrelevant to FMLA interference claims. Plaintiff need only show that exercising a medical leave right was a negative factor in an adverse employment action. A "motivating reason" is a reason that contributed to the decision to take certain action, even though other reasons also may have contributed to the decision. [CACI 2507; *Mixon v. Fair Employment and Housing Com.* (1987) 192 Cal.App.3d 1306, 1319 [237 Cal.Rptr. 884]]. In other words, even underperforming or flawed employees are entitled to be granted medical leave and to be free from interference with their medical

1  leave rights. See, e.g., *Bachelder v. America West Airlines, Inc*., 259 F.3d 1112, 1131 (9th Cir. 2001).

2  The same reasoning applies to a disabled employee's entitlement to an interactive process and reasonable

3  accommodation where there is strict liability and no proof of motive is required. CACI 2541 & 2546;

4  *Humphrey v. Memorial Hospitals Assn*. (9th Cir. 2001) 239 F.3d 1128, 1139-40; *Den Hrtog v. Wasatch*

5  *Academcy* (10th Cir. 1997) 129 F.3d 1076, 1086; *Borkowski v. Valley Cent. School Dist*. (2d Cir. 1995)

6  63 F.3d 131, 135. This does not require anti-disability animus. For example, if the company fired the

7  employee for job abandonment, when it appears that the "abandonment" was caused by the disability,

8  then the company is liable under FEHA for disability discrimination, failure to engage in interactive

9  consultation, and failure to accommodate. *Id*.

10        Here, documentary evidence and Defendant's own admissions establish that it did not consider

11  any of this evidence of Dr. Jadwin's conduct or character when it took the alleged adverse actions

12  against Dr. Jadwin, so Dr. Jadwin's conduct is irrelevant. Moreover, the Fifth Affirmative Defense does

13  not apply to Plaintiff's Due Process Claim. Defendant has not only limited its Fifth Affirmative Defense

14  to Plaintiff's Retaliation claims under FEHA, CFRA, and FMLA; but Plaintiff intends to litigate the

15  administrative leave as a denial of due process rather than an adverse employment action supporting his

16  FEHA, CFRA, and FMLA claims. Accordingly, if the Court does admit the evidence supporting the

17  Fifth Affirmative Defense, **Plaintiff requests that a limiting instruction be provided to the jury.**

18        Defendant's stated reasons for denying an extension of Dr. Jadwin's request for reduced work

19  schedule medical/recuperative leave on April 28, 2006 resulting in forced full-time leave until October

20  4, 2006 were: "…it would be preferable for you not to have an intermittent work schedule and be easier

21  on the Department to just have you on leave until your status is resolved…Your options are to either

22  return full time or resign your position…".

23        Defendant's stated reasons for Plaintiff's demotion on July 9, 2006 and resulting paycut were:

24  "solely based" on Dr. Jadwin's "…unavailability for service because of extended medical leaves…".

25        Defendant's stated reasons for placing Dr. Jadwin on the administrative leave from December 7,

26  2006 to October 4, 2007 "…pending resolution of a personnel matter…" had nothing to do with Dr.

27  Jadwin's character. Mr. Culberson, then-Interim CEO of KMC, decided to place Dr. Jadwin on

28  administrative leave as a "cooling-off period in the department so we could attempt to stabilize it…" .

1   Around late November or early December of 2006, Dr. Dutt, Acting Chair of Pathology, had reported to

2   Mr. Culberson, Interim CEO of KMC, concerns "about the way second opinions were being obtained

3   under the leadership of Dr. Jadwin", "…a computer…uncharacteristically accessed during off hours by

4   Dr. Jadwin..." and that "…Dr. Jadwin's behavior was causing substantial disruption to the operations of

5   both the pathology and the lab departments." [Culberson Depo. at 63:25-65:9]. Mr. Culberson ordered

6   Steve O'Connor, Director of Human Resources at KMC, to investigate whether "these allegations of

7   disruptive activities were substantiated or potentially existing." Mr. O'Connor's investigation determined

8   that although the situation in the Pathology Department and lab was "extremely disruptive, chaotic and

9   unstable", this crisis was **not** attributable to Dr. Jadwin. [Culberson Depo. at 98:4-10]. Subsequent

10  events confirm this because the crisis in the Pathology Department worsened even after Dr. Jadwin was

11  placed on administrative leave. As of January of 2009, Dr. Dutt had stepped down from Acting Chair of

12  Pathology.

13      Supervisor Ray Watson testified in deposition that Defendant did not renew Plaintiff's contract

14  because " …he had been on medical leave, family leave, and had requested even more leave, and that for

15  that reason and the fact that he was suing us, that we decided not to renew his contract." [Watson Depo.

16  at 113:15-114:4]. The non-renewal of Plaintiff's employment contract had nothing to do with the

17  allegations about Plaintiff's conduct or character listed in Defendant's response to Interrogatory No. 3.

18      Because Defendant's stated reasons for taking these adverse actions against Plaintiff have

19  nothing to do with Defendant's evidence supporting the Fifth Affirmative Defense, the causal chain is

20  broken. Such irrelevant evidence should not be admitted.

21      **2.   UNCLEAN HANDS/EQUITABLE ESTOPPEL**

22      To prevail ... [e]quity requires that those seeking its protection shall have acted fairly and without

23  **fraud** or **deceit** as to the controversy in issue. " *Fuddruckers, Inc. v. Doc's B.R. Others, Inc*., 826 F.2d

24  837, 847 (9th Cir.1987). Moreover, a general allegation of an employee's "unclean hands" will not bar a

25  statutory discrimination claim, but may limit the employee's remedies if the employer can prove that

26  had it known of the misconduct, it would have fired the employee. *McKennon v. Nashville Banner*

27  *Publishing Company*, 513 U.S. 352, 362-63 (1995); *Cooper v. Rykoff-Sexton, Inc*., 24 Cal. App. 4th 614

28  (1994) at 618-19 (Plaintiff's resume fraud did not bar recovery. "Where an employer has fired a worker

in violation of a statutory ban on discrimination in the workplace, the purpose and effect of the antidiscrimination statutes are unacceptably undermined by a principle that would allow a fact that played no part in the firing decision to bar any recovery.").

Even if true, the so-called "facts" stated in Defendant's responses to Plaintiff's Interrogatory No. 3 do not support an affirmative defense for unclean hands. The worst that Defendant accuse Dr. Jadwin of is being a difficult person to deal with, hardly unconscionable behavior. The controversies at issue are Plaintiff's taking of medical/recuperative leave, and suing the County for interfering with his medical/recuperative leave rights. Defendants do not include in its responses to Interrogatory No. 3 (1) any allegation that Dr. Jadwin committed any **fraud**, **deceit** or **unconscionable conduct** regarding these controversies; or (2) any allegation of after acquired evidence.

Moreover, Defendant never fired, disciplined, or reprimanded Dr. Jadwin, instead keeping him on paid administrative leave through the end of his contract. They never once responded to Plaintiff's many demands for an explanation of the reasons for his placement on administrative leave and nonrenewal of his contract.

Filing a lawsuit to seek redress cannot constitute "fraud" or "misconduct" justifying discharge. Rather, it is a protected activity of a conscientious citizen seeking to preserve our freedom. "The very essence of civil liberty certainly consists in the right of every individual to claim protection of the laws whenever he receives an injury." *Marbury v. Madison,* 1 Cranch 137, 163 (U.S.Dist.Col.,1803)

Accordingly, in the light of Defendant's responses to Interrogatory No. 3, the evidence supporting the Fifth Affirmative Defense in no way supports an unclean hands/equitable estoppel defenses; it should be excluded as irrelevant.

**3.** PROPENSITY/PRIOR BAD ACTS

Alternatively, if the Court finds that such evidence is relevant, then the Court should still exclude it as inadmissible evidence of Plaintiff's character. [Fed. Rules Evid. 404]. Evidence of Dr. Jadwin's character does not fall within any of the exceptions expressly contemplated by Rule 404 (a) & (b). See Fed. R. Evid. 404 (a) ("character at issue") & (b) (exceptions for proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident).

Plaintiff Dr. Jadwin anticipates that Defendants will attempt to introduce at trial evidence of Dr.

1    Jadwin's alleged prior bad acts. Under the "character in issue" doctrine, character evidence is admissible

2    only where character itself is "an element of a crime, claim, or defense." Fed. R. Evid. 404(a). Plaintiff's

3    character is not at issue in an employment discrimination or retaliation case. *See Zubulake v. UBS*

4    *Warburg LLC,* 382 F. Supp. 2d 536, 542 (USDC, NY-SD, 2005) *citing EEOC v. HBE Corp.* 135 F.3d

5    543, 553 (8th Cir. 1998) (plaintiff's moral character was not an essential element of his retaliatory

6    discharge claim).

7         Evidence of stale misconduct is properly excluded as propensity evidence. In *Zubulake*, the court

8    excluded evidence of Plaintiff's conduct during prior employment because " …no matter how defendants

9    try to frame their intended use - whether to rebut plaintiff's contention that she was not insubordinate

10   and uncooperative or whether to prove that she was insubordinate and uncooperative outright - they are

11   seeking to introduce inadmissible propensity evidence." *Id*. As the court in *Zenian v. District of*

12   *Columbia*, 283 F. Supp. 2d 36 (D.D.C. 2003), concluded, "The only purpose of proving that plaintiff

13   was a bad employee before October of 1995 is to show that he was an equally bad employee after 1995.

14   That, of course, is exactly what a litigant cannot do [under Rule 404(a)]." *Id*. at 40.

15        Accordingly, the court should exclude any and all evidence relating to allegations of stale prior

16   bad acts. For example, the Court should exclude any and all evidence that preceded November 12, 2003

17   the date on which the County increased Plaintiff's salary, since Defendant's approved of his prior

18   conduct by renewing his contract and giving him a raise.

19   **4.**  <u>HABIT</u>

20        Further, Plaintiff anticipates that Defendant will seek admission of evidence showing that

21   "Plaintiff's **typical response** to disagreements was to blame and accuse others, verbally assault them

22   and, ultimately, make complaints against them" on the grounds that it is inadmissible "habit" evidence

23   under Rule 406 of the Federal Rules of Evidence. [Supplemental Response to Interrogatory No. 3

24   (emphasis added)].

25        The Advisory Committee Note to Rule 406 of the Federal Rules of Evidence defines "habit" as

26   follows: "'A habit . . . is the person's regular practice of meeting a particular kind of situation with a

27   specific type of conduct, such as the habit of going down a particular stairway two stairs at a time, or of

28   giving the hand-signal for a left turn, or of alighting from railway cars while they are moving. The doing

of the habitual acts may become semi-automatic.'" *Fed. R. Evid. 406*, Advisory Committee Note

(quoting *McCormick on Evidence,* § 195 at 462-63 (2d. ed. 1972)).

> " Habit is conduct that is situation-specific, *i.e.,* specific, particularized conduct capable of almost identical repetition. Character, on the other hand, is a generalized description of a person's disposition or a general trait such as honesty, violence or peacefulness. There is a tension between *Rule 404* (character) and *Rule 406* (habit) which stems from the difficulty in distinguishing between admissible evidence of habit and inadmissible character evidence. *See Simplex, Inc. v. Diversified Energy Sys., Inc., 847 F.2d 1290, 1293 (7th Cir. 1988)* **[**9]** ("We are cautious in permitting the admission of habit or pattern-of-conduct evidence under *Rule 406* because it necessarily engenders the very real possibility that such evidence will be used to establish a party's propensity to act in conformity with its general character, thereby thwarting *Rule 404*'s prohibition against the use of character evidence except for narrowly prescribed purposes.").
> Before a court may admit evidence of habit, the offering party must establish the degree of specificity and frequency of uniform response that ensures more than a mere 'tendency' to act in a given manner, but rather, conduct that is 'semi-automatic' in nature." *Zubulake v. UBS Warburg LLC,* 382 F. Supp. 2d 536, 542 (USDC, NY-SD, 2005) *citing Simplex, Inc. v. Diversified Energy Sys., Inc.,* 847 F.2d 1290, 1293 (7th Cir. 1988).

In *Zubulake* the court properly excluded evidence of Plaintiff's conduct during her prior

employment on the grounds that it was inadmissible propensity evidence rather than admissible habit

evidence.

> "Plaintiff's alleged insubordination and lack of teamwork at UBS therefore cannot be seen as habit because it is not "a regular response to a repeated specific situation." In any event, insubordination at two securities firms is not of sufficient frequency to show the type of semi-automatic conduct envisioned in *Rule 406*." *Id.*

Similarly here, Defendant cannot establish that Dr. Jadwin had any such "habitual response" to

disagreements. First, interpersonal relationships have too many variables to be "situation-specific" or

"semi-automatic". Second, Dr. Jadwin's differing responses to the various disagreements that inevitably

arose in the workplace establishes that Defendant's contention that Dr. Jadwin's disagreements

"typically" escalated into retaliatory complaints is simply untrue.

For example, during 2003, Radiology accused Pathology of incompetence based on a significant

increase in Pathology's findings that Radiology's Fine Needle Aspiration ("FNA") biopsies were

"unsatisfactory". An outside consultant reviewed the 200 or so slides that Pathology had found to be

"unsatisfactory", concurred with Pathology's findings, and recommended that Radiology use a finer

needle to avoid collecting too much blood with the tissue that resulted in smeary, obscured slides.

Despite this disagreement, the Chair of Radiology testified that all of his interactions with Dr. Jadwin

1  had been "pleasant" and "professional".

2          Also during this FNA dispute, Dr. Jadwin's response to his confrontation with Chester Lau in

3  2003 was to immediately self-report this "tie-pulling incident" to his then supervisor, CMO Marvin

4  Kolb, express remorse for his conduct, and to voluntarily apologize to Dr. Lau. Dr. Jadwin never again

5  engaged in a similar act. This single incident cannot support that Dr. Jadwin had a violent nature (i.e.,

6  inadmissible propensity evidence) or a habit of reacting physically or vindictively to disagreements.

7          For further example, Dr. Taylor wrote one of the letters of dissatisfaction complaining about Dr.

8  Jadwin's 10/12/05 Tumor Board overly-long presentation that resulted in the decision to place letters of

9  reprimand into Dr. Jadwin's credentials file, which in turn exacerbated his chronic depression. Yet Dr.

10  Taylor testified in deposition that he saw Dr. Jadwin on a "weekly basis"; that "I get along fine with Dr.

11  Jadwin"; that he couldn't recall Dr. Jadwin ever "raising his voice" or "being confrontational"; and "even

12  after that (the Tumor Board), I really didn't have any problem with him. We were cordial in the halls,

13  and he called me with the path reports…".

14          Because the nature of the conduct is not "semi-automatic" and the number of specific instances

15  cited in the Fifth Affirmative Defense are insufficient to do not support the conclusion that Dr. Jadwin

16  had a habit of reacting physically or vindictively to disagreements, such evidence should be excluded as

17  inadmissible propensity evidence.

18          The court should exclude the evidence set forth in Defendant's responses to Interrogatory No. 3

19  on the grounds that it does not fit into the "habit" exception to the inadmissibility of character evidence.

20      **5.**  UNDUE PREJUDICE

21          In addition, the evidence supporting Defendant's Fifth Affirmative Defense should be excluded

22  because it would necessitate undue consumption of time and judicial resources, create substantial danger

23  of undue prejudice to Plaintiff, and confuse and mislead the jury. (Fed. R. Evid., Rule 403.) Rule 403

24  embodies the principle which "[c]ourts have recognized that it is sometimes desirable that such

25  evidence, even though it may be relevant, should be excluded 'where the minute peg of relevancy will

26  be entirely obscured by the dirty linen hung upon it.'" [*Lucero v. Donovan*, 354 F.2d 16, 18, n. 2 (9th

27  Cir. 1965) (quoting *United States v. Kahaner*, 317 F.2d 459, 472 (2d Cir. 1963)].

28          Because Defendants did not consider any of this character evidence, particularly Dr. Jadwin's

1   alleged bad acts prior to 2005, when taking adverse actions against Dr. Jadwin, and because they are

2   remote in time from the events central to this lawsuit, such evidence is of no consequence to the

3   determination of the action, and the only purpose it can serve is to cast Plaintiff in a negative light and

4   create an undue prejudice against Plaintiff in the minds of the jurors. At the same time, such evidence is

5   not probative as to what occurred during Plaintiff's employment at KMC from October of 2005 to

6   October of 2007. The court should view Defendant's Fifth Affirmative Defense with suspicion because it

7   is based on vague allegations of problems using subjective criteria that are unsupported by

8   contemporaneous, reliable documentation; and offers shifting reasons for the adverse actions taken

9   against Dr. Jadwin. *Liu v. Amway Corp.* (9th Cir. 2003) 347 F.3d 1125, 1136 (subjective evaluations of

10  "soft skills" are "susceptible of abuse and more likely to mask pretext.").

11      Evidence supporting this smear campaign against Dr. Jadwin should be excluded as non-

12  probative and/or unduly prejudicial.

13      **N.   MOTION 14 TO EXCLUDE REFERENCE TO PLAINTIFF'S LEAVE AS
            "CONTINUOUS" FROM 12/16/05 TO 10/3/06.**

14      Plaintiff moves *in limine* for an order precluding Defendant, its counsel, and any expert

15  witnesses shall from referring to, interrogating about, commenting on, arguing or relying upon or in any

16  other manner attempting to introduce into evidence in any way, any allegations, documents, or written or

17  oral testimony or any reference or inference to Plaintiff's leave from12/16/05 to 10/3/06 as being

18  "continuous" because it would necessitate undue consumption of time and judicial resources, create

19  substantial danger of undue prejudice to Plaintiff, and confuse and mislead the jury. (Fed. R. Evid., Rule

20  403.) Rule 403 embodies the principle that "[c]ourts have recognized that it is sometimes desirable that

21  such evidence, even though it may be relevant, should be excluded 'where the minute peg of relevancy

22  will be entirely obscured by the dirty linen hung upon it.'" [*Lucero v. Donovan*, 354 F.2d 16, 18, n. 2

23  (9th Cir. 1965) (quoting *United States v. Kahaner*, 317 F.2d 459, 472 (2d Cir. 1963)].

24      Plaintiff took some sick leave from December 16-18, 2005. Plaintiff then returned to work full-

25  time from December 19-22, 2005. December 23-26 spanned the Christmas holidays; and Dr. Jadwin was

26  either on sick leave or vacation until he returned to full-time work on January 5, 2006. Dr. Jadwin

27  worked two hours on January 8, 2006. On January 9, 2006, Dr. Jadwin returned to full time work again,

28

at which time he met with CEO Peter Bryan and requested accommodation for his depression in the form of a reduced work schedule medical leave. Mr. Bryan approved his request, but asked him to provide certification from his treating doctor that his reduced work schedule leave was medically necessary. Dr. Jadwin did so at the first opportunity - January 13, 2006. Dr. Riskin indicated in this certification that a reduced work schedule for Dr. Jadwin was medically necessary from December 16, 2005 to March 15, 2006, and subsequently certified that this reduced work schedule leave for Dr. Jadwin was medically necessary until September 16, 2006.

On April 28, 2006, Mr. Bryan revoked Dr. Jadwin's reduced work schedule medical leave, and placed him on full-time medical leave until June 16, 2006. On June 14, 2006, Mr. Bryan informed Dr. Jadwin that he was recommending to the JCC that he be removed from chairmanship and placed him on personal leave until September 16, 2006.

On July 10, 2006, Mr. Bryan recommended to the JCC that Dr. Jadwin be removed from his position as Chair of Pathology "based solely on his continued non-availability...". There was some discussion that Dr. Jadwin had abandoned his job because he was gone for a very long time, despite the fact Mr. Bryan was the one who had ordered Dr. Jadwin not to enter the hospital premises or speak to anyone at the hospital. The JCC, including then-Supervisor Barbara Patrick, adopted Mr. Bryan's recommendation. The fact that Ms. Patrick could conclude that Dr. Jadwin was disinterested in his job because he hadn't communicated with Mr. Bryan, and had "abandoned" his job because he'd been gone a "long" time, when in fact, Dr. Jadwin's "unavailability" and "noncommunicativeness" had been largely created by Mr. Bryan, indicates how easy it would be for Defendant to create similar prejudice against Dr. Jadwin in the minds of the jury through the use of sweeping generalizations about the true part-time nature of Dr. Jadwin's medically necessary leave.

The use of the term "continuous" in relation to Dr. Jadwin's leave from December 16, 2005 to October 4, 2006 implies that Dr. Jadwin was absent from and unable or unwilling to work during that entire time period, which is patently wrong. Any comment or attempted introduction of the above evidence will be improper and highly prejudicial to plaintiff. Even if the court were to sustain an objection to the evidence at trial and to instruct the jury to disregard it, the evidence would be so prejudicial that the plaintiff would not receive a fair trial.

Accordingly, Plaintiff asks this court for an order prohibiting the use of this erroneous and misleading term "continuous" in relation to Dr. Jadwin's leave from December 16, 2005 to October 4, 2006, and admonishing the defendant and its witnesses as well as counsel not to introduce any such evidence in any form, and not to suggest, comment directly or indirectly upon, or refer to any such evidence in any way before the jury.

Plaintiff further requests this court to direct defense counsel to caution, warn, and instruct witnesses not to make any reference to such evidence, and to follow this same order.

## O.   MOTION 15 TO EXCLUDE REFERENCE TO PLAINTIFF "PLACING HIMSELF ON LEAVE."

Plaintiff moves *in limine* for an order precluding Defendant, its counsel, and any expert witnesses shall from referring to, interrogating about, commenting on, arguing or relying upon or in any other manner attempting to introduce into evidence in any way, any allegations, documents, or written or oral testimony or any reference or inference to Plaintiff "placing himself on leave" from 12/16/05 to 10/3/06 because it would necessitate undue consumption of time and judicial resources, create substantial danger of undue prejudice to Plaintiff, and confuse and mislead the jury. (Fed. R. Evid., Rule 403.) Rule 403 embodies the principle that "[c]ourts have recognized that it is sometimes desirable that such evidence, even though it may be relevant, should be excluded 'where the minute peg of relevancy will be entirely obscured by the dirty linen hung upon it.'" [*Lucero v. Donovan*, 354 F.2d 16, 18, n. 2 (9th Cir. 1965) (quoting *United States v. Kahaner*, 317 F.2d 459, 472 (2d Cir. 1963)].

Plaintiff took some sick leave from December 16-18, 2005. Plaintiff then returned to work full-time from December 19-22, 2005. December 23-26 spanned the Christmas holidays; and Dr. Jadwin was either on sick leave or vacation until he returned to full-time work on January 5, 2006. Dr. Jadwin worked two hours on January 8, 2006. On January 9, 2006, Dr. Jadwin returned to full time work again, but met with CEO Peter Bryan and requested a reduced work schedule medical leave. Mr. Bryan approved his request, but asked him to provide certification from his treating doctor that his reduced work schedule leave was medically necessary. Dr. Jadwin did so at the first opportunity - January 13, 2006. Dr. Riskin indicated in this certification that a reduced work schedule for Dr. Jadwin was medically necessary from December 16, 2005 to March 15, 2006.

1   An employer may waive the FMLA notice requirements or its own internal procedures for

2   providing notice of the need for leave. [29 CFR §§ 825.302(g), 825.304(a)]. Here it is undisputed that

3   Plaintiff requested, was granted, and took medical leave and that Defendant deducted such leave from

4   his CFRA/FMLA medical leave bank.

5   "Failure of the employer to give or post such notice shall preclude the employer from taking any

6   adverse action against the employee, including denying CFRA leave, for failing to furnish the employer

7   with advance notice of a need to take CFRA leave." [2 C.C.R. § 7297.4(5)]. Here, Steven O'Connor,

8   KMC's Human Resource Director, whom Dr. Jadwin was instructed to consult if he had any questions

9   about his CFRA/FMLA leave, was so ignorant of CFRA/FMLA rights, that he did not even know

10  whether core physicians at KMC were eligible for CFRA/FMLA leave. Further, O'Connor testified that

11  he did not know how Defendant notified its employees of how to apply for CFRA/FMLA leave and

12  believed that it was "just something that's understood". Because Defendant failed to notify its core

13  physicians of their CFRA/FMLA rights, Defendant is precluded from implying that Dr. Jadwin failed to

14  follow its FMLA/CFRA application procedures. Any evidence indicating otherwise should be excluded.

15  An employee may make a verbal request for CFRA leave, and it is the employer's duty to

16  designate whether it is CFRA qualifying leave based on the information that the employee provides

17  within three day. An employer may not retroactively designate leave and CFRA qualifying leave after

18  the employee has returned to work. [2 C.C.R. § 7297.4(1)]. Here, Patty Perez, an HR clerk, testified that

19  she processed designation forms only after the employee had filled out the County's own request for

20  leave form, put in the dates that the forms were created, then forwarded the Designation form to Renita

21  Nunn, an HR manager, or the HR director (who as of March 2, 2006 was Sandra Chester) for approval.

22  Perez testified that she customarily sent out the Designation form within 3 days of receipt of the Request

23  for Leave form. At KMC, it was not unusual for leave requests to be processed and approved just days

24  before the CFRA/FMLA leave was due to expire. So, the fact that the County designated that Dr.

25  Jadwin's medical leave began on December 16, 2005 and it was not approved until days before it was

26  due to expire on March 15, 2006 does not mean that Dr. Jadwin "placed himself on leave."

27  Plaintiff's psychiatrist, Dr. Riskin, subsequently certified that this reduced work schedule leave

28  for Dr. Jadwin was medically necessary until September 16, 2006. On April 28, 2006, Mr. Bryan

revoked Dr. Jadwin's reduced work schedule leave, and placed him on full-time leave until he could

return to work fulltime; i.e., until at least September 16, 2006.

The implication that Dr. Jadwin "placed himself on leave" from December 16, 2005 to October

4, 2006 implies that the processing of Dr. Jadwin's leave was unusual; and that Dr. Jadwin's leave from

December 16, 2005 to March 15, 2006 was not approved or designated as medical leave, and that Dr.

Jadwin was not on some form of approved leave from March 16, 2006 to October 3, 2006, which is

erroneous. Any comment or attempted introduction of the above evidence will be improper and highly

prejudicial to plaintiff. Even if the court were to sustain an objection to the evidence at trial and to

instruct the jury to disregard it, the evidence would be so prejudicial that the plaintiff would not receive

a fair trial.

Accordingly, Plaintiff asks this court for an order prohibiting the use of this erroneous and

misleading phrase, "Dr. Jadwin placed himself of leave" in relation to Dr. Jadwin's leave from December

16, 2005 to October 4, 2006, and admonishing the defendant and its witnesses as well as counsel not to

introduce any such evidence in any form, and not to suggest, comment directly or indirectly upon, or

refer to any such evidence in any way before the jury.

Plaintiff further requests this court to direct defense counsel to caution, warn, and instruct

witnesses not to make any reference to such evidence, and to follow this same order.

## P.   MOTION 16 TO EXCLUDE DESIGNATED EXPERT THOMAS MCAFEE'S TESTIMONY

This motion seeks to exclude the testimony of Defendant's designated expert Thomas McAfee,

M.D. Defendant's Supplemental Designation of Expert Witnesses stated that Dr. McAfee will provide

opinion testimony (1) on Plaintiff's performance as (a) chair of the department of pathology and (b) as a

core physician; and (2) on his professional relationships with other Kern Medical Center staff.  In his

Expert Witness Report, dated July 8, 2008 (the "Report"), Dr. McAfee stated that he had been retained

to provide an opinion regarding (1) the leadership role of a Department Chairman in a Medical Center;

(2) Plaintiff's competence and discharge of his administrative responsibilities; and (3) the

reasonableness of Defendant Kern County's actions to change Departmental leadership.

The ultimate conclusion of the Report is that Plaintiff did not have the aptitude to fulfill his

leadership role as a Department Chair at Kern Medical Center, and the rest of the report justifies that conclusion. In his deposition Dr. McAfee opines that Plaintiff felt that he had discharged his leadership duties because he wrote memos and emails. Dr. McAfee derives this opinion from a general feeling he got from reading Plaintiff's deposition.

In the Report Dr. McAfee asserts a number of other opinions. In large part, those opinions are based on Plaintiff's deposition and the Defendant's Answer to the Second Supplemental Complaint (the "Answer"). In particular, and in part, Dr. McAfee opines that:

(1)     Dr. Jadwin was unsuccessful in gaining the broad-based trust of peers within the organization. Dr. McAfee based this on Plaintiff's deposition testimony where he said that he kept sending emails and no one responded.

(2)     Plaintiff was regarded as arrogant, disagreeable, uncooperative, intimidating, overbearing, self-righteous and unfriendly. This language is lifted verbatim from the Answer.

(3)     Plaintiff's own behaviors, and lack of insight into them, were the proximate causes of his inability to gain support for his quality crusades. This opinion is based on Plaintiff's testimony at deposition, and Dr. McAfee points out examples through out Plaintiff's deposition that he believes supports the point.

(4)     Plaintiff's personal style was so alienating to his peers that he was unable to galvanize support for the issues he wanted addressed. Dr. McAfee relies in part upon the Answer and Plaintiff's deposition to arrive at this opinion.

(5)     That Plaintiff's lack of leadership and insight was disruptive to the medical center. This opinion is based upon the Answer and Plaintiff's deposition. Dr. McAfee testified that "I can just imagine what having him on the staff would be like if your just constantly getting these e-mails and letters, complaining. What's the CEO going to do about it." The CEO, on the other hand, Peter Bryan, did not find the e-mails from Plaintiff to be a problem.

(6)     Plaintiff pursued an unrelenting crusade based solely on his own set of priorities and agendas and failed to galvanize support because he was disrespectful of any other organizational priorities than his own. This opinion is based upon the Answer and Plaintiff's deposition.

(7)     Plaintiff's chairmanship was marked by poor insight, failure to listen, an overbearing and

1    non-collaborative style and faulty communication. This opinion is based upon the Answer and Plaintiff's
2    deposition.

3          (8)    Plaintiff's own behaviors created the conflict in the organization. This opinion is based
4    upon the Answer and Plaintiff's deposition.

5          (9)    The medical staff of Kern Medical Center lost confidence in Plaintiff's leadership ability.
6    This opinion of Dr. McAfee's was based on "[t]he fact that they fired him."

7          Dr. McAfee feels firm in his opinions and believes that if he had additional information, such as
8    depositions of other physicians who worked with Plaintiff, that their testimony would corroborate what
9    he already learned. He does not believe that interviews with anyone else who may have been present
10   would be helpful.

11   **A.    Expert Witness Testimony Must be Reliable and Relevant to be Admitted Under Rule 703**

12         Federal Rule of Evidence 702 provides that a witness qualified as an expert may testify regarding
13   his or her specialized knowledge provided that: (1) the testimony is based upon sufficient facts or data,
14   (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the
15   principles and methods reliably to the facts of the case. Thus, before expert testimony can be admitted
16   under Rule 702 the district court must ensure that the testimony is both relevant and reliable. See
17   *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 589 (1993); *Vargas v. Lee*, 317 F.3d 498,
18   500 (5th Cir. 2003). To be reliable:

19         The subject of an expert's testimony must be 'scientific . . . knowledge.' The adjective
20         'scientific' implies a grounding in the methods and procedures of science. Similarly, the
           word 'knowledge' connotes more than subjective belief or unsupported speculation. . . .
21         [I]n order to qualify as 'scientific knowledge,' an inference must be derived by the
           scientific method. Proposed testimony must be supported by appropriate validation ( i.e.,
22         "good grounds," based on what is known. In short, the requirement that an expert's
           testimony pertain to 'scientific knowledge' establishes a standard of evidence reliability.
           *Daubert,* 509 U.S. at 589-590 (1993).
23
24         The gatekeeping function of the trial court in evaluating expert testimony for reliability "is to
25   make certain that an expert, whether basing testimony upon professional studies or personal experience,
26   employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert
27   in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-149 (1999); see also *Vargas*,
28   317 F.3d at 500.

1     Rule 702 further requires that expert evidence or testimony "assist the trier of fact to understand

2   the evidence or to determine a fact in issue." This condition goes primarily to relevance. "Expert

3   testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*,

4   509 U.S. at 591 (quoting 3 *Weinstein & Berger* (702[02]). Therefore, expert testimony must be relevant,

5   not only as is generally required by the Federal Rules, "but also in the sense that the expert's proposed

6   opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra,* 320 F.3d at

7   584. In other words, Rule 702 "requires a valid scientific connection to the pertinent inquiry as a

8   precondition to admissibility." *Daubert*, 509 U.S. at 592.

9     Although, "[a]s a general rule, questions relating to the bases and sources of an expert's opinion

10  affect the weight to be assigned that opinion rather than its admissibility," *Viterbo v. Dow Chemical Co*.,

11  826 F.2d 420, 422 (5th Cir. 1987), the source upon which an expert's opinion is based may be of such

12  little weight that the finder of fact should not consider that opinion. *Id*. "If an opinion is fundamentally

13  unsupported, then it offers no expert assistance to the [finder of fact]." *Id*. Moreover, lack of foundation

14  may also render the expert opinion more prejudicial than probative, making it inadmissible under

15  Federal Rule of Evidence 403. The testimony of Dr. McAfee, as described above, lacks adequate

16  foundation and/or is not relevant to any issue in the case, and should, for those reasons, be excluded.

17    Dr. McAfee's testimony and evidence meets none of the standards discussed above. Specifically,

18  it does not meet the standard for evidentiary reliability and will not assist the Court to understand or

19  determine a fact in issue. There is no science and no foundation to the analysis. It cannot be tested in an

20  objective sense. It is merely a subjective, conclusory approach, based, in part, on information in

21  Defendant's unverified Answer, which he quotes verbatim. There exists too great an analytical gap

22  between the information he relied upon and his opinion. See *General Elec. Co. v. Joiner*, 552 U.S. 136,

23  144 (1997). As an unsupported opinion, Dr. McAfee's testimony would not serve the purposes for which

24  it would be offered, to assist the trier of fact in arriving at its verdict.

25    Moreover, in *Hartford Accident & Indemnity Co. vs. Industrial Accident Commission, Gerald F.*

26  *Houlahan* (1934) 140 Cal.App. 482, 35 P.2d 366, the court stated the following concerning expert

27  testimony:

28

"It is not sufficient that the referee or commissioner be satisfied as laymen of the correctness of [the expert's] view, but the law requires that they shall reach their conclusion on the basis of legally <u>competent evidence. A mere surmise or conjecture does not constitute a 'foundation sufficient to support a finding of fact.</u>'" (*Id*., 35 P.2d at 368, emphasis added.)

Dr. McAfee stated in deposition that he formed his opinions based on the actual allegations contained in Defendant's Answer, the actual questions posed by defense counsel to Plaintiff during his deposition, on opinions of non-experts regarding Plaintiff's competence as a pathologist and Chair of Pathology, and on the gossip that pervaded the workplace at KMC. None of these are reliable evidence upon which competent opinions may be formed.

**B.    Dr. McAfee's Testimony and Evidence Also May Be Excluded Under Rule 403**

Federal Rule of Evidence 403 provides that otherwise relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." Fed R. Evid. 403. Rule 403 embodies the principle that "[c]ourts have recognized that it is sometimes desirable that such evidence, even though it may be relevant, should be excluded 'where the minute peg of relevancy will be entirely obscured by the dirty linen hung upon it.'" *Lucero v. Donovan*, 354 F.2d 16, 18, n. 2 (9th Cir. 1965) (quoting *United States v. Kahaner*, 317 F.2d 459, 472 (2d Cir. 1963). "Situations in this area call for balancing the probative value of and need for the evidence against the harm likely to result from its admission." Advisory Committee Notes to Fed. R. Evid. 403. Evidence that results in unfair prejudice is evidence that provides an "unfair advantage that results from the capacity of the evidence to persuade by illegitimate means." 22 Charles Alan Wright & Kenneth W. Graham, Jr. Federal Practice and Procedure 5215 (1978).

As a result of the lack of foundation and the lack of objectivity found in Dr. McAfee's analysis, as described above, the prejudice that may result from the expert's testimony is far outweighed by the probative value, if any, of that testimony. See *Viterbo*, 826 F.2d at 422 ("If an opinion is fundamentally unsupported, then it offers no expert assistance to the jury. Furthermore, its lack of reliable support may render it more prejudicial than probative, making it inadmissible evidence under Fed.R.Evid. 403.") Thus, in addition to being unreliable within the mean of Rule 702, Dr. McAfee's testimony may also be excluded under Rule 403.

**C.    Dr. McAfee's Testimony and Evidence Must Be Excluded as Inadmissible Character**

1  **Evidence**

2        Plaintiff hereby moves to exclude Dr. McAfee's Testimony as inadmissible character evidence.

3  The Advisory Committee Note to Rule 406 of the Federal Rules of Evidence defines "habit" as follows:

4  "'A habit . . . is the person's regular practice of meeting a particular kind of situation with a specific type

5  of conduct, such as the habit of going down a particular stairway two stairs at a time, or of giving the

6  hand-signal for a left turn, or of alighting from railway cars while they are moving. The doing of the

7  habitual acts may become semi-automatic.'" *Fed. R. Evid. 406*, Advisory Committee Note (quoting

8  *McCormick on Evidence,* § 195 at 462-63 (2d. ed. 1972)).

9

10        " Habit is conduct that is situation-specific, *i.e.,* specific, particularized conduct capable
      of almost identical repetition. Character, on the other hand, is a generalized description
      of a person's disposition or a general trait such as honesty, violence or peacefulness.

11      There is a tension between *Rule 404* (character) and *Rule 406* (habit) which stems from
      the difficulty in distinguishing between admissible evidence of habit and inadmissible

12      character evidence. *See Simplex, Inc. v. Diversified Energy Sys., Inc., 847 F.2d 1290,
      1293 (7th Cir. 1988)* [**9] ("We are cautious in permitting the admission of habit or

13      pattern-of-conduct evidence under *Rule 406* because it necessarily engenders the very
      real possibility that such evidence will be used to establish a party's propensity to act in

14      conformity with its general character, thereby thwarting *Rule 404*'s prohibition against
      the use of character evidence except for narrowly prescribed purposes.").

15

16        Before a court may admit evidence of habit, the offering party must establish the degree of

17  specificity and frequency of uniform response that ensures more than a mere 'tendency' to act in a given

18  manner, but rather, conduct that is 'semi-automatic' in nature." *Zubulake v. UBS Warburg LLC,* 382 F.

19  Supp. 2d 536, 542 (USDC, NY-SD, 2005) *citing Simplex, Inc. v. Diversified Energy Sys., Inc.,* 847 F.2d

20  1290, 1293 (7th Cir. 1988).

21        In *Zubulake* the court properly excluded evidence of Plaintiff's conduct during her prior

22  employment on the grounds that it was inadmissible propensity evidence rather than admissible habit

23  evidence.

24        "Plaintiff's alleged insubordination [**13] and lack of teamwork at UBS therefore
      cannot be seen as habit because it is not "a regular response to a repeated specific

25      situation." In any event, insubordination at two securities firms is not of sufficient
      frequency to show the type of semi-automatic conduct envisioned in *Rule 406*." *Id.*

26

27        Dr. McAfee refers to Plaintiff as having a "habitual pattern of being disruptive," talks about

28  looking at the "overall pattern of [Plaintiff's] performance," "see[s] a pattern " with respect to Plaintiff

sending e-mails, and testifies as to a "repeated pattern" of sending e-mails. Testimony about habits and patterns is inadmissible character evidence, and Dr. McAfee's testimony and evidence should be excluded on that basis.

### Q.   MOTION 17 TO EXCLUDE RICK SARKISIAN'S TESTIMONY

This motion seeks to exclude the testimony of Defendant's expert Rick Sarkisian, Ph.D. Defendants' Revised Designation of Expert Witnesses stated that Dr. Sarkisian would assess Plaintiff's employability, earning capacity, and work-life expectancy and provide opinion testimony regarding his conclusions and observations. Dr. Sarkisian provided a Vocational Rehabilitation Consultation Report (the "Report") that evaluates Plaintiff's physical functional capacity and lists jobs that would be appropriate for Plaintiff, noting that "he has essentially self-rehabilitated himself" [sic]. Plaintiff seeks to exclude Dr. Sarkisian's evidence and testimony on the grounds that it is not relevant.

"Relevant evidence" is that which would have any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Fed. R. Evid., Rule 401. Evidence which is not relevant is not admissible. Fed R. Evid., Rule 402. Here, neither party disputes that Dr. Jadwin was physically capable of performing the job functions of a pathologist except for the two-three week period in May of 2005 when he was recovering from nasal surgery and a broken foot and avulsed ankle ligament.

There is nothing about Dr. Sarkisian's testimony, evidence or opinions that has any bearing whatsoever on any fact that is of consequence to the determination of the action, and should therefore be excluded.

RESPECTFULLY SUBMITTED.

Dated: May 1, 2009

/s/ Eugene D. Lee
LAW OFFICE OF EUGENE LEE
555 West Fifth Street, Suite 3100
Los Angeles, CA 90013
Phone: (213) 992-3299
Fax: (213) 596-0487
email: elee@LOEL.com
Attorney for Plaintiff DAVID F. JADWIN, D.O.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28