LAW OFFICE OF EUGENE LEE
Eugene D. Lee (SB#: 236812)
555 West Fifth Street, Suite 3100
Los Angeles, CA 90013
Phone: (213) 992-3299
Fax: (213) 596-0487
email: elee@LOEL.com

Attorneys for Plaintiff
DAVID F. JADWIN, D.O.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| DAVID F. JADWIN, D.O., | Civil Action No. 1:07-cv-00026 OWW DLB |
| Plaintiff, | **PLAINTIFF'S TRIAL BRIEF** |
| v. | Complaint Filed: January 6, 2007<br>Trial Date: May 12, 2009 |
| COUNTY OF KERN, et al., | |
| Defendants. | |

Plaintiff DAVID F. JADWIN ("Plaintiff" or "Dr. Jadwin") hereby submits his Trial Brief.

## I.   STATEMENT OF FACTS

Plaintiff David F. Jadwin, D.O. ("Plaintiff" or "Dr. Jadwin") is the former Chair of Pathology at Kern Medical Center ("KMC" or "the hospital"). He was hired to improve patient care quality. His efforts to do so quickly encountered resistance from certain senior medical staff.

In October of 2005, certain senior medical staff' decided to place multiple letters of reprimand in Dr. Jadwin's credentials file for a minor 5- to 8-minute time overrun during an otherwise successful 1-hour medical conference. The fallout from this exacerbated Dr. Jadwin's chronic depression to the point that it became so disabling that Dr. Jadwin was forced to request and take an approved reduced work schedule medical leave as an accommodation. When Dr. Jadwin requested an extension of his reduced work schedule leave, Defendant (by and through Peter Bryan, then Chief Executive Officer of KMC) both withdrew Plaintiff's accommodation and interfered with his right (under the Family and Medical

Leave Act, the California Family Rights Act, and the California Fair Employment and Housing Act) to a medically necessary reduced work schedule by requiring him to go on full-time medical leave instead, so as to burn up his medical leave allotment. Mr. Bryan also threatened Plaintiff with termination should he not return to work full-time despite his disability.

Roughly six weeks later, during which Plaintiff was expressly ordered not to contact anyone or enter the hospital premises on threat of termination, Mr. Bryan recommended and Defendant County of Kern ("KC" or "the county") endorsed the decision to demote Plaintiff solely for "unavailability" due to his medical leave, his subsequent absence from the hospital and his failure to make any effort to contact anyone at the hospital. Further, KC conditioned Dr. Jadwin's return to work as a regular pathologist on his release to full time work, and acceptance of disparate terms and conditions, including an excessive pay cut and abbreviated duration of his employment contract.

Although the Pathology Department "continue(d) to function well" while Dr. Jadwin was on part-time leave; within months of his removal as Chair, it was in "chaos". Two months after Dr. Jadwin had returned to work as a demoted staff pathologist, KMC placed Dr. Jadwin on administrative leave "pending resolution of a personnel matter." KC gave Dr. Jadwin no procedural due process as guaranteed by the Fourteen Amendment.  Dr. Jadwin remained on administrative leave for another ten months until his contract expired on October 4, 2007. No one from KC contacted him about his administrative leave or renewal of his employment contract or responded to his numerous requests for an explanation.

Further, KC decided not to renew Dr. Jadwin's contract: "he had been on medical leave, and had requested even more leave, and for that reason and the fact that he was suing us, we decided not to renew his contract."

## II.     POINTS OF LAW

**A. CFRA Denial/FMLA Interference with Entitlement to Leave.**

The essential elements of a CFRA Denial claim are:  (1) Plaintiff was eligible for medical leave[1];

---

[1] Plaintiff was eligible for CFRA leave in that (a) he was an employee of Defendant, (b) Defendant employed 50 or more employees within 75 miles of Plaintiff's workplace, (c) at the time Plaintiff requested leave he had more than 12 months of service with Defendant and had worked at least 1,250 hours for Defendant during the previous 12 months, and (d) at the time

USDC, ED Case No. 1:07-cv-00026 OWW DLB

PLAINTIFF'S TRIAL BRIEF                                                                                                                      2

(2) Plaintiff requested leave for his own serious health condition[2]; (3) Plaintiff provided reasonable notice to Defendant of his need for reduced work schedule medical leave, including its expected timing and length;[3] (4) Defendant denied Plaintiff's request for an extension of his reduced work schedule medical leave, and forced Plaintiff to take more leave than was medically necessary; (5) as a result Plaintiff was harmed; and (6) Defendant's decision and/or conduct was a substantial factor is causing Plaintiff's harm. Cal. Gov't. C. §12945.2(a); CACI 2600.

An employer interferes with an employee's right to FMLA leave when an employer denies an employee's entitlement to FMLA leave. FMLA's Interference claim is incorporated into CFRA. *Faust v. California Portland Cement Co.* 150 Cal. App. 4th 864, 885 (2007). To establish this type of interference claim, Plaintiff must show: (1) he is an eligible employee; (2) his employer is an employer under the FMLA; (3) he was entitled to take the FMLA leave at issue; (4) he gave adequate notice of his intention to take the leave; and (5) the defendant denied him, or actually discouraged him from taking, such leave. See *Price v. Multnomah County*, 132 F. Supp. 2d 1290, 1297 (D. Or. 2007); see also *Hurley v. Pechiney Plastic Packaging, Inc.*, 2006 WL 708656, No. C 05-05028 JSW, at *3 (N.D. Cal. Mar. 16, 2006).

Here, it is undisputed that (1) Defendant County was covered by CFRA/FMLA, (2) Plaintiff was eligible to take medical leave as of December 16, 2006, [Defendant's responses to RFA Nos. 134-138 at 28:15-29:10]. Plaintiff contends that the notice he gave Defendant of his need for an extension of his

---

Plaintiff requested leave, Plaintiff had taken no more that 12 weeks of family care or medical leave in the 12-month period from December 16, 2005 and/or March 16, 2006

[2] Government Code section 12945.2(c)(8) provides: "Serious health condition" means an illness, injury, impairment, or physical or mental condition that involves either of the following:
    (A) Inpatient care in a hospital, hospice, or residential health care facility.
    (B) Continuing treatment or continuing supervision by a health care provider.

[3] If Defendant notified its employees that 30 days' advance notice was required before the leave was to begin, then Plaintiff must show that he gave that notice, or, if 30 days' notice was not reasonably possible under the circumstances, that he gave notice as soon as possible. "Failure of the employer to give or post such notice shall preclude the employer from taking any adverse action against the employee, including denying CFRA leave, for failing to furnish the employer with advance notice of a need to take CFRA leave." 2. C.C.R. § 7297.4(5).

USDC, ED Case No. 1:07-cv-00026 OWW DLB

PLAINTIFF'S TRIAL BRIEF                                                                                         3

medical leave was reasonable under the circumstances. Further, Plaintiff contends that Defendants are precluded from arguing that Dr. Jadwin failed to provide reasonable notice because Defendant failed to adequately notify him of any notice requirements; and Defendant waived any notice requirements and deducted time Dr. Jadwin's CFRA/FMLA balance from March 16, 2006 onward from even though it failed to formally approve and designate this leave as CFRA/FMLA leave.

"An employee may not be required to take more FMLA leave than necessary to resolve the circumstances that precipitated the need for leave." 29 C.F.R. § 825.311(c). Here, Defendant required Plaintiff to take more leave than was medically necessary by converting his reduced work schedule leave into full time leave on April 28, 2006.

An employer interferes with an employee's rights under the FMLA by mislabeling an employee's leave as "personal leave" or something else when, in reality, the leave qualified as FMLA leave. *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1132 (9th Cir. 2003).

Here, Defendant miscalculated the amount of leave to which Dr. Jadwin was entitled.

> "…When an employee takes leave on an intermittent or reduced work schedule, only the amount of leave actually taken may be counted toward the employee leave entitlement. The actual workweek is the basis of the entitlement... if a full-time employee who would otherwise work 8-hour days works 4-hour days under a reduced leave schedule, the employee would use "1/2" week of FMLA leave…" 29 C.F.R. § 825.205(b)(1).

According to Dr. Jadwin's contract, his "standard workweek" was 48 hours per week. [Jadwin's Employment Contract of 2/11/02 (DFJ00171)]. In other words, Dr. Jadwin was entitled to 576 hours of reduced work schedule leave, not the 480 hours that Defendant allotted to him. [Bryan Memo to JCC of 7/10/06 at Enclosure 9]. Because Defendant mislabeled some of Dr. Jadwin's medical leave as "Personal Necessity Leave", Defendant interfered with Plaintiff's medical leave rights.

Defendant's violation of FMLA was willful in that Defendant failed to act in good faith and lacked reasonable grounds for believing its actions were not a violation of FMLA. 29 USC 2617(a)(1)(A)(iii); *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1130 (9th Cir. Ariz. 2001).

**B. FMLA Interference/CFRA Retaliation**

The essential elements of a FMLA Interference/CFRA Retaliation Claim are (1) Plaintiff was

eligible for medical leave[4]; (2) Plaintiff requested and/or took medical leave, (3) Defendant demoted Plaintiff, cut his pay, created a hostile work environment, and/or decided not to renew his employment contract; (4) Plaintiff's request for and/or taking of medical leave was a negative factor/motivating reason for his demotion, paycut, creation of a hostile work environment, and/or non-renewal of his employment contract; (5) Plaintiff was harmed; and (6) Defendant's retaliatory conduct was a substantial factor in causing Plaintiff's harm. [Cal. Gov't C. §12945.2(*l*); 2.C.C.R. § 7297.7; *Bachelder v. America West Airlines, Inc*. 259 F.3d 1112, 1122 (9th Cir. 2001) (citing 29 Code of Federal Regulations § 825.220(c)).

It is undisputed that (1) Defendant County was covered by CFRA/FMLA, (2) Plaintiff was eligible to take medical leave as of December 16, 2006, [Defendant's responses to RFA Nos. 134-138 at 28:15-29:10] and (3) Plaintiff requested and took reduced work schedule CFRA medical leave from December 16, 2005 to at least March 15, 2006 [DFJ1152-1154; Riskin Decl. Exh. 1].

On July 10, 2006, Bryan recommended that the JCC remove Dr. Jadwin from his position as chair solely due to "unavailability for service because of medical leaves." [Bryan Memo to JCC of 7/10/06 at 0001476)]. Bryan represented to the JCC that "Since the middle of November 2005, Dr. Jadwin worked only 32% of the hours normally expected of a full time pathologist (enclosure 9)." [Bryan Memo to JCC of 7/10/06 at 0001477)]. Enclosure 9 starts with a summary of Dr. Jadwin's timecards (which follow) showing the times he took medical leave from December 16, 2005 through June 9, 2006 (0001527). Because the time when Dr. Jadwin was "unavailable" includes times when Dr. Jadwin was on medical leave, Defendant interfered with Plaintiff's medical leave rights, and retaliated against him for taking medical leave. *Bachelder v. America West Airlines, Inc.* 259 F.3d 1112, 1124 (9th Cir. 2001) (citing 29 Code of Federal Regulations § 825.220(c)); Gov't C. § 12945.2.

Because a portion of a KMC department chair's base pay is tied to his chairmanship, Plaintiff's Demotion made the Paycut a foregone conclusion; hence, the JCC vote to demote Plaintiff was effectively a vote to reduce his Base Pay as well

---

[4] Plaintiff was "eligible" for CFRA leave if (a) he was an employee of Defendant, (b) Defendant employed 50 or more employees within 75 miles of Plaintiff's workplace, (c) at the time Plaintiff requested leave he had more than 12 months of service with Defendant and had worked at least 1,250 hours for Defendant during the previous 12 months, and (d) at the time Plaintiff requested leave, Plaintiff had taken no more that 12 weeks of family care or medical leave in the 12-month period from December 16, 2005 and/or March 16, 2006

USDC, ED Case No. 1:07-cv-00026 OWW DLB

PLAINTIFF'S TRIAL BRIEF                                                                                                                    5

Plaintiff's taking of medical leave was also a negative/motivating factor in the non-renewal of his contract. Ray Watson, Chair of the Board Supervisors at the time of the Nonrenewal, testified in deposition: "My understanding was that [Plaintiff] had -- he had been on medical leave, family leave, and had requested even more leave, and that for that reason and the fact that he was suing us, that we decided not to renew his contract" [Watson Depo. at 113:19-114:4]. Watson was referring to Dr. Jadwin's protected reduced work schedule leave because he further testified: "I would just say that, again, if a manager's to perform their duties, they have to be there all the time, they are being paid to be full-time employees doing their job, and he was not doing that for many, many months." [Watson Depo at 18:15-19].

Defendant also created a hostile work environment through taking the above adverse employment actions against Plaintiff, but also through Defendant's interference with Plaintiff's medical leave rights (Plaintiff incorporates by reference his discussion on CFRA/FMLA interference in Section A, above as if fully set forth herein), Bryan's conversion of Dr. Jadwin's reduced work schedule leave to full time leave in order to burn up his medical leave allotment more rapidly; Bryan's repeated solicitation of Plaintiff's resignation because of his exercise of his right to medical leave, and Bryan's and the County's (by and through Dutt) expressed hostility to Plaintiff's exercise of his medical leave rights. Defendant also conditioned Dr. Jadwin's return to work from medical leave on October 4, 2006 on his agreeing to less favorable contract terms and conditions than those governing the other pathologists at KMC; and subjected Dr. Jadwin to unwarranted criticism, constant investigations and scrutiny and non-transparent peer review while he was working as a regular pathologist, often in violation of their own policies.

Defendant's violation of FMLA was willful in that Defendant failed to act in good faith and lacked reasonable grounds for believing its actions were not a violation of FMLA. 29 USC 2617(a)(1)(A)(iii); *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1130 (9th Cir. Ariz. 2001).

**C. Disability Discrimination**

The essential elements of a FEHA claim for disability discrimination are: (1) Defendant was an employer of five or more employees; (2) Plaintiff was an employee of Defendant; (3) Defendant thought/knew that Plaintiff had a mental/physical condition (chronic depression, nasal surgery, broken

USDC, ED Case No. 1:07-cv-00026 OWW DLB

PLAINTIFF'S TRIAL BRIEF                                                                                                                  6

foot and avulsed ankle ligament) that limited the major life activity of working fulltime, enjoying life without anxiety and/or insomnia; breathing and exerting himself; and walking, standing, and sitting without elevating his foot, respectively, or a history of such; (4) Plaintiff was able to perform his essential job duties with accommodation for his chronic depression, nasal surgery, broken foot and avulsed ankle ligament; (5) Defendant demoted Plaintiff, cut his pay, created a hostile work environment, and/or decided not to renew his employment contract; (6) Plaintiff's history of chronic depression and/or contemporary chronic depression; and/or contemporary nasal surgery, broken foot and avulsed ankle ligament was/were a motivating reason for his demotion, paycut, hostile work environment, and non-renewal of his employment contract; OR Defendant's belief that Plaintiff had a history of chronic depression and/or contemporary chronic depression was a motivating reason for his demotion, paycut, hostile work environment, and non-renewal of his employment contract; (7) Plaintiff was harmed; and (8) Defendant's decision(s)/conduct was/were a substantial factor in causing Plaintiff's harm. Cal. Gov't Code § 12940(a).

Both Plaintiff's and Defendant's expert psychiatrist agree that Dr. Jadwin suffered from chronic depression. The County, by and through its representative, Dr. Kercher, a psychiatrist, admitted knowing that Dr. Jadwin suffered from chronic depression throughout his tenure at KMC.

Plaintiff was able to perform the essential job duties of Chair of Pathology with reasonable accommodation. In cases where a leave of absence may be a reasonable accommodation, the question is not whether the employee can perform the essential functions of the job during the leave period. Rather, the question is whether the leave of absence is likely to enable the employee, upon his return from leave, to resume performing the essential functions of the job. *Hanson v. Lucky Stores, Inc*., 74 Cal. App. 4th 215, 226 (1999); *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1135-36 (9th Cir. 2001); *Nunes v. Wal-Mart Stores, Inc.,* 164 F.3d 1243, 1247 (9th Cir. 1999). Since Dr. Jadwin's inability to perform the essential functions of his position as Chair was due to "unavailability" manufactured by Bryan, Dr. Jadwin would have been able to perform these duties on his return to work.

Because Dr. Jadwin's reduced work schedule leave was a form of accommodation for his disabling depression, evidence showing animus towards his taking of medical leave is also probative of animus towards individuals with disabilities, and is incorporated by reference herein. Plaintiff also

incorporates by reference herein, the points and authorities regarding Defendant's creation of a hostile work environment. In addition, Defendant created a hostile work environment by issuing unwarranted reprimands related to Dr. Jadwin's 5-or 8-minute overrun in his presentation at the Oncology Conference on 10/12/05; and Defendant's refusal to reassure Plaintiff not only that these reprimands were not in his credentialing file, but also that they would never be placed in his credentialing file.

### D. Failure to Provide Reasonable Accommodation

The essential elements of a FEHA claim for Failure to Provide Reasonable accommodation are: (1) Defendant was an employer of five or more employees; (2) Plaintiff was an employee of Defendant; (3) Defendant thought/knew that Plaintiff had a mental condition (chronic depression) that limited his ability to work fulltime and to enjoy life without anxiety or insomnia (4) Defendant failed to provide reasonable accommodation for Plaintiff's chronic depression; (5) Plaintiff was harmed; and (6) Defendant's failure to provide reasonable accommodation was a substantial factor in causing Plaintiff's harm. Cal. Gov't C. § 12940(m).

There is a split of authority as to whether Plaintiff is also required to prove that he was able to perform his essential job requirements with accommodation. CACI 2541; *Nadaf-Rahrov v. Neiman Marcus Group, Inc*., 166 Cal. App. 4th 952, 977-79 (2008); *Bagatti v. Department of Rehab.* (2002) 97 Cal.App.4th 344; *Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th 245, 256 (2000); *Diaz v. Fed. Express Corp*., 373 F. Supp. 2d 1034, 1054 (C.D. Cal. 2005); *Hanson*, 74 Cal. App. 4th at 226 ("As long as a reasonable accommodation available to the employer could have plausibly enabled a handicapped employee to adequately perform his job, an employer is liable for failing to attempt that accommodation.") (internal quotation marks omitted); Placement on full-time leaves starting April 28, 2006 was not a reasonable accommodation of Plaintiff's disability.

If the County simply forced Plaintiff to take a full-time leave that was not mandated by his doctor nor medically better for Plaintiff in any event, a reasonable jury could conclude that the County's accommodation was unreasonable. ("[A] finite leave can be a reasonable accommodation under FEHA, provided it is likely that at the end of the leave, the employee would be able to perform his or her duties."); *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1135-36 (9th Cir. 2001) (recognizing that a leave of absence may be a reasonable accommodation under the ADA where it "would reasonably

USDC, ED Case No. 1:07-cv-00026 OWW DLB
PLAINTIFF'S TRIAL BRIEF                                                                                                    8

accommodate an employee's disability and permit him, upon his return, to perform the essential functions of the job").

### E. Failure to Engage in Good Faith in an Interactive Process

The essential elements of a FEHA claim for Failure to Engage in Good Faith in an Interactive Process are: (1) Defendant was an employer of five or more employees; (2) Plaintiff was an employee of Defendant; (3) Plaintiff had a mental disability that was known to Defendant (4) Plaintiff requested that Defendant make reasonable accommodation for his disability so that he would be able to perform the essential job requirement; (5) Plaintiff was willing to participate in an interactive process to determine whether reasonable accommodation could be made so that he would be able to perform the essential job requirements; (6) Defendant failed to participate in a timely good-faith interactive process with Plaintiff to determine whether reasonable accommodation could be made; (7) Plaintiff was harmed; and (8) Defendant's failure to engage in a good-faith interactive process was a substantial factor in causing Plaintiff's harm. Cal. Gov't C. § 12940(n); *Spitzer v. Good Guys, Inc.*, 80 Cal. App. 4th 1376, 1384 (2000).

There is a split of authority whether Plaintiff is also required to prove that he was able to perform his essential job requirements with accommodation. *Nadaf-Rahrov v. Neiman Marcus Group, Inc.*, 166 Cal. App. 4th 952, 977-79 (2008); *Bagatti v. Department of Rehab.* (2002) 97 Cal.App.4th 344]. The *Nadaf-Rahrov* decision is the sole authority for the proposition that the plaintiff bears the burden of demonstrating that s/he has the ability to perform the essential functions of the job as part of the prima facie elements in a case brought under Government Code § 12940(m) and (n). The *Nadaf-Rahrov* Court reached this decision by analogizing to the Supreme Court's assignment of this burden to plaintiff in a disability discrimination case brought under subdivision (a) of the Government Code § 12940. *Green v. State of California* 42 Cal. 4th 254 (2007). Yet neither subdivision (m) or (n) of the Government Code § 12940 contain the reference to "inability to perform" that formed the basis for the *Green* Court's statutory construction analysis of subdivision (a). In fact, the *Green* Court expressly noted that decisions rendered under Section 12940(m) (*Bagatti* and *Brundage*) were "unhelpful" in its analysis of Section 12940(a). *Id*. at 265.

The California Legislature has adopted the EEOC guidelines for an interactive process. [Gov't.

USDC, ED Case No. 1:07-cv-00026 OWW DLB

PLAINTIFF'S TRIAL BRIEF                                                                                                          9

Code § 12926.1; [Gov't. Code § 12926.1; 29 C.F.R. Pt. 1630, App. § 1630.9.]. "Once an employer becomes aware of the need for accommodation, that employer has a mandatory obligation under the ADA to engage in an interactive process with the employee to identify and implement appropriate reasonable accommodations. *Barnett v. U.S. Air*, 228 F.3d 1105, 1114 (9th Cir. 2000). "An appropriate reasonable accommodation must be effective, in enabling the employee to perform the duties of the position." *Id*. at 1115. The interactive process requires communication and good-faith exploration of possible accommodations between employers and individual employees, and neither side can delay or obstruct the process. *Id*. at 1114-15"; *Humphrey v. Memorial Hosps. Assn.*, 239 F.3d 1128, 1137 (9th Cir. 2001)].

**F. Due Process Violation**

The essential elements of a 42 U.S.C. 1983 claim for deprivation of property without due process are: (1) Plaintiff had a constitutionally protectable property right in avoiding placement on administrative leave that was deprived when David Culberson placed him on administrative leave. *Qualls v. Cook*, 245 F. App'x 624, 625 (9th Cir. 2007), and (2) Defendant failed to give Plaintiff adequate due process when placing him on administrative leave.

Plaintiff had a constitutionally protectable property right in avoiding placement on administrative leave. Plaintiff's property interest in continued employment during the term of his contract included a property right in "active duty," *Deen v. Darosa*, 414 F.3d 731, 734 (7th Cir. 2005), or, as the Ninth Circuit has suggested, a "property interest in avoiding placement on administrative leave with pay." *Qualls v. Cook*, 245 F. App'x 624, 625 (9th Cir. 2007).

By specifying in County policies the grounds on which Plaintiff could be placed on paid administrative leave, and by not contractually providing in Plaintiff's contract for any other right to place Plaintiff on paid administrative leave, the County implicitly limited its authority to place Plaintiff on paid leave to specified reasons. See *Sanchez*, 915 F.2d at 429.

Finally, there is some California authority that a physician who is employed under a fixed term contract with a County and who is acting lawfully and complying with the terms of his contract cannot be prevented "from performing the duties incumbent on him" for arbitrary reasons. *Grindley v. Santa Cruz County*, 4 P. 390, 393 (Cal. 1884). While ancient and in no way dispositive, this case lends support

to the position that, by having a fixed term contract with the County with a general property right in continued employment, Plaintiff had a concomitant property right in active duty during the term of his employment.

There is no dispute that Defendant failed to give Plaintiff any due process whatsoever when placing him on administrative leave.

### G. Damages

Plaintiff was harmed by Defendant's adverse employment actions, deprivation without due process, interference and discrimination against him.

Defendant's adverse employment actions, deprivation without due process, interference and discrimination were a substantial cause of Plaintiff's harms resulting in his entitlement to damages.

It is unclear whether Plaintiff or Defendant bears the burden of proof to show Plaintiff mitigated (or failed to mitigate) damages.

All damages are available to Plaintiff under Cal. Govt. C. 12926(b). 2 CCR 7286.9. See also *Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 132 ("We have held 'that, in a civil action under the FEHA, all relief generally available in noncontractual actions . . . may be obtained.' This includes injunctive relief.")(internal citations omitted*.); Bihun v. AT&T Information Systems, Inc.,* 13 Cal. App. 4th 976 (Cal. App. 2d Dist. 1993) (front pay is a permitted remedy for FEHA violations and does not need to be substantiated by expert testimony); Cassino v. Reichold Chemicals, Inc., 817 F.2d 1338. (9th Cir. 1987).

Plaintiff is also entitled to back pay, front pay, liquidated damages and compensatory damages on his FMLA claim. 29 USC 2617(a)(1)(A)(iii); *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1130 (9th Cir. Ariz. 2001).

### III.    ANTICIPATED EVIDENTIARY ISSUES

Plaintiff continues to be prejudiced by the protean nature of the Fifth Affirmative Defense. To date, Defendant has proposed at least 3 formulations of it, with more expected. It should be noted that in so doing, Defendant never sought leave to amend the pleadings. The Court has suggested that the unclean hands defense is arguably subsumed within that defense. Excepting whatever this defense is ultimately deemed to be, Plaintiff contends that Defendant's extensive character evidence about

Plaintiff's alleged habits, prior acts, and propensities has no relevance whatsoever to Plaintiff's claims and even if it did, its prejudicial effect in confusing and misleading the jury, wasting the court's time, etc., would far outweigh any *de minimis* probative value.

The law is well-settled that even dysfunctional and dislikable individuals (which Plaintiff most assuredly is not) are entitled to protection of their medical leave rights, anti-discrimination rights and Constitutional rights. Defendant's character evidence against Plaintiff is nothing more than a bid for jury nullification and should be excluded.

To the extent the Court allows in character evidence against the Plaintiff, then Plaintiff should be permitted to rebut by putting on evidence of his patient care and quality complaints and the hostility which they engendered at Kern Medical Center as being the real explanation for the vindictive allegations being made against him.

### IV.   CONCLUSION

Plaintiff DAVID F. JADWIN had the right to a workplace free from unlawful employment practices. Defendant discriminated against Dr. Jadwin because he was an individual with disabling chronic depression; failed to engage in an interactive consultation; failed to provide reasonable accommodation; and violated his medical/recuperative leave rights as well as depriving him of a constitutionally protected property interest without the procedural due process guaranteed by the Fourteenth Amendment.

RESPECTFULLY SUBMITTED on May 4, 2009.

LAW OFFICE OF EUGENE LEE

By: _____/s/ Eugene D. Lee_____
Eugene D. Lee
Attorney for Plaintiff DAVID F. JADWIN
555 West Fifth Street, Suite 3100
Los Angeles, CA 90013