LAW OFFICE OF EUGENE LEE
Eugene D. Lee (SB#: 236812)
555 West Fifth Street, Suite 3100
Los Angeles, CA 90013
Phone: (213) 992-3299
Fax: (213) 596-0487
email: elee@LOEL.com

Attorneys for Plaintiff
DAVID F. JADWIN, D.O.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DAVID F. JADWIN, D.O.,** | Civil Action No. 1:07-cv-00026 OWW TAG |
| Plaintiff, | PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTIONS *IN LIMINE* NOs 1-13. |
| v. | |
| **COUNTY OF KERN, et al.,** | DATE:  May 8, 2009<br>TIME:  12:00 p.m.<br>CRTM: 3, Hon. Oliver W. Wanger<br>       2500 Tulare St<br>       Fresno, CA<br>TRIAL:  March 24, 2009 |
| Defendants. | |
| | Complaint Filed:  January 6, 2007 |

Plaintiff DAVID F. JADWIN, D.O. ("Plaintiff" or "Dr. Jadwin") hereby opposes the consolidated motions *in limine* numbers 1-13 submitted by Defendant County of Kern ("Defendant" or "the County").

**1. Opposition to Motion to Exclude Attorneys as Witnesses**

The "attorney-client privilege" does not protect independent facts related to a communication, i.e., that a communication took place, and the time, date, and participants in the communication, it does not protect disclosure of underlying facts which may be referenced within a qualifying communication, and it does not extend to individuals who are no more than witnesses to the matter at issue in the litigation. *2,022 Ranch, L.L.C. v. Superior Court* (App. 4 Dist. 2003) 7 Cal.Rptr.3d 197, 113 Cal.App.4th 1377, modified on denial of rehearing.

The attorney-client privilege does not apply to advice given by in-house counsel, including county counsel, when they are acting in their capacity as a business advisor or negotiator. In such cases, California courts apply the "dominant purpose" test to see if the attorney-client privileges attaches to a communication. For example, communications between the employer's general manager and its negotiator, an attorney, relating to conduct of labor negotiations were not privileged under attorney-client privilege unless dominant purpose of the particular communication was to secure or render legal service or advice, in that employer's labor negotiations could have been conducted by a nonattorney. *Montebello Rose Co., Inc. v. Agricultural Labor Relations Bd.* (App. 5 Dist. 1981) 173 Cal.Rptr. 856, 119 Cal.App.3d.

Knowledge which is not otherwise privileged does not become so merely by being communicated to an attorney; the attorney-client privilege does not extend to subject matter or documents otherwise unprivileged merely because that subject matter has been communicated or handed over to an attorney, even where the parties intend the matter to be confidential. *2,022 Ranch, L.L.C. v. Superior Court* (App. 4 Dist. 2003) 7 Cal.Rptr.3d 197, 113 Cal.App.4th 1377, modified on denial of rehearing.

Further, in *Wellpoint Health Networks, Inc. v. Superior Court*, (1997) 59 Cal.App.4th 110, 129, the California Supreme Court stated "if defendants' answer or discovery responses indicate the possibility of a defense based on thorough investigation and appropriate corrective response, ... a finding

1  of waiver [of the attorney-client privilege can] be made."

2  Here, Defendant averred that Defendant's attorneys participated in taking some of the adverse
3  employment actions against Plaintiff. For example, **Mark Wasser and Mark Nations** were the only
4  persons named who participated in the decision made on April 27, 2006, to lift the house-arrest
5  restriction on Plaintiff during his administrative leave and to offer a buy-out of the remainder of
6  Plaintiff's employment contract term. [Supplementary Response to Interrogatory No. 43 & 44 at 28:10-
7  22]. Under *Montebello Rose,* these attorneys were acting as negotiators rather than attorneys. Indeed,
8  since only these attorneys are listed as participants in these decisions, the averred responses indicate that
9  these attorneys did not communicate with their client, the County, at all regarding these matters.

10  **Karen Barnes** participated in the decision made on April 28, 2006, to convert Plaintiff's leave to
11  full-time leave. [Supplemental Response to Interrogatory No. 36 at 26:24-27:4]. Barnes participated in
12  decisions relating to Amendment 1 to Dr. Jadwin's employment contract (DFJ1416) approved by the
13  Board of Supervisors on October 3, 2006 that contained less favorable terms and conditions than those
14  of other regular pathologists at KMC. [Supplementary Response to Interrogatory No. 38 at 27:12-21].
15  Barnes participated in the decision made on October 3, 2006, to recommend reducing Plaintiff's base
16  salary. [Supplementary Response to Interrogatory No. 39 at 27:23-28:2]. Barnes and **Margo Raison**
17  participated in the decision made on December 6, 2006, to place Dr. Jadwin on administrative leave.
18  [Supplementary Response to Interrogatory No. 42 at 28:3-9]. Ray Watson also testified that Barnes was
19  present during discussions regarding the non-renewal of Dr. Jadwin's contract. Under *2,022 Ranch,* both
20  Barnes and Raison can testify as to the independent facts related to these decisions.

21  Barnes was also responsible for hiring the locum tenens to cover for Dr. Jadwin during his
22  medical leave. Under *Montebello Rose,* while arranging for locum tenens coverage, she was acting more
23  as a business agent or negotiator for the County than its attorney. Such was the case in countless other
24  instances: Barnes was the sole person and point of contact who contracted with William Colburn, an
25  outside pathologist expert, to engage in retaliatory peer review of Plaintiff (peer review is not conducted
26  by attorneys, but by medical professional peers); Barnes personally informed Plaintiff in several letters
27  that no letters of reprimand were placed into his file; Barnes was the sole recipient of several letters
28  requesting preservation of evidence against spoliation that went unheeded; as well as of demand letters

representing Plaintiff's opposition activities to violations of FEHA, FMLA and CFRA; Barnes was the sole point of contact for arranging Plaintiff's return to his office to retrieve important computer files and personal effects which Dr. Dutt, Plaintiff's successor as chair, then blocked in a retaliatory manner. The list goes on and on; in each such case, Barnes was the sole participant or percipient witness. Denying cross-examination of Ms. Barnes would unduly prejudice Plaintiff by preventing him from access to the only source of evidence as to these events.

On February 23, 2006, **Bernard Barmann** convened a "mediation meeting" among Drs. Jadwin, Abraham, Ragland, Harris, Kercher and Peter Bryan. Mr. Barmann, as convenor, can testify as to the purpose of the meeting, and his recollection of the events that occurred at that meeting without implicating the attorney-client privilege. Under *Montebello Rose,* Barmann was acting more as a mediator than as the County's attorney. Under *2,022 Ranch,* Barmann can testify as to the independent facts related to this meeting.

**Michael Young and Robert Woods** can testify as to the authenticity of their correspondence that is relevant to this case without breaching any attorney-client privilege, and their testimony can address any hearsay or other substantive objections which may be raised by Defendant – objections which Defendant has already made clear they intend to raise.

For the foregoing reasons, the Court should deny Defendant's Motion *in limine* No. 1.

**2. Opposition to Motion to Exclude Evidence of Retaliation Based on Theories Other than FMLA or FEHA.**

In its Motion *in limine* No. 7, Defendant acknowledges that Plaintiff's whistleblowing activities are a fact and evidence of those activities may be admissible for purposes other than establishing Defendant's liability for retaliation based on protected whistleblowing activity. Doc 323 at 5:23-24. On this ground alone, the Court should deny Defendant's motion *in limine* No. 2.

During the Pretrial Conference, the Court had ordered Plaintiff to present his continuing objections to the vagueness and viability of the Fifth Affirmative Defense in his motions *in limine*. Defendant's Fifth Affirmative Defense appears to place Plaintiff's interpersonal relationship, particularly with KMC's leadership, at issue. By this motion, Defendant seeks to exclude evidence that Dr. Jadwin's strained relations with KMC's leadership was due to the fact that he was raising legitimate

and important patient safety concerns that they were resisting and refusing to acknowledge and address.

For example, as part of its Fifth Affirmative Defense, Defendant contends that Dr. Jadwin:

> "…wrote many e-mails and letters, all of which have been produced, falsely alleging that KMC was in violation or non-compliance with state law and accepted health care protocols…" and that "…he dismissed opinions and observations of other members of KMC staff if their opinions and observations did not coincide with his own..: and that "he proposed a change for keeping for blood product chart copies that would have violated state laws on the integrity of patient records and made accusations to several KMC members when it was not adopted…" and that he "…insist[ed] they devote disproportionate time in preparing reports and forms of minimal importance; he created frustration and stress in other members of the staff as a result of the same behaviors, he insisted that staff in the Pathology Department devote extraordinary time to compiling information of minimal importance and dismissed their resulting concerns about workload...Plaintiff frequently became emotional and argumentative over routine hospital management and administration issues and gradually destroyed the collegiality and teamwork essential to effective hospital operation…Plaintiff's typical response to disagreements was to blame and accuse others, verbally assault them and, ultimately, make complaints against them." Defendant's Supplemental Response to Interrogatory No. 3 at 2:25-5:2

As Blood Bank Director, Dr. Jadwin repeatedly reported his concerns about KMC's nurses' non-compliance with laws governing blood transfusion records ("PCCs") to Toni Smith (Nurse Executive) and other members of KMC's leadership. [Jadwin's emails to Smith from 1/4/06 to 3/23/06 re PCC deficiencies (DFJ00753-778); Jadwin's Memo to Bryan of 4/10/06 (DFJ00784) Smith asserted that occasional omissions occurred because the nurses were too overburdened to record all the blood transfusion data that the law required them to record. KMC leadership asserted there was no problem because JCAHO had surveyed 5 PCCs as part of its inspection, and didn't find any problems on those five. [See, e.g., Jadwin's notes re 4/13/06 meeting with Bryan - "no problem with PCCs (five charts reviewed by JCAHO)" at DFJ00787]. However, the Department of Health Services found that 50% of the PCCs were deficient and ordered that 60 PCCs per month should be reviewed as part of a correction plan. [DHS Investigative Report of 8/11/08 (DFJ02818)]. Defendant's denial that KMC was in noncompliance with laws regarding PCCs in the face of overwhelming evidence to the contrary, KMC's trivialization of the need for accurate recordkeeping, and their characterization of Jadwin's insistence on the need for effective corrective action regarding KMC's non-compliance with PCCs as evidence that he was "non-collegial" all require that evidence of Plaintiff's whistleblowing activity must be admitted to rebut the Fifth Affirmative Defense.

In *Richards v. CH2M Hill, Inc*. (2001) 26 Cal.4th 798, [29 P.3d 175, 178-179, 190; 111

Cal.Rptr.2d 87, 91-92, 106], the California Supreme Court pointed to delays by plaintiff's supervisor in providing accommodation to Richards, allegedly because he believed that she had lied about her disability on her employment application – <u>despite the clear lack of evidence</u> of such misrepresentation – as harassing conduct that contributed to Richards' hostile work environment. *Id.* at 804-806, 823. Similarly here, the County's refusal to acknowledge that Dr. Jadwin was correct in his evaluation of the PCC noncompliance problem despite overwhelming evidence supporting his conclusion, the County's refusal to take adequate corrective action, and the County's criticism of Dr. Jadwin for continuing to raise the PCC non-compliance issue, contribuited to the hostility in Dr. Jadwin's work environment, and was an underlying cause of the strain in the relationship between Dr. Jadwin and the medical staff leadership that forms the basis of the Fifth Affirmative Defense as described by Defendant in written interrogatory responses.

Defendant continues to assert that the Fifth Affirmative Defense is in fact multiple affirmative defenses: contributory negligence, unclean hands, and *McDonnell-Douglas* business necessity. Defendant also contends that the *McDonnell-Douglas* burden-shifting framework applies at time of trial, and allows it to offer evidence that the adverse actions taken against Plaintiff were motivated by a "legitimate, non-discriminatory reason". (Doc 326 at 5:16-6:15 & 8:3-26).

The California Supreme Court has held that the **_McDonnell-Douglas_ framework** does not apply at the time of trial.

> "Based on the foregoing analysis, we offer this advice to those practicing employment law: If you hope to prevail in your discrimination claim, or [*205] choose to defend an employment discrimination case, solely on the basis of the other party's failure to satisfy one of the elements of *McDonnell Douglas*'s intermediate burdens (that is, the plaintiff's prima facie case or the defendant's legitimate nondiscriminatory reasons), you must seek a determination from the trial court, by means of any of the vehicles at a litigant's disposal, that you are entitled to judgment as a matter of law. If you do not do so, and the case is submitted to the trier of fact, the intermediate burdens set forth in *McDonnell Douglas* will fall away, and the fact finder will have only to decide the ultimate issue of whether the employer's discriminatory intent was a motivating factor in the adverse employment decision." [*Caldwell v. Paramount Unified Sch. Dist.*, 41 Cal. App. 4th 189, 205 (1994).]

Federal law is generally consistent with California law regarding the inapplicability of the *McDonnell-Douglas* at trial because it is "unhelpful" to the jury. [*Costa v. Desert Palace , Inc*. (9th Cir. 2002) 299 F3d 838, 855 (en banc), *aff'd* (2003) 539 US 90, 123 S.Ct. 2148 "it is not normally

1  appropriate to introduce the *McDonnell Douglas* burden-shifting framework to the jury"]. Further,
2  Defendant's acknowledgment that under *McDonnell-Douglas*, Defendant only had the burden of
3  production rather than the burden of proof indicates that Defendant knows full well that the *McDonnell-*
4  *Douglas* framework does not provide it with an affirmative defense at trial. To the extent that
5  Defendant's Fifth Affirmative Defense asserts a *McDonnell-Douglas* "defense", it should be stricken.
6        The **business necessity** affirmative defense is only available in disparate impact claims, not
7  disparate treatment claims, such as Plaintiff's disability discrimination claim. (Cal. Code Regs., tit. 2 §
8  7286.7(b), *City and County of San Francisco v. Fair Employment and Housing Com.* (1987) 191
9  Cal.App.3d 976, 989–990 [236 Cal.Rptr. 716], quoting *Robinson v. Lorillard Corp.* (4th Cir. 1971) 444
10 F.2d 791, 798; see also, 42 U.S.C. § 2000e-2(k)(2) ("[a] demonstration that an employment practice is
11 required by business necessity may not be used as a defense against a claim of intentional
12 discrimination."); *Griggs v. Duke Power Co.*, 401 U.S. 424; CACI 2503). There is no disparate impact
13 claim at issue in this action. To the extent that Defendant's Fifth Affirmative Defense asserts business
14 necessity, it should be stricken.
15       For the third time, Plaintiff is providing briefing showing that an affirmative defense of
16 **contributory negligence** does not apply to Plaintiff's claims herein. Contributory/comparative
17 negligence is only an affirmative defense to a claim sounding in negligence, not one sounding in tort.
18       Plaintiff's claims for medical leave interference are strict liability causes of action. *Mora v.*
19 *Chem-Tronics, Inc.* 16 F.Supp.2d 1192, 1219 (S.D. Cal. 1998); *Bachelder v. America West Airlines* 259
20 F.3d 1112, 1130 (9th Cir. 2001).
21       Plaintiff's claims for disability discrimination depend on a showing of discriminatory intent.
22 *Mixon v. Fair Employment & Housing Commission* 192 Cal.App.3d 1306, 1317 (1987)("To prevail
23 under the disparate treatment theory, an employee must show that the employer harbored a
24 discriminatory intent.").
25       Plaintiff's claims for "failure to provide reasonable accommodation" and "failure to engage in an
26 interactive consultation" under FEHA are strict liability causes of action. *See* Gov't. C. § 12940(m);
27 *Marcano-Rivera v. Pueblo International, Inc.* 232 F.3d 245, 256-257 (1st Cir. 2000) ("Hence, an
28 employer who knows of a disability yet fails to make reasonable accommodations violates the statute, no

1  matter what its intent . . . .".).

2  Plaintiff's claim for constitutional due process violation requires a finding of affirmative intent.

3  *Daniels v. Williams*, 474 U.S. 327, 331 (1986).

4  To the extent that the Fifth Affirmative Defense asserts contributory negligence, it should be

5  stricken.

6  The Court should strike the Fifth Affirmative Defense in its entirety.

7  **3. Opposition to Motion to Exclude Evidence of Plaintiff's Competence**

8  Defendant contends that it will not introduce evidence impugning Plaintiff's competence, so

9  evidence showing it should be excluded. In fact, Defendant's proposed evidence is full of references

10 both suggesting Plaintiff's incompetence and flatly accusing Plaintiff of incompetence. These include,

11 but are not limited to, Elsa Ang's complaint against Dr. Jadwin of 2/20/02 (Doc 328 at 83:9), Elsa Ang's

12 accusation that Jadwin failed a PAP smear test (Doc 328 at 83:10), Dr. Abraham's accusation in a

13 Medical Executive Meeting, *apropos* of nothing, that "we lack confidence in Dr. Jadwin" (Doc 328 at

14 83:21); Dr. Ragland's and Dr. Lau's persistent accusations that Dr. Jadwin was incompetent at

15 diagnosing FNA slides despite Dr. Lieu's report that the pathologists were correct in some 200 instances

16 (Doc 328 at 83:21-84:3); Dr. Lau's accusation in a Quality Assurance meeting that Pathology's reports

17 were often tardy (*Id.*); Dr. Roy's accusations of errors made by Dr. Jadwin (Doc 328 at 84:7-18, 85:9-

18 10, 17); Dr. Dutt's accusations of errors made by Dr. Jadwin (Doc 328 at 86:18-87:6); etc. Moreover,

19 Defendant's supplemental responses to Plaintiff's Interrogatory No. 3 asking for facts supporting the

20 Fifth Affirmative Defense are replete with accusations of Plaintiff's incompetence.

21 Defendant's motion should be denied on the grounds that Defendant has demonstrated every

22 intention of introducing evidence suggesting Plaintiff's incompetence. Defendant's repeated contentions

23 of incompetence throughout this entire action have placed Plaintiff's competence squarely at issue.

24 Plaintiff is entitled to rebut these contentions.

25 Moreover, in *Richards v. CH2M Hill, Inc*. (2001) 26 Cal.4th 798, [29 P.3d 175, 178-179, 190;

26 111 Cal.Rptr.2d 87, 91-92, 106], the California Supreme Court pointed to delays by plaintiff's

27 supervisor in providing accommodation to Richards because he believed that she had lied about her

28 disability on her employment application despite the lack of evidence of such misrepresentation, accused

her of "milking the system" by requesting accommodation, and sought her resignation; and the employer's failure to eliminate a hostile work environment targeting a disabled employee were evidence of a continuing violation. *Id.* at 804-806, 823.

Similarly here, the County's refusal to acknowledge that Dr. Jadwin was competent (despite the lack of evidence supporting his incompetence, and in face of all the objective evidence establishing his competence) contributed to the hostility in his environment. Further, the County's refusal to take adequate steps to rehabilitate Plaintiff's reputation and that of the Pathology department, in the face of a growing chorus of incompetence, contributed to the hostility in Dr. Jadwin's work environment, and was the underlying cause of the strain in the relationship between Dr. Jadwin and the medical staff leadership that supposedly forms the basis of the Fifth Affirmative Defense.

Consequently, evidence of the accusations of Plaintiff's and other pathologists' incompetence, evidence of their falsity, evidence of KMC's medical staff leadership's refusal to prevent these false accusations and to rehabilitate Dr. Jadwin's reputation and that of his Pathology Department, are admissible to show how these false accusations and the medical staff leadership's failure to remedy them contributed to the hostility of Plaintiff's workplace, and strained his relations with the medical staff leadership at KMC.

The court should deny Defendant's Motion *in limine* No. 3.

**4. Opposition to Motion To Exclude Evidence of Misconduct by any Other Physician at Kern Medical Center**

Plaintiff contends that evidence of misconduct by other core physicians at KMC, including other Chairs of Departments, is probative to show the kind of misconduct that the medical staff leadership tolerated. See, e.g., *Gates* v. *Caterpillar, Inc.,* (7'h Cir. 2008) 513 F.3d 4 680,690-691; *Harris* v. *Chand* (8th Cir. 2007) 506 F.3d 1135, 1140-1141.

Drs. Royce Johnson and Leonard Perez are comparators because they are Chairs of a Department at KMC, and so had the same supervisor as Dr. Jadwin when he was a Chair, and were subject to the same policies and practices that governed Dr. Jadwin's employment when he was Chair of Pathology at KMC from 10/00 to 7/10/06. Consequently, Dr. Johnson and Perez are comparators.

Drs. Abraham, Taylor, and Mansour were "core physicians" at KMC and so under the

supervision of the CMO and CEO at KMC, and were subject to the same policies and practices that governed Dr. Jadwin's employment when he was a core physician at KMC from 7/10/06 onward.

Consequently, Dr. Abraham, Taylor, and Mansour are comparators.

Despite the fact that these comparators engaged in "behavior" far worse that Dr. Jadwin is accused of, they were not accused of or disciplined for eroding "the collegiality and teamwork essential to effective hospital operation." Because they were not disabled and were not taking medical leaves, they were not demoted, placed on administrative leave, nor did they have their contracts not renewed. Plaintiff is entitled to show this direct evidence of disparate treatment due to disability and medical leaves.

The Court should deny Defendant's motion *in limine* No. 4.

**5. Opposition to Motion to Prohibit Evidence From Witnesses Who Were not Disclosed in Discovery**

Defendant seeks exclusion of testimony from the following witnesses on the grounds that Plaintiff never disclosed the names of many witnesses he has listed on his witness list.

> "The following people, listed on Plaintiffs list of witnesses, are unknown to the County: Dennis Arquette, Edward Arsura, Sundee Baker, Patricia Bishop, Raza Bokhari, Dr. Michael Cann, Dr. Christopher Charbonnet, Charles Clayton, Michael Corder, Dr. Michael Costa, Amy Daniels, Dr. Timothy Dutra, Dr. Margaret England, Dr. Vincent Fortanasce, Beverly Gambrell, Deidre Ganople, Dr. Stacy Garry, Diana Hedges, Dr. Sharon Hirshowitz, Chuck Jadwin, Dr. Cecilia Kaesler, 1shaan Kalha, Albert Kapstrom, Dr. Sandy Kolb, Geoffrey Lang, Dr. Martin Lipschulz, Dr. Dennis Maceri, Kay Madden, James Malouf, Kenneth Madey, Robert McCord, Carolyn Mell, Dr. William Meyers, Alan Morrill, Dr. Stephen Owens, Paul Palmeri, Rosemarie Savino, Frances Shambaugh, Dr. Milan Stevanovic, Dr. Reda Tadros, Dr. Paul Toffel, Ken Van Dusen, Elise Walker, Dr. Robert Watkins, Dr. Tom Wheeler, Linda Wilkinson, and Edric Willes."

First, Plaintiff requests judicial notice that the only witnesses in the above list that are on Plaintiff's witness list are Dennis Arquette, Stacy Garry, and Alan Morrill.

Second, Plaintiff had no duty to disclose impeachment or rebuttal witnesses pursuant to Rule 26. Several of the witnesses named were impeachment or rebuttal witnesses.

Third, Plaintiff requests judicial notice that he did disclose Dennis Arquette, Alan Morrill, and the other named witnesses in his Rule 26 initial disclosures. Stacy Garry was not included in Plaintiff's initial disclosure because she did not become involved in this case until several months after Plaintiff issued his initial disclosures. Plaintiff did not learn of the significance of her involvement until after

discovery was closed, and only during depositions that had been delayed by Defendant until after the close of discovery.

Fourth, Defendant conducted absolutely no written discovery in this action; and had they done so they would have learned of these potential witnesses. Defendant therefore has no grounds for complaining that any of these witnesses are "unknown to the County" due to their own deficient discovery efforts.

Fifth, Defendant's assertion that these witnesses are "unknown to the County" is unworthy of credence since many of these witnesses, including Arquette, Morrill and Gary, formerly worked at KMC either as employees or independent contractors. For example, Dr. Sandy Kolb not only worked as an internist at KMC, but she was also married to Marvin Kolb, who was Chief Medical Officer of KMC at the time of Dr. Jadwin's hire until September of 2004. [Defendant's Response to Interrogatory No. 11 at 9:21].

The Court should deny Defendant's motion *in limine* No. 5.

**6. Opposition to Motion To Exclude Evidence of Whistleblowing or Retaliation for Whistleblowing**

In the interests of efficiency and brevity, Plaintiff incorporates by reference the points and authorities set forth in his opposition to Defendant's Motion *in limine* No. 2.

Plaintiff opposes this motion to the extent that is would exclude all evidence of Plaintiff's whistleblowing "…if offered to establish liability." (Doc. 323 at 5:27-28). Plaintiff has no intention of offering such evidence to establish "whistleblower liability". (Doc 311 at page 34). However, Plaintiff is entitled to offer such evidence "to establish liability" for his CFRA/FMLA and FEHA claims.

Defendant's response to Interrogatory No. 3 makes clear that Defendant intends to use evidence of Plaintiff's "whistleblowing" to support its averment that Plaintiff's behavior eroded "the collegiality and teamwork essential to effective hospital operation." Given Defendant intent to use such evidence to establish a purported "legitimate" reason for taking the adverse actions against Plaintiff, it is hypocritical of them to contend Plaintiff should not be permitted to introduce rebuttal evidence showing that such reasons are not "legitimate" (i.e., lawful) ones.

A limiting jury instruction is not necessary because the jury will be given only verdict forms for

1  Plaintiff's CFRA/FMLA, FEHA and Due Process claims to fill out. Consequently, there is no danger of
2  the jury using such evidence to consider Defendant's liability for whistleblower retaliation.
3      The Court should deny Defendant's motion *in limine* No. 6

**7. Opposition to Motion to Exclude Evidence of any "Disability" other than Depression**

Defendant concedes that Plaintiff has placed his disabling chronic depression at issue. However, Plaintiff has also placed his physical disability (nasal surgery, broken foot, and avulsed ankle ligament and resulting limitations) at issue. [Doc. 241 at ¶¶91-92, 21:2-7, Doc 328 at 36:13-19]. Expert testimony is not required to establish a disability. [*Head v. Glacier Northwest, Inc*. (9th Cir. 2005) 413 F.3d 1053]. So the fact that Plaintiff did not designate an expert regarding his physical limitations is irrelevant.

Aggregation of protected characteristics is permitted in discrimination suits. [*Hicks v. Gates Rubber Co.* (10th Cir. 1987) 883 F.2d 1406, 1416 (court may aggregate evidence of racial hostility and sexual hostility in determining the pervasiveness of harassment)]. So, Plaintiff may allege disability based on various physical and mental conditions that are sufficiently limiting in the aggregate. Here, Plaintiff did not require accommodation of the limitations imposed by his physical conditions because Defendant had forced him out onto full time leave during the relevant timeframe.

The Court should deny Defendant's motion *in limine* No. 7.

**8. Opposition to Motion to Exclude Videotape Depositions Prepared by Plaintiff's Counsel**

In early 2007, Mr. Lee and Mr. Wasser, counsel for Defendant, had negotiated and discussed a stipulation to permit the parties to "videotape and/or audio record depositions, and the video camera may be operated by the attorneys or their employees". (Joint Scheduling Report, Doc. 26, 11:1-2). That stipulation is memorialized in the the Joint Scheduling Report filed on May 21, 2007, of which Plaintiff seeks judicial notice.

Prior to the filing of their Pre Trial Statement on April 17, 2009 (Doc. 315), the County never objected to the use of lawyer-prepared deposition videos at trial. Their decision to wait until less than one month before trial has prejudiced Plaintiff, who has already expended significant resources preparing these videos for trial.

Until the Pretrial Settlement Conference, Defendant did not request copies of the deposition videos, despite Plaintiff's repeated offers to produce them. On April 13, 2009, Plaintiff had informed

1  Defendant that he was processing the deposition videos and that some of them were already available if
2  Defendant wished to have copies. Defendant never responded. [See, Lee Decl. at ¶¶ 5 & 6, Exhibit 1,
3  Email from Eugene Lee to Mark Wasser of 4/12/09]. On April 14, 2009, Plaintiff spoke by phone with
4  Defendant and mentioned again that the deposition videos were available for Defendant should he desire
5  any copies. Defendant did not express any wish to obtain any copies. [Lee Decl. at ¶ 7]. On April 20,
6  2009, at the pretrial conference, Defendant for the first time requested copies of all deposition videos
7  from Plaintiff, doing so verbally before Judge Wanger. [Lee Decl. at ¶ 8]. As soon as possible, Plaintiff
8  took steps to provide the requested deposition transcripts to Mr. Wasser. On April 22, 2009, Plaintiff
9  burned deposition videos to 6 DVD discs and immediately sent them via overnight express to
10 Defendant. [Lee Decl. at ¶ 9]. On April 23, 2009, Plaintiff sent an email to Defendant informing him
11 that the first installment of deposition videos was on the way and that a second installment was coming
12 shortly. [Lee Decl. at ¶¶10 & 11, Exhibit 2, Email from Eugene Lee to Mark Wasser of 4/23/09]. Later
13 that same day, Plaintiff sent an email to Defendant informing him that he would send 4 more DVD discs
14 of deposition videos to him via overnight express. [Lee Decl. at ¶ 12].

15  The evidence shows that Plaintiff delivered all of the deposition videos to Defendant, and did so
16 *gratis,* never requesting reimbursement of any associated expenses. [Lee Decl. at ¶ 14]

17  Defendant contends, "There is no table of contents". (Doc. 323, 6:13). That is incorrect.
18 Plaintiff's email included a complete inventory of the files contained on all of the DVDs which Plaintiff
19 had sent to Defendant. The inventory used a file-naming convention of "[last name of deponent][first
20 initial of first name of deponent] [day #] [session]. [Lee Decl. at ¶¶ 12 & 13; Email from Eugene Lee to
21 Mark Wasser, of 4/23/09].

22  Defendant contends there is "no indication of when the videos were prepared". (Doc. 323, 6:13-
23 14). That is not true. Each file is a Windows OS file, containing metadata entitled "Date modified",
24 which automatically specifies the exact time the video was prepared. That metadata is automatically
25 displayed in the Windows Explorer folder window. [Lee Decl. at ¶ 15]

26  Defendant contends "There is no indication of which depositions are on which disks". (Doc. 323,
27 6:15). However, the videos were burned to the 10 DVDs in alphabetical order. Defendant fails to point
28 to any authority that Plaintiff is required to provide this information. Plaintiff is unaware that he ever

1 had a duty to specify which depositions were on each disk, given Defendant can easily ascertain that for
2 itself. [Lee Decl. at ¶ 16]

3 Defendant complains: "There is no indication of how many depositions are on individual disks".
4 (Doc. 323, 6:15). Defendant fails to point to any authority that Plaintiff is required to provide this
5 information. Plaintiff is unaware that he ever had a duty to count the number of depositions on each
6 disk, given Defendant can easily ascertain that for itself. [Lee Decl. at ¶ 17]

7 Defendant complains: "There is no certification or attestation the videos are complete or accurate
8 depictions of the depositions they purport to record." (Doc. 323, 6:15-17). All of the depositions were
9 recorded stenographically and oaths administered by a certified court reporter. Defendant is in
10 possession of certified copies of all of the deposition transcripts. The deposition officer for purposes of
11 the FRCP was at all times the certified court reporter, not Eugene Lee. Defendant fails to point to any
12 authority that Plaintiff is required to provide any additional certification or attestation. Plaintiff is
13 unaware that he ever had a duty to provide this certification or attestation under the FRCP. Moreover,
14 Plaintiff himself never received any such certification when ordering and receiving copies of the
15 deposition videos taken by Defendant's retained videographers, including those taken of Plaintiff's
16 deposition. [Lee Decl. at ¶ 18].

17 The evidence establishes that Defendant waived any right to object to Plaintiff's attorney
18 videotaping the depositions. The evidence further establishes that Plaintiff has taken all necessary steps
19 and more to provide Defendant with the deposition videos as soon as possible after it requested copies
20 for the first time at the pretrial conference. Consequently, Defendant has no grounds to move to preclude
21 Plaintiff from using the deposition videos at trial.

22 Plaintiff relied on Defendant's stipulation that Plaintiff's counsel could videotape the
23 depositions, and will be substantially prejudiced if the Court precludes Plaintiff from using extracts from
24 these videotaped depositions at trial. Plaintiff planned to use extracts from the videotaped depositions of
25 witnesses who reside more than 100 miles from this Court, and budgeted accordingly. Plaintiff would be
26 substantially prejudiced in having to subpoena all these witnesses to appear at trial at this late date on
27 such short notice.

28 The Court should deny Defendant's motion *in limine* No. 8

USDC, ED Case No. 1:07-cv-00026 OWW TAG
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTIONS *IN LIMINE* NOs. 1-13                    13

**9. Opposition to Motion to Exclude Reference to Abandoned/Dismissed Claims/Parties.**

Plaintiff does not oppose Defendant's request that "Plaintiff should not be allowed to reference these abandoned claims and should not be allowed to suggest liability against these defendants", to the extent this exclusion applies equally to all parties, their attorneys, and all witnesses with regard to abandoned and/or dismissed claims and/or parties.

Plaintiff does not see why the Court should be put to the trouble of dismissing Plaintiffs abandoned claims and the individual defendants by a separate order. These claims and parties have already been disposed of by operation of law in that the Second Amended Complaint does not include these claims or parties, and supersedes all other complaints. They do not appear in the Pretrial Order, which supersedes and takes the place of all prior pleadings.

The Court should deny Defendant's motion *in limine* No. 9.

**10. Opposition to Motion To Exclude Plaintiff's Exhibits of Documents Bates-stamped DFJ02633-DFJ02948**

Defendant asserts that documents Bates-stamped DFJ02633-DFJ02948 should be excluded because Plaintiff failed to provide it with a copy of these documents.

These documents were documents that Plaintiff planned to use as impeachments and/or rebuttal documents, and so were not subject to disclosure under Rule 26. Plaintiff learned for the first time of the requirement to produce impeachment/rebuttal documents and witnesses to Defendant at the pretrial conference.

Moreover, specifically with regard to the exhibits starting at Bates numbers DFJ02816 and DFJ02818, Plaintiff's expert Dr. Weiss's deposition testimony confirms that Plaintiff produced these documents relating to the investigation of Plaintiff's complaints to the Department of Health to Defendant at the time of his deposition. In fact, defense counsel cross-examined Dr. Weiss on the contents of these documents. [Weiss Depo. at 46:8-47:22; 150:21-152:3]. Plaintiff had intended to use these documents to impeach the testimony of numerous witnesses who were making contrary claims regarding the PCC problem at KMC.

The Court should deny Defendant's motion *in limine* No. 10

**11. Opposition to Motion to Exclude Evidence of Litigation Between Dr. Rebecca Rivera and the County.**

Defendant has placed Plaintiff's behavior at issue through its Fifth Affirmative Defense. Consequently, Plaintiff should be permitted to include evidence of the kind of behavior that is tolerated at KMC. Dr. Rivera's litigation involved numerous documents evidencing the egregious "behavior" of comparator Dr. Joseph Mansour and others at KMC. Defendant should not be permitted to bludgeon Plaintiff with evidence of his "behavior" while barring evidence of far worse "behavior" by comparators.

### 12. Opposition to Motion to Exclude Evidence of an Investigation of Dr. Roy by the Medical Board of California.

While Plaintiff agrees that the investigation of Dr. Roy's conduct by the Medical Board of California involves allegations of an improper relationship with **two** of his patients, the investigation also contained preliminary findings regarding Dr. Roy's truthfulness and untruthfulness as a witness. Consequently, this evidence may be relevant and admissible because it pertains to the truthfulness or untruthfulness of Dr. Roy as a witness. The Medical Board is considering its final ruling on May 8, 2009, so the Court should delay its finding on this motion *in limine* until the Board has issued its final order.

Moreover, it is hypocritical of Defendant to seek to preclude this evidence when they seek to introduce similar evidence of accusations against Plaintiff, such as Dr. Elsa Ang's allegations of Dr. Jadwin's fraud and incompetence which were later conclusively proven unfounded, Dr. Ragland's allegations of Dr. Jadwin's fraud in doctoring FNA reports, which he later admitted he had absolutely no evidence of in deposition, etc.

### 13. Opposition to Motion To Limit Damages for Back Pay

The County requested that the Court limit any award for back pay under 42 U.S.C. §1983 from being calculated beyond October 4, 2007 on the grounds that Dr. Jadwin's entitlement to professional fees ended on the expiration of his contract.

First, all damages are available to Plaintiff under Cal. Govt. C. 12926(b). 2 CCR 7286.9. See also *Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 132 ("We have held 'that, in a civil action under the FEHA, all relief generally available in noncontractual actions . . . may be obtained.' This includes injunctive relief.")(internal citations omitted*.); Bihun v. AT&T Information*

*Systems, Inc.,* 13 Cal. App. 4th 976 (Cal. App. 2d Dist. 1993) (front pay is a permitted remedy for FEHA violations and does not need to be substantiated by expert testimony); Ca*ssino v. Reichold Chemicals, Inc*., 817 F.2d 1338. (9th Cir. 1987).

Plaintiff is also entitled to back pay, front pay, liquidated damages and compensatory damages on his FMLA claim. 29 USC 2617(a)(1)(A)(iii); *Bachelder v. Am. W. Airlines, Inc*., 259 F.3d 1112, 1130 (9th Cir. Ariz. 2001).

Second, Defendant's argument presupposes that even if Defendant had afforded Plaintiff the due process to which he was entitled, Defendant County would still have refused to renew his employment contract.

RESPECTFULLY SUBMITTED on May 6, 2009.

                          LAW OFFICE OF EUGENE LEE

                    By: _____/s/ Eugene D. Lee_____
                                 Eugene D. Lee
                        Attorney for Plaintiff DAVID F. JADWIN
                        555 West Fifth Street, Suite 3100
                        Los Angeles, CA 90013