1   LAW OFFICE OF EUGENE LEE
    Eugene D. Lee (SB#: 236812)
2   555 West Fifth Street, Suite 3100
    Los Angeles, CA 90013
3   Phone: (213) 992-3299
    Fax: (213) 596-0487
4   email: elee@LOEL.com

5   Joan Herrington, SB# 178988
    BAY AREA EMPLOYMENT LAW OFFICE
6   5032 Woodminster Lane
    Oakland, CA 94602-2614
7   Telephone: (510) 530-4078
    Facsimile: (510) 530-4725
8   Email: jh@baelo.com
    Of Counsel to LAW OFFICE OF EUGENE LEE
9
    Attorneys for Plaintiff
10  DAVID F. JADWIN, D.O.

11                    UNITED STATES DISTRICT COURT

12                    EASTERN DISTRICT OF CALIFORNIA

13

14  **DAVID F. JADWIN, D.O.,**          Civil Action No. 1:07-cv-00026 OWW DLB

15              Plaintiff,              **PLAINTIFF'S CLOSING BRIEF**

16       v.                            Trial:  May 14, 2009

17  **COUNTY OF KERN,**                 Complaint Filed:  January 6, 2007

18              Defendants.

19

20

21

22

23

24

25

26

27

28

Plaintiff hereby submits this closing brief, including legal positions, findings of fact and conclusions of law, pursuant to the Court's order of June 5, 2009 (Doc. 385).

## I. PROCEDURAL DUE PROCESS CLAIM.

### A. Issues

As established by the parties, the issues to be determined at this time are:

1) Whether Plaintiff had a constitutionally protectable interest in active duty (or avoiding placement on administrative leave).

2) Whether Defendant Kern County provided Plaintiff with adequate procedural due process when placing Plaintiff on administrative leave.

### B. Plaintiff's Legal Position

Plaintiff contends that he had a constitutionally protectable interest in active duty and avoiding placement on administrative leave. Defendant Kern County's decision to place Plaintiff on administrative leave on December 7, 2006 denied Plaintiff the opportunity to earn per-patient professional fees, which had historically amounted to over $134,987 per year since 2002. Plaintiff's contract of November 12, 2002 expressly provided that Plaintiff would earn professional fees as a material part of his total compensation.

Plaintiff contends that Defendant Kern County gave Plaintiff no procedural due process whatsoever, whether pre- or post-deprivation.

### C. Plaintiff's Proposed Findings of Fact

1) Plaintiff's contract of November 12, 2002 ("Employment Contract") expressly provided that Plaintiff would earn professional fees as a material part of his total compensation by Defendant. Trial Exhibit 139.002 (Agreement for Professional Services of David F. Jadwin, dated 11/12/02) provides:

> Total compensation for Core Physicians will be composed of a base salary paid by the County, **professional fee payments from third-party payors**, and potential other income generated due to the individual's status as a physician. These three sources of income shall be referred to in this Agreement as total Core Physician compensation [emphasis added].

The Employment Contract goes on to devote an entire page to discussion of "Professional Fees", from Exh. 139.004 to 139.005.

2)      Plaintiff's contract was amended on October 3, 2006, to institute a base pay reduction in accordance with his removal from chairmanship. See Exh. 283. The amendment did not change the fixed term of the contract, which was to expire on October 4, 2007.

3)      Plaintiff's professional fee compensation had historically amounted to $134,987 per year since 2002. Both Plaintiff and Plaintiff's forensic economist, Stephanie Rizzardi, testified at trial that this was the case. See Exh. 451.3 (Rizzardi Calculation of Economic Losses). Defendant put on no evidence disputing this fact.

4)      Then-Interim-CEO David Culberson decided to place Plaintiff on administrative leave, effective December 7, 2006. Mr. Culberson testified at trial that this was the case. Defendant never disputed this fact.

5)      During the administrative leave, Plaintiff was prohibited from going to the hospital or contacting any hospital employees. See Exh. 317.001 (Culberson Letter to Plaintiff, dated 12/7/06 re administrative leave). Plaintiff testified at trial that he complied fully with this prohibition.

6)      In order to earn professional fees, Plaintiff needed to be physically present at the hospital. Defendant never disputed this fact.

7)      Placement on administrative leave deprived Plaintiff of $116,501 in professional fees. Both Plaintiff and Plaintiff's forensic economist, Stephanie Rizzardi, testified at trial that this was the case. See Exh. 451.3 (Rizzardi Calculation of Economic Losses). Defendant put on no evidence disputing this fact.

8)      In placing Plaintiff on administrative leave, Defendant relied specifically upon the "Kern County Policies and Administrative Procedures Manual" (Exh. 501) ("Manual"), a County-ratified policy. See Exh. 317.001 (Culberson Letter to Plaintiff, dated 12/7/06 re administrative leave).

9)      Plaintiff's Employment Contract specified that he was subject to "all applicable KMC and County policies and procedures", such as the Manual. See Exh. 139.014.

10)     Section 124.3 of the Manual provided that Plaintiff could be placed on paid administrative leave with pay under certain specified circumstances including when "the department head determines that the employee is engaged in conduct posing a danger to County property, the public or other employees, or the continued presence of the employee at the work site will hinder an

1  investigation of the employee's alleged misconduct or will severely disrupt the business of the

2  department." See Exh. 104.001.

3       11)    No provision of Plaintiff's employment contract granted the County the right to place

4  Plaintiff on administrative leave.

5       12)    Plaintiff was never informed of the nature of the charges against him leading to his being

6  placed on administrative leave, before or after being placed on such administrative leave. Plaintiff

7  testified at trial that this was the case, and that it was only during discovery in this action that he finally

8  learned of the alleged reasons why he was placed on administrative leave. In the letter placing Plaintiff

9  on administrative leave, Mr. Culberson stated only that he was being placed on administrative leave

10 "pending resolution of a personnel matter". See Exh. 317.001 (Culberson Letter to Plaintiff, dated

11 12/7/06 re administrative leave).P Defendant's witness, Philip Dutt, seemed to suggest at trial that Exh.

12 307.001 (Email from Dutt to Plaintiff, dated 12/7/06) provided such notice; however, Dr. Dutt also

13 testified at trial that when he subsequently sent Plaintiff an email taking him off call for the weekend

14 (Exh. 316.001), he had no knowledge that Mr. Culberson had placed Plaintiff on administrative leave,

15 nor any specific knowledge that administrative leave was even being considered by Mr. Culberson.

16      13)    Plaintiff was never provided with a hearing, or notice thereof, before or after being placed

17 on administrative leave. Plaintiff testified at trial that this was the case, and that it was only during

18 discovery in this action that he finally learned of the alleged reasons why he was placed on

19 administrative leave. Defendant put on no evidence disputing this fact.

20      14)    Plaintiff was never provided an opportunity to respond to the charges against him, before

21 or after being placed on administrative leave. Plaintiff testified at trial that this was the case, and that it

22 was only during discovery in this action that he finally learned of the alleged reasons why he was placed

23 on administrative leave. Defendant put on no evidence disputing this fact.

24    **D. Plaintiff's Proposed Legal Conclusions**

25    **1.  Whether Plaintiff had a constitutionally protectable interest in active duty (or avoiding placement on administrative leave)**

26      To have a viable claim then, Plaintiff must demonstrate that his property interest in continued

27 employment included a property right in "active duty," *Deen v. Darosa*, 414 F.3d 731, 734 (7th Cir.

28

1   2005), or, as the Ninth Circuit has suggested, a "property interest in avoiding placement on

2   administrative leave with pay." *Qualls v. Cook*, 245 F. App'x 624, 625 (9th Cir. 2007).

3       The limitations on placing an employee on administrative leave contained in the Manual (and the

4   Employment Contract's silence on the topic) significantly constrained the County's authority, thus

5   establishing a claim that Plaintiff's property right in continued employment included a property right in

6   active duty.

7       Moreover, given that his contract expressly provided that he could earn professional fees and that

8   his fees would be a part of his total compensation, both Plaintiff and the County certainly envisioned

9   that Plaintiff would be in a position to earn professional fees so that Plaintiff could obtain the fruits of

10  his bargain.

11      Given Plaintiff's history of professional fee earnings, it cannot be said that his loss of potential

12  professional fees is *de minimis* harm.

13      By specifying the grounds on which Plaintiff could be placed on paid administrative leave, and

14  by not contractually providing for any other right to place Plaintiff on paid administrative leave, the

15  County implicitly limited its authority to place Plaintiff on paid leave to the specific reasons. See

16  *Sanchez v. City of Santa Ana*, 915 F.2d 424, 429 (9th Cir. 1990).

17      The Supreme Court has not decided whether procedural due process protections extend to

18  employee discipline short of termination. *See Gilbert v. Homar*, 520 U.S. 924, 928-29. However, the 9th

19  Circuit has suggested that they extend to situations in which an employee with a protected interest in

20  continued employment is suspended with pay. See *Qualls v. Cook*, 245 Fed. Appx. 624, 626 (9th Cir.

21  Nev. 2007) (citing *Peacock v. Bd. of Regents of Univ. and State Coll.*, 510 F.2d 1324, 1326-30 (9th Cir.

22  1975)). In both *Qualls* and *Peacock*, because the plaintiff continued to be paid during the administrative

23  leave, the court adjudged the plaintiff's property interest in active duty to be "very little, if any". *Qualls*,

24  245 Fed. Appx. At 626. In contrast, Plaintiff's placement on administrative leave caused him to lose

25  more than $100,000 in professional fees, a far more substantial economic injury than was clearly the

26  case in *Qualls* and *Peacock*. Given the 9th Circuit found a property interest in active duty in *Peacock* and

27  *Qualls*, there should be no question that Plaintiff had a property interest in active duty in the instant case.

28      There is some California authority that a physician who is employed under a fixed term contract

with a County and who is acting lawfully and complying with the terms of his contract cannot be prevented "from performing the duties incumbent on him" for arbitrary reasons. *Grindley v. Santa Cruz County*, 4 P. 390, 393 (Cal. 1884). While ancient and in no way dispositive, this case lends support to the position that, by having a fixed term contract with the County with a general property right in continued employment, Plaintiff may have had a concomitant property right in active duty during the term of his employment.

**2. Whether Defendant Kern County provided Plaintiff with adequate procedural due process when placing Plaintiff on administrative leave**

Defendant provided Plaintiff with no due process whatsoever, much less adequate due process, before or after placing him on administrative leave on December 7, 2006.

**E. Conclusion Re Due Process Claim**

Based on the foregoing, Plaintiff respectfully requests that the Court find Defendant Kern County liable in the amount of $116,501, pursuant to 42 U.S.C. 1983, for depriving Plaintiff of property without adequate due process in connection with his placement on administrative leave on December 7, 2006.

## II.    MEDICAL LEAVE INTERFERENCE CLAIM

### A. Issues

1)  Whether Defendant forced Plaintiff to take more medical leave than was medically necessary.

2)  Whether Defendant improperly designated some of Plaintiff's medical leave as "Personal Necessity Leave" by miscalculating the number of hours of medical leave to which Plaintiff was entitled, including penalties for Defendant's failure to provide Plaintiff with notice of designation of the extension of his leave as medical leave, and a written guarantee of reinstatement.

### B. Plaintiff's Legal Position

Plaintiff contends that Defendant denied him his request for reduced work schedule medical leave by forcing him to take more leave that was medical necessary by converting his reduced work schedule leave into full-time leave on April 28, 2006.  Plaintiff also contends that Defendant interfered

with his right to medical leave by miscalculating the number of hours to which Plaintiff was entitled, and by failing to provide Plaintiff with notice of designation of the extension of his leave as medical leave, and a written guarantee of reinstatement.

## C. Plaintiff's Proposed Findings of Fact

1) It is undisputed that Plaintiff exhausted all of his administrative remedies.

2) It is undisputed that Plaintiff was eligible for medical leave as of December 16, 2005.

3) Plaintiff had medical leave available to him at the time that he applied for an extension of his medical leave.

4) Defendant's then Director of Human Resources (Sandra Chester) testified that, under the circumstances, Plaintiff provided adequate notice of both his need for medical leave and his need for an extension of his medical leave.

5) Plaintiff needed to take medical leave for his own serious health condition (chronic depression).

6) It is undisputed that chronic depression is a serious health condition.

7) Dr. Riskin's certifications establish that Plaintiff had a medical need that was best accommodated through a reduced work schedule leave.

8) Defendant's then Director of Human Resources (Sandra Chester) testified that both of Plaintiff's certifications for his need for a reduced work schedule leave were adequate.

9) Defendant denied Plaintiff's request for an extension of his reduced work schedule medical leave.

10) Defendant interfered with Plaintiff's right to a reduced work schedule medical leave by forcing him to take more leave than was medically necessary.

11) Plaintiff was capable of working part-time from at least June 12, 2006 to June 16, 2006.

12) Parties stipulated that Plaintiff's medical leave allotment was exhausted on June 16, 2006.

13) Defendant interfered with Plaintiff's right to medical leave by miscalculating the number of hours of reduced work schedule medical leave to which Plaintiff was entitled, and failing to notify Plaintiff that his March 16 to June 16, 2006 leave was FMLA/CFRA qualifying leave

and to guarantee him reinstatement following this leave in writing.

### D. Plaintiff's Proposed Legal Conclusions

It is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a); Cal. Gov't Code § 12945.2(a); *Faust v. California Portland Cement Co.* 150 Cal. App. 4th 864, 885 (2007) (recognizing that CFRA incorporates an interference claim from FLMA); *Liu*, 347 F.3d at 1132 n.4 (recognizing that leave denial/interfence claims under the CFRA and FMLA can be analyzed together "[s]ince CFRA adopts the language of the FMLA and California state courts have held that the same standards apply.") "A violation of the FMLA simply requires that the employer deny the employee's entitlement to FMLA leave." *Liu v. Amway Corp.* (9th Cir. 2003) 347 F.3d 1125, 1135.

Here, it is undisputed that Plaintiff exhausted any and all administrative remedies, that Defendant was a covered employer, that Plaintiff was eligible for medical leave as of December 16, 2005 and had medical leave available to him on March 16, 2006 when he first applied for an extension of his medical leave, so was still eligible for medical leave. [2 C.C.R. § 7297.0(e)(1); Exh. 235, 060316 Email Jadwin-Bryan; Doc 386, Jury Instructions at 18:5-7]. Further, it is undisputed that Plaintiff still had medical leave available to him on April 28, 2006, when Defendant converted his reduced work schedule medical leave to full-time medical leave. [Doc. 369, Plaintiff's Request for Judicial Notice Nos. 8-9, 12, 16, 17, & 25 granted on the record at trial; see also Doc 386, Jury Instructions at 18:5-7; Exh. 251, 060428 Memo Bryan-Jadwin]. It is also undisputed that Plaintiff's chronic depression was a serious health condition in that his testimony, and that of Dr. Reading, that Plaintiff sought treatment from his psychiatrist once a week during his medical leave and took prescribed medication for it was uncontested. 2 C.C.R. § 7297.49(b)(2).

Sandra Chester, Defendant's then Director of Human Resources testified that Plaintiff's email to Peter Bryan on March 16, 2006 consisted sufficient notice of Plaintiff's need for an extension of his medical leave, and should have resulted in Human Resources Department sending him a FMLA/CFRA information packet, including another Request for Leave form and notice of Defendant's policy of requiring recertification of his need for an extension of his medical leave, but did not do so. [Exh. 235,

1   060316 Email Jadwin-Bryan]. Sandra Chester further testified that Plaintiff's Request for Leave dated

2   April 26, 2006 and Dr. Riskin's accompanying certification were a timely response to her letter of April

3   20, 2006. [Exh. 561, 060420 Letter Chester-Jadwin; Exh. 562 060426 Certification by Dr. Riskin; Exh.

4   563, 060426 Request for Leave].

5       Thus, Plaintiff has established all of the threshold requirements for the granting of his request for

6   an extension of his medical leave.

7   **3. Defendant Denied Plaintiff's Request for a Reduced Work Schedule Leave.**

8       "An employee may not be required to take more FMLA leave than necessary to address the

9   circumstance that precipitated the need for the leave." 29 C.F.R. § 825.203(d).

10      Both of Dr. Riskin's certifications supporting Plaintiff's requests for a reduced work schedule

11  medical leave and an extension of his reduced work schedule medical leave indicate that Plaintiff had a

12  medical need that was best accommodated through a reduced work schedule leave. 29 C.F.R. §

13  825.202(b); Exhs. 544 & 562 (Certifications). Sandra Chester (then Director of Human Resources)

14  testified that both of Plaintiff's certifications of his need for a reduced work schedule medical leave were

15  adequate.

16      Moreover, "[t]he employer should inquire further of the employee if it is necessary to have more

17  information about whether CFRA leave is being sought by the employee and obtain the necessary details

18  of the leave to be taken." *Gibbs v. American Airlines, Inc*. (1999) 74 Cal.App.4th 1, 6-7 (same); *Mora v.*

19  *Chem-Tronics, Inc*. (S.D. Cal. 1998) 16 F.Supp.2d 1192, 1209-1210 ("...courts have found that notice

20  may be sufficient when employees call employers to tell them that they or their children are sick and

21  they will be absent from work…"); *Mora v. Chem-Tronics, Inc*. (S.D. Cal. 1998) 16 F.Supp.2d 1192,

22  1209 ("Mr. Mora need not show that he expressly asserted rights under FMLA or even mentioned

23  FMLA, but that he stated leave was needed. If further information was needed to determine whether the

24  leave requested qualified under the FMLA, it was Chem-Tronic's responsibility to inquire further of Mr.

25  Mora for that information.")

26      Further, Defendant is estopped from arguing that it was entitled to deny Plaintiff's request for a

27  reduced work schedule medical leave because his certifications of his need for a reduced work schedule

28  medical leave were ambiguous and confusing.

29 <u>CFR</u> § 825.301(f) provides:

"(f) If an employer fails to provide notice in accordance with the provisions of this section, the employer may not take action against an employee for failure to comply with any provision required to be set forth in the notice."

2 C.C.R. § 7297.4(a) (5) similarly provides:

An employer shall give its employees reasonable advance notice of any notice requirements which it adopts. The employer may incorporate its notice requirements in the general notice requirements in section 7297.9 and such incorporation shall constitute "reasonable advance notice." Failure of the employer to give or post such notice shall preclude the employer from taking any adverse action against the employee, including denying CFRA leave, for failing to furnish the employer with advance notice of a need to take CFRA leave.

Accordingly, since Defendant failed properly notify Plaintiff that he must provide additional medical verification to support his leave request (and the consequences for failing to provide it), Defendant cannot now argue that Plaintiff was not entitled to leave because of confusing or inadequate medical documentation. This rational conclusion is supported by the federal decision in *Sims. v. Alameda-Contra Costa Transit District*, (N.D. California 1998) 2 F.Supp.2d 1253.

In this case, Mr. Sims, a bus driver, was fired for excessive absenteeism. He believed that some of the absences counted against him were because of his bad back, which he felt was a serious health condition under both the CFRA and the FMLA. *Id.* at 1256. In support of his leave request, Mr. Sims had submitted various documents from doctors and a chiropractor. AC Transit argued that a portion of Mr. Sims absences were not FMLA-qualified because he went to a chiropractor who did not meet the definition of a "health care provider" under the FMLA. *Id.* at 1265-1266. (It is important to note that AC Transit was correct! The chiropractor Mr. Sims visited did not perform a "manual manipulation of the spine to correct a sublaxation as demonstrated by X-ray to exist", the specific procedure required to qualify the chiropractor as a "health care provider" under the FMLA. *Id.*)

However, applying 29 CFR § 825.301(f), the court held that AC Transit could not argue the insufficiency of the chiropractor visits because AC Transit had not first met its notice requirements. Specifically the court stated:

"AC Transit concedes that it never informed Sims that his certification was inadequate in any way. It had an obligation, however, to do so. Nor did AC Transit ever notify Sims in writing that he had to provide medical certification in this particular case or of the consequences of his failing to do so. The regulations provide that '[a]n employer must

1    give written notice of a requirement for medical certification . . . in a particular case.' 29
2    CFR § 825.305(a)." *Id.* at 1266.

3    The court added, citing and approving 29 CFR § 825.301(f):

4    "'If an employer fails to provide notice in accordance with the provisions of this section,
     the employer may not take action against an employee for failure to comply with any
5    provision required to be set forth in the notice.'" *Id.* at 1266.

6    Accordingly, AC Transit could not argue that Mr. Sims did not qualify for FMLA leave.  *Id.* at
7    1266-1267.

8    The *Sims, supra*, ruling and 29 CFR § 825.301(f) make perfect sense. If an employer is

9    suspicious about an employee's leave request, the employer is permitted, upon proper written notice to

10   the employee, to seek medical certification. 2 C.C.R. § 7297.4(b); 29 C.F.R. § 825.305(a). If the

11   employer believes that the medical certification presented is suspect, the employer is permitted to

12   request clarification and authentication or a second opinion. 2 C.C.R. § 7297.4(b)(2)(A); 29 C.F.R. §

13   825.307(a).  Renita Nunn testified that none of this happened in the case.  Plaintiff never submitted

14   additional medical verification of his need for a reduced work schedule medical leave because

15   Defendant never informed him that he needed to do so. Thus, Defendant is estopped from arguing, in the

16   throes of litigation, that Plaintiff's leave request for a reduced work schedule medical leave fails for lack

17   of clear, unambiguous medical certification.

18   Plaintiff's failure to protest immediately Defendant's placement of him on full-time medical leave

19   is legally irrelevant.  Both federal and state law recognizes that an employee has non-negotiable rights

20   under FEHA, CFRA, and FMLA that cannot be waived by a private agreement.  *Gemini Aluminum*

21   *Corp.*, 122 Cal.App.4th at 1017 ("'California's anti-discrimination statutes ... demonstrate California's

22   intent not to allow its laws to be circumvented by private contracts.'"); see also *Jimeno v. Mobil Oil*

23   *Corp.,*, 66 F.3d 1514, 1527-1528 (9th Cir., 1995) ("The third prong of the Miller test, requiring an

24   analysis of whether the state has shown an intent not to allow its prohibition to be altered or removed by

25   private contract, also mandates a finding of no preemption in this matter...the FEHA explicitly

26   establish[es] the right to employment without discrimination as a public policy of this state...Thus, the

27   California FEHA is unlike the Missouri anti-discrimination provision which requires consideration of

28   the employer's authority under the CBA to make accommodations. [citations omitted. Therefore,

[Defendant] cannot assert that [California] is indifferent to negotiation and alteration of the right by private contract, and the answer to the third Miller question must be 'yes.'"); *Cramer v. Consolidated Freightways, Inc.* 255 F.3d 683, 696 (9th Cir., 2001) ("Because installation of two-way mirrors is immutably illegal, and freedom from the illegality is a "nonnegotiable state-law right[ ]," a court reviewing plaintiffs' claims that their privacy rights were violated need not interpret the CBA to arrive at its conclusion."]

**4.    Defendant Interfered with Plaintiff's Medical Leave Rights by Mislabeling Some of His Medical Leave as "Personal Necessity Leave.**

An employer interferes with an employee's rights under the FMLA by mislabeling an employee's leave as "personal leave" or something else when, in reality, the leave qualified as FMLA leave. *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1132 (9th Cir. 2003).

Parties had stipulated that Dr. Jadwin's medical leave balance was exhausted on June 16, 2006. [Doc 386, Jury Instructions at 18:5-7].  However, Defendant introduced evidence contrary to this stipulation when it testified by and through Renita Nunn that Plaintiff's medical leave allotment had been miscalculated through an arithmetical error, and he only had 37 hours of 480 hours of medical leave left on April 28, 2006.

In fact, Defendant also miscalculated the number of hours of leave it should have allotted to Dr. Jadwin.

"…When an employee takes leave on an intermittent or reduced work schedule, only the amount of leave actually taken may be counted toward the employee leave entitlement. The actual workweek is the basis of the entitlement... if a full-time employee who would otherwise work 8-hour days works 4-hour days under a reduced leave schedule, the employee would use "1/2" week of FMLA leave…" 29 C.F.R. § 825.205(b)(1).

Dr. Jadwin's "standard workweek" was 48 hours per week. [Exh. 267, 060710 Memo Bryan-JCC at No. 2 on 267.001]. Dr. Jadwin testified that he often worked more than 48 hours per week prior to taking medical leave.  In other words, Dr. Jadwin was entitled to **at least** 576 hours of reduced work schedule leave, not the 480 hours that Defendant allotted to him. [Exh. 267, 060710 Memo Bryan-JCC at No. 8 on 267.002].

More significantly, CFRA provides in pertinent part:

"Family care and medical leave requested pursuant to this subdivision shall not be deemed to have been granted unless the employer provides the employee, upon granting the leave request, a guarantee of employment in the same or a comparable position upon the termination of the leave." Gov't C. § 12945.2(a).

In this case, Defendant failed to issue its formal notice designating Plaintiff's leave from March 16, 2006 to June 16, 2006 as CFRA/FMLA qualifying leave, and to provide Plaintiff with a written guarantee employment upon termination of the extension of Plaintiff's medical leave.  2 C.C.R. § 7297.4(a)(1)(A) & (B); see, e.g. Exh. 229, (Designation Form of 3/2/06)].  Consequently, Plaintiff's request for an extension of his medical leave request was deemed DENIED by operation of law.   If leave is denied, it cannot be counted toward the employee's allotment for the 12 months entitlement period.

     This conclusion is consistent with 2 C.C.R. § 7297.4. Requests for CFRA Leave: Advance Notice; Certification; Employer Response:

    (a)      Advance Notice.
    (1)  Verbal Notice.
     (A) Under all circumstances, it is the employer's responsibility to designate leave, paid or unpaid, as CFRA or CFRA/FMLA qualifying, based on information provided by the employee or the employee's spokesperson, and to give notice of the designation to the employee.

    (B) Employers may not retroactively designate leave as "CFRA leave" after the employee has returned to work, except under those same circumstances provided for in FMLA and its implementing regulations for retroactively counting leave as "FMLA leave."

Further, California regulations expressly incorporated federal implementing regulations for FMLA as of 1995, at a time when its pertinent penalty provisions were still unchallenged.   [2 C.C.R. §§ 7297.0(i), 7297.10].  For example, 29 CFR 825 § 825.700(a) provides: "If an employee takes paid or unpaid leave and the employer does not designate the leave as FMLA leave, the leave taken does not count against an employee's FMLA entitlement."  The California Fair Employment and Housing Commission incorporated this regulation as helpful to implementing California's policy favoring notice to the employee of all their rights.  Federal courts deemed this penalty provision ineffective on the grounds that Congress did not authorize the extension of an employee's medical leave past 12 workweeks as a penalty for failing to designate leave as FMLA leave in a timely manner.  [*Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81 (2002)].  However, the California Legislature has **expressly**

1    authorized an extension of an employee's medical leave past 12 workweeks as a penalty for an

2    employer's failure to provide an employee a written guarantee of reinstatement, so this penalty provision

3    for failing to designate leave as CFRA leave remains unaffected by any contrary federal law.  Gov't

4    Code § 12945.2.   In other words, there is an independent state-based policy reason for continuing to

5    incorporate 825.700(a) into California's regulatory scheme notwithstanding that federal courts may

6    interpret the FMLA differently.

7            In short, Defendant is deemed to have denied Plaintiff an extension of his CFRA leave from

8    March 16 to June 16, 2006.  In addition, Defendant is prohibited from retroactively designating leave

9    already taken as CFRA leave.  2 C.C.R. § 7297.4(a)(1)(B).  In other words, from March 16, 2006 until

10   his employment contract expired on October 4, 2007, Plaintiff still had some medical leave allotment

11   available to him, and Defendant was strictly liable to Plaintiff for failing to grant it, and for labeling his

12   leave from June 14, 2006 onwards as personal necessity leave.

13           In any case, pursuant to the parties' stipulation, as of June 14, 2006, when Defendant's former

14   CEO, Peter Bryan, converted Dr. Jadwin's medical leave to personal necessity leave, Plaintiff was still

15   entitled medical leave.  [Doc 386, Jury Instructions at 18:5-7; Exh. 251, 060428 Memo Bryan-Jadwin at

16   251.013 (Rule 1202.02 re Personal Necessity Leave); Exh. 261 060613 Memo Bryan-Jadwin at ¶2].

17           Because Defendant mislabeled at least some of Dr. Jadwin's medical leave as "Personal

18   Necessity Leave", Defendant interfered with Plaintiff's medical leave rights.

19   **III.    PLAINTIFF'S ENTITLEMENT TO INJUNCTIVE RELIEF**

20           **A.  Issues**

21           **1)**   Whether Plaintiff is entitled to prospective injunctive relief in the form of an order requiring

22                  Defendant to train its staff to proficiency regarding compliance with disability rights under

23                  FEHA, and reduced work schedule leave rights and protection against retaliation under

24                  CFRA and FMLA.

25           **B.  Plaintiff's Legal Position**

26           Statutory remedies for violations of FEHA, CFRA, and FMLA include injunctive relief, and

27   expressly provides that training of staff is appropriate prospective relief.  [Gov't. C. § 12965(c).

**C. Plaintiff's Proposed Findings of Fact**

1) Defendant failed to train its staff to proficiency regarding compliance with disability rights under FEHA, and reduced work schedule leave rights and protection against retaliation under CFRA and FMLA.

2) Defendant's Director of Human Resources (Steven O'Connor), and the "person most qualified" regarding medical leave (Renita Nunn) both testified at trial that an employee was only entitled to 480 hours of medical leave.

3) Defendant's former CEO (Peter Bryan) testified at trial that he relied on Director of Human Resources (Steve O'Connor) and Chief County Counsel (Karen Barnes) to ensure that he complied with the law and Defendant's policies in placing Plaintiff on full-time leave from April 28 to October 3, 2006, and in removing Plaintiff from position as Chair of Pathology at Kern Medical Center on July 10, 2006.

4) Defendant's former CEO (Peter Bryan) demonstrated his confusion and poor training when he testified at trial that he understood that, after Plaintiff's medical leave balance and six month cumulative leave pursuant to 1201.20 was exhausted purportedly on June 16, 2006, he could protect Plaintiff's continued employment by Defendant only through a 90 day 'Personal Necessity Leave' pursuant to Rule 1202.02.

5) According to the calculations of Defendant's Human Resources Department, Dr. Jadwin's six month cumulative leave pursuant to Rule 1201. 20 was not due to be exhausted until August 24, 2006.  [Exh 267, 060710 Memo Bryan-JCC at 267.052].

6) The jury found that Defendant had violated Plaintiff's rights under FEHA by failing to engage in good faith in an interactive process, denying Plaintiff accommodation in the form of part-time work from April 28 to October 3, 2006, removing him from his position as Chair of Pathology on July 10, 2006, creating a hostile work environment, placing Plaintiff on administrative leave on December 7, 2006, and failing to renew his employment contract on October 4, 2007.

7) The jury found that Defendant had violated CFRA and FMLA by removing Plaintiff from his position as Chair of Pathology at Kern Medical Center on July 10, 2006, creating a hostile

1    work environment, placing him on administrative leave on December 7, 2006, and failing to

2    renew his employment contract on October 4, 2007.

3        8)  Defendant's policies limit the number of hours available for medical leave to 480 hours in

4    violation of 29 C.F.R. § 825.205(b)(1) and 2 C.C.R. § 7297.3.  [Exh. 251, Rule 1201.30 at

5    251.008].

6    **D.  Plaintiff's Proposed Legal Conclusions**

7    "[T]he Supreme Court has indicated that, at least when injunctive relief is sought in federal

8    courts, litigants must generally adduce a 'credible threat' of recurrent injury." *LaDuke v. Nelson*, 762

9    F.2d 1318, 1323 (9th Cir. 1985) citing *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983)].  A later Ninth

10    Circuit case found all requirements for equitable relief standing met where the district court found an

11    unconstitutional policy or practice of the defendant.  *Armstrong v. Davis*, 275 F.3d 849, 861 (9th Cir.

12    2001).  The *Armstrong* Court explained the key to showing the likelihood of recurrence for purposes of

13    standing:

14          Moreover, where, as here, a plaintiff seeks prospective injunctive relief, he must
15    demonstrate "that he is realistically threatened by a *repetition* of [the violation]."
     *Lyons, 461 U.S. at 109* (emphasis added) (holding that plaintiff cannot establish the
16    requisite type of harm simply by pointing to some past injury). We review questions of
     standing de novo. *See  Tyler v. Cuomo, 236 F.3d 1124, 1131 (9th Cir. 2000)* (citation
17    omitted). However, we will affirm standing when a district court has made "explicit"
     and "specific" findings establishing that the threatened injury is sufficiently likely to
18    occur, *LaDuke, 762 F.2d at 1323-24*; *see also  Hawkins, 251 F.3d at 1237* (citing
     *LaDuke*), unless those findings are clearly erroneous.
19

20          **There are at least two ways in which to demonstrate that such injury is likely
     to recur.** First, a plaintiff may show that the defendant had, at the time of the injury, a
21    written policy, and that the injury "stems from" that policy.  *Hawkins, 251 F.3d at
     1237*. In other words, where the harm alleged is directly traceable to a written policy,
22    *see  Gomez v. Vernon, 255 F.3d 1118, 1127 (9th Cir. 2001)*, there is an implicit
23    likelihood of its repetition in the immediate future. **Second, the plaintiff may
     demonstrate that the harm is part of a'' pattern of officially sanctioned . . .
24    behavior, violative of the plaintiffs' [federal] rights.'' *LaDuke v. Nelson, 762 F.2d
     1318, 1323 (9th Cir. 1985)***.** Id, (emphasis added).
25

26    In *Armstrong*, the district court specifically found that both the written policies and unwritten

27    practices of the defendant prison violated the rights of the disabled plaintiffs in that case.  Thus, those

28    plaintiffs had standing to seek injunctive relief, and such injunctive relief was affirmed.  275 F.3d at

861-864.

In the present case, such federalism concerns are ameliorated where state law specifically authorizes injunctive relief, and expressly finds that training of staff is appropriate prospective relief. Cal. Gov't. C. § 12965(c). Here, Plaintiff does not have to establish his right to have this court invoke general equitable relief over any remedies at law: he is specifically entitled to "injunctive relief" under the state law on which he has prevailed. Furthermore, Plaintiff's harm was traceable to Defendant's illegal policies. Moreover, the equitable relief that Plaintiff seeks will not require continuous supervision by the federal court.

Fed.R.Civ. P. 65 codified the common law doctrines of irreparable harm and lack of adequate remedy at law in injunction practice. Rule 65(b), which deals with preliminary injunctions, refers to irreparable injury. But Rule 65(d), dealing with post-trial injunctions is void of any such language. This makes good sense in that, after a trial or hearing on the merits, there is no need to show irreparable injury to obtain temporary relief pending hearing or trial.

Indeed, where employment discrimination is concerned, the rule in this jurisdiction has long been that no showing of irreparable harm is necessary even for preliminary injunctions, let alone those arising after trial on the merits. In *Middleton-Keirn v. Stone*, 655 F.2d 609, 609 (5th Cir. 1981), the court noted that irreparable injury is presumed in both public and private employment discrimination. In another case, that same court held that when an injunction is specifically authorized by statute, the court will dispense with the inquiry into irreparable harm. *Murray v. American Standard, Inc.*, 488 F.2d 529, 531 (5th Cir. 1973). In *United States v. Hayes International Corp.*, 415 F.2d 1038, 1045 (5th Cir. 1969), the court found that the usual perquisites of irreparable injury need not be independently established if unlawful employment discrimination is established.

Accordingly, in the case at hand, in the equitable remedy phase following a finding of discrimination, the Court may rely simply on the express statutory authorization of Title VII as conferring all the power necessary to order appropriate injunctive relief.

Like TVII, a primary purpose of the FEHA is to provide effective remedies that will prevent future unlawful employment practices. *Aguilar v. Avis Rent A Car* (1999) 21 Cal.4th 121, 131. One such remedy available under the FEHA is affirmative injunctive relief requiring employers to take proactive

1  steps to adhere to the equal employment opportunity laws, such as training and educating employees

2  concerning the scope of these laws and how to comply with or enforce them. *Aguilar, supra*, 21 Cal.4th

3  at 131 (FEHA plaintiff may obtain "[a]ffirmative or prospective relief to prevent the recurrence of the

4  unlawful practice"); see also *Herr v. Nestle, USA, Inc.* (2003) 109 Cal.App.4th 779, 789-790

5  ("[I]njunctive relief under the UCL is an appropriate remedy where a business has engaged in an

6  unlawful practice of discriminating against older workers.... Therefore, an employer which engages in

7  age discrimination in violation of the FEHA is subject to a prohibitory injunction under the UCL. For

8  these reasons, the trial court properly enjoined Nestle under the UCL from engaging in age

9  discrimination in violation of FEHA.").

10       Courts in California and throughout the country routinely issue injunctions such as that requested

11  here. See e.g., *DFEH v. Lactalis USA, Inc.* (2002) FEHC Dec. No. 02-15; 2002 WL 31520127, *14

12  (injunction requiring employer to train its employees and managers with respect to harassment policy

13  and "to implement a training program to inform its employees, supervisors, and managers fully of the

14  nature of the prohibited harassment, the duty of all employers, supervisor, and managers to prevent and

15  eliminate harassment in the workplace, and the procedures and remedies available under respondent's

16  anti-harassment policy and state law."); *Madera, supra*, FEHC Dec. No. 90-03; 1990 WL 312871, *32

17  (injunction requiring employer to implement training program concerning workplace harassment rules);

18  *DFEH v. Del Mar Avionics* (1985) FEHC Dec. No. 85-19; 1985 WL 62898, *24 (injunction requiring,

19  inter alia, employer to implement a proper procedure for investigating workplace harassment allegations

20  and to conduct two annual training sessions of employees); *Arnold v. City of Seminole* (E.D. Okla. 1985)

21  614 F.Supp. 853 (injunction requiring employer to refrain from harassing behavior, notify all employees

22  and supervisors of the laws concerning harassment, develop a clear and effective procedure for resolving

23  harassment complaints, and develop appropriate sanctions and punishment for harassment); *Bundy v.*

24  *Jackson* (D.C. Cir. 1981) 641 F.2d 934, 947-948 (injunction requiring employer to establish "prompt

25  and effective procedure for hearing, adjudicating, and remedying complaints of sexual harassment

26  within the agency"). This case should be no different. The evidence at trial provides multiple bases for

27  this important request for injunctive relief.

28       The equitable relief favored by established law in employment discrimination is much broader

1   than in most other areas of law.  Some of the principles governing such relief are unique or at least

2   uncommon.  Many doctrines arose at a time when the principal remedial statute, Title VII, afforded only

3   equitable relief.  Congress amended Title VII in 1991 to provide for damages within certain caps based

4   upon the number of the defendant's employees, but as the Supreme Court just made clear once again in

5   *Pollard v. E.I. du Pont de Nemours & Co.*, 2001 WL 589077 (U.S. June 4, 2001), consistently over the

6   years, despite the many twists and turns that have accompanied the liability wing of discrimination law

7   the advent of damages did not in any sense prune back the equitable relief that was previously available.

8   Most of the doctrines guiding such relief developed early on and have been applied.

9        At the remedial stage, after a finding of liability, the Court should remedy any discrimination

10  brought to its attention.  The insignificance of the injury is not a defense to relief.  This is a useful

11  corollary to the make-whole doctrine. Our court of appeals established this principle in a case in which

12  the trial court found that a discriminatory transfer of one of the plaintiffs for a short period of time was

13  de minimis and not worthy of relief.  The court of appeals reversed, stating:

14        We cannot accept this characterization.  Title VII gives us no license to decide that any
           injury, however insignificant, may be regarded as de minimis.  As appellant argues,
15        "what is small in principal is often large in principle .  *Jenkins v. United Gas Corp.*, 400
           F.2d 28, 32-33 (5th Cir. 1968)."; *Cox v. American Cast Iron Pipe Co.,* 784 F.2d 1546,
16        1561 (11th Cir. 1986).

17        Courts fashioning equitable remedies in Title VII cases have borrowed a key principle of general

18  equity law: once illegal conduct has been found, the presumption arises that injunctive relief should

19  issue unless the defendant can show strong reasons why it should not.  Most jurisprudence in this aspect

20  of discrimination law has relied upon the landmark case *United States v. W.T. Grant*, 345 U.S. 629, 633

21  (1953).  *Albemarle Paper Co. v. Moody*, 442 U.S. 405, 418 (1975) (quoted above), incorporated this

22  principle wholesale into discrimination law.

23        Not only the plaintiff's presumptive entitlement to injunctive relief, but the shifting of the burden

24  to the employer to prove by clear and convincing evidence (not just a preponderance) that the relief

25  should be denied, are well-settled in this jurisdiction.  Perhaps the most cogent expression is the

26  following:

27        Once discrimination is proved, a presumption of entitlement to back pay and individual
           injunctive relief arises.  The burden of proof then shifts to the employer to show by clear
28        and convincing evidence that [injunctive relief should be denied]. *McCormick v. Attala*

1    *County Board of Education*, 541 F.2d 1094,1095 (5th Cir. 1976) (citations omitted);

2    accord, *Lewis v. Smith*, 731 F.2d 1535, 1538 (11th Cir. 1984); *Nord v. U.S. Steel Corp.*,

     758 F.2d 1462, 1473 (11th Cir. 1985); *Joshi v. Florida State Univ. Health Ctr.,* 763 F.2d

3    1227, 1236 (11th Cir. 1985).

4         The "clear and convincing evidence" standard cannot generally be met by mere cessation of the

5    discriminatory practice.  It is abuse of discretion to deny injunctive relief on that basis: "reform timed to

6    anticipate or blunt the force of a lawsuit offers insufficient assurance that the practice sought to be

7    enjoined will not be repeated."  *NAACP v. City of Evergreen*, 693 F.2d 1367, 1370 (11th Cir. 1982)

8    (citing *United States v. W.T. Grant, supra*); accord, *EEOC v. Alton Packaging Corp.*, 901 F.2d 920, 926

9    (11th Cir. 1990).  Here, because Defendant's policies limit medical leave to 480 hours, reoccurrence of

10   the harm suffered by Plaintiff is inevitable.

11        Even systemic relief may arise from an individual case.  *Cary v. Greyhound Bus Co*., 500 F.2d

12   1372 (5th Cir. 1974) (class certification not required for individual plaintiff to obtain broad injunctive

13   relief); *Carmichael v. Birmingham Saw Works*, 738 F.2d 1126 (11th Cir. 1984) (injunctive relief may

14   benefit individuals not party to suit and class-wide relief may be appropriate in an individual action).

15   The analysis of a leading scholar in the field concludes that such treatment flows from the Supreme

16   Court's remedial jurisprudence in *Albemarle Paper Co. v. Moody*, 442 U.S. 405 (1975), and Franks *v.*

17   Bowman Transportation Co., 424 U.S. 747 (1976).  See, Robert Belton, *Remedies In Employment*

18   *Discrimination Law*, Wiley 1992, § 6.11.

19        Training for supervisors and employees in equal opportunity obligations is a commonplace

20   equitable remedy in discrimination cases.  *See e.g., Johnson v. Ryder Truck Lines, Inc.*, 11 EPD ¶ 10,692

21   at 6,900 (W.D. N.C. 1976), aff'd, 555 F.2d 1181 (4th Cir. 1977), *modified on other grounds*, 575 F.2d

22   471 (4th Cir. 1978), cert. den., 440 U.S. 979 (1979); *Sims v. Montgomery County Commission*, 766 F.

23   Supp. 1052 (M.D. Ala. 1991); *Stair v. Lehigh Valley Carpenters*, 855 F. Supp. 90 (E.D. Pa. 1994);

24   *EEOC v. Murphy Motor Freight Lines*, 488 F. Supp. 381 (D. Minn. 1980). This is a good example of an

25   area in which the relief of an individual plaintiff quite properly involves systemic reform.

26        The evidence at trial, as set forth in the proposed findings of fact, *supra*, established a need for

27   such training, and a change in Defendant's policy of restricting medical leave to 480 hours.

28        Enjoining retaliatory practices is strongly favored where there exists any substantial chance that

1  such practices will occur in the future.  *EEOC v. Cosmair, Inc.*, 821 F.2d 1085 (5th Cir. 1987).  It is also

2  necessary to give assurance to future complainants in a situation where the reasonable fear of reprisal is

3  so warranted by Defendant's retaliatory conduct towards a high profile employee such as Dr. Jadwin.

4  **IV.    MISCELLANEOUS RELIEF.**

5       When final judgment is entered herein, Plaintiff hereby requests that the following provisions be

6  included:

7       1)  The amount of economic damages awarded by the jury should be doubled on the grounds

8           that the jury found that Defendant's violations of FMLA was "willful" on both Plaintiff's

9           oppositional retaliation claim, and Plaintiff's retaliation claim for exercising his right to

10          medical leave, thus entitling Plaintiff to a mandatory award of liquidated damages.  29 USC

11          2617(a)(1)(A)(iii); *Bachelder v. Am. W. Airlines, Inc*., 259 F.3d 1112, 1130 (9th Cir. Ariz.

12          2001).

13      2)  The award of pre-judgment and post-judgment interest.  Discrimination plaintiffs are

14          presumptively entitled to pre-judgment interest on monetary recoveries. *EEOC v. Guardian*

15          *Pools, Inc*., 828 F. 2d 1507 (11th Cir. 1987).  Post-judgment interest is mandated by Congress

16          at 28 U.S.C. § 1961.  *See generally, Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494

17          U.S. 827 (1990).

18      3)  The award of costs of litigation to Plaintiff as the prevailing party, according to proof per

19          Plaintiff's Bill of Costs due to be filed by June 27, 2009.

20      4)  The award of attorney's fees to Plaintiff pursuant to Section 12965 of the Government Code

21          [FEHA/CFRA], 29 U.S.C. § 2617(a)(3) [FMLA], and if Plaintiff prevails on his due process

22          claim, 42 U.S.C. § 1988 according to proof pursuant to Plaintiff's Application for attorney's

23          fees due to be filed (presumably) by July 10, 2009.

24

25       RESPECTFULLY SUBMITTED on June 19, 2009.

26

27                          By:    _____/s/ Joan Herrington_____
                                   Attorney for Plaintiff DAVID F. JADWIN

28