**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **DAVID F. JADWIN, D.O.,** | **1:07-CV-00026-OWW-DLB** |
| **Plaintiff,** | **FINDINGS OF FACT AND CONCLUSIONS OF LAW** |
| **v.** | |
| **COUNTY OF KERN,** | |
| **Defendant.** | |

### I.   INTRODUCTION

This matter is before the court pursuant to the parties' stipulation to submit certain claims asserted by Plaintiff David F. Jadwin, D.O. ("Plaintiff") to the court for decision, each party having voluntarily waived trial by jury. The other claims asserted by Plaintiff were tried to and decided by a jury.

The jury returned verdicts, entered on June 8, 2009, in favor of Plaintiff. (Doc. 384) The jury found that Defendant County of Kern ("County"): (1) retaliated against Plaintiff for engaging in certain activities in violation of the Family and Medical Leave Act ("FMLA") and the California Fair Employment and Housing Act ("FEHA"); (2) retaliated against Plaintiff for taking medical leave under the FMLA and the California Family Rights Act ("CFRA"); (3) discriminated against Plaintiff on the basis of his mental disability in violation of the FEHA; (4) failed to reasonably accommodate Plaintiff's mental disability in violation of the FEHA; and (5) failed to engage in an interactive process with Plaintiff in violation of the FEHA. The jury found against the County on its defense that Plaintiff's employment contract was not renewed by

reason of his conduct and alleged violation of the employer's rules and contract requirements and/or that Plaintiff's behavior was the cause of the nonrenewal of his contract.

The jury awarded damages as follows:

| | |
|---|---|
| Mental and emotional distress and suffering. | $0.00 |
| Reasonable value of necessary medical care, treatment, and service received to the present time. | $30,192.00 |
| Reasonable value of necessary medical care, treatment and services which with reasonable probability will be required in the future. | $0.00 |
| Reasonable value of earnings and professional fees lost to the present time. | $321,285.00 |
| Reasonable value of earnings and professional fees with which reasonable probability will be lost in the future. | $154,080.00 |
| Total damages. | $505,457.00 |

Certain claims were not submitted to the jury. The parties stipulated that these claims shall be tried by the court sitting without a jury, and each party, pursuant to Federal Rule of Civil Procedure 38(d), voluntarily and knowingly waived on the record in open court any right they had to try these claims to a jury. The stipulation was accepted on the twelfth day of jury trial, June 6, 2009, and an order entered thereon.

On the final day of jury trial, the parties were instructed to submit briefing on the claims submitted for trial by court; namely, their legal positions, proposed findings of fact and proposed conclusions of law by June 19, 2006. The parties timely made their submissions.

2

**II. THE CLAIMS SUBJECT TO BENCH TRIAL DETERMINATION**

The claims to be decided by the court without a jury included Plaintiff's claim for interference with his rights under the FMLA/CFRA and a deprivation of Plaintiff's due process rights under the Fourteenth Amendment (made actionable via 42 U.S.C. § 1983). The parties submitted the testimony of witnesses and exhibits from the jury trial, and legal briefing. In some respects, Plaintiff's bench trial briefing exceeds the scope of the claims, and attendant issues, jointly submitted for bench trial determination.

**A. "Miscellaneous Relief"**

In a section entitled "Miscellaneous Relief" Plaintiff requests when a final judgment is entered in this case that: (1) the amount of economic damages awarded by the jury be doubled on the ground that the jury found that Defendant's violations of the FMLA were "willful"; (2) Plaintiff be awarded pre-judgment and post-judgment interest; (3) Plaintiff be awarded the costs of litigation as the prevailing party according to proof per Plaintiff's Bill of Costs; (4) Plaintiff be awarded attorney's fees pursuant to the FEHA/CFRA/FMLA, and, if Plaintiff prevails on his due process claim, attorney's fees under 42 U.S.C. § 1988, all according to proof per Plaintiff's forthcoming application for attorney's fees.

Plaintiff's items of "Miscellaneous Relief" exceed the scope of the issues reserved for the bench trial portion of the case and have not been briefed. They are not properly before the court for decision at this time and will not be addressed herein. The issues of enhanced damages, interest, costs, and attorney's fees must be addressed in accordance with the Federal Rules of Civil Procedure

and other applicable law.  These findings of fact and conclusions of law deal exclusively with Plaintiff's remaining claims for relief submitted for decision as agreed at the close of the jury trial.

## B.   The Claims

With respect to his FMLA/CFRA claim, Plaintiff contends that the County interfered with (or violated) his rights under the FMLA/CFRA by: (i) requiring him to take more FMLA/CFRA leave than medically necessary to address the circumstance that precipitated his need for leave (i.e., that the County required Plaintiff to take full-time leave instead of extending Plaintiff's reduced work schedule leave); and (ii) mislabeling some of his medical leave as "personal necessity leave" instead of properly designating it FMLA/CFRA leave.[1]  With respect to the Fourteenth Amendment,

---

[1] In Plaintiff's bench trial briefing, Plaintiff has advanced another claim under the CFRA. Plaintiff quotes California Government Code § 12945.2(a) which provides in pertinent part: "Family care and medical leave requested pursuant to this subdivision shall not be deemed to have been granted unless the employer provides the employee, upon granting the leave request, a guarantee of employment in the same or a comparable position upon the termination of the leave."  Plaintiff argues that, in connection with his request for an extension of his medical leave, which ultimately lead to Plaintiff taking full-time medical leave, the County failed to guarantee employment in the same or a comparable position upon its conclusion. According to Plaintiff, the result of this failure is that Plaintiff's requested extension of leave is "deemed DENIED by operation of law."  This theory of CFRA liability, regardless of whether it has any merit, is not encompassed within the Final Pretrial Order (Doc. 328), entered May 6, 2009. "A pretrial order generally supersedes the pleadings, and the parties are bound by its contents." *Patterson v. Hughes Aircraft Co.*, 11 F.3d 948, 950 (9th Cir. 1993).  The Final Pretrial Order did not encompass Plaintiff's claim that by operation of law, the County's purported failure to guarantee employment in the same

**4**

Plaintiff claims that his placement on administrative leave with pay deprived him of property without due process in violation of the Fourteenth Amendment. Plaintiff has requested injunctive relief with respect to his FMLA/CFRA claim and damages ($116,501) with respect to his due process claim. All of these claims are encompassed in the Final Pretrial Order.

The Court has considered all the submissions of the parties and enters the following Findings of Fact and Conclusions of Law. To the extent that any finding of fact may be interpreted as a conclusion of law, or the converse, the finding is so intended.

### III. Findings Of Fact

1. Pursuant to contract, Defendant County employed Plaintiff from October 24, 2000, to October 4, 2007. Plaintiff worked for the County as a core physician, specifically a pathologist, at Kern Medical Center.

2. Kern Medical Center ("KMC") is a hospital owned and operated by the County.

3. On October 24, 2000, Plaintiff and the County executed a term employment contract. (Pl. Ex. 120.) Attached to this term

---

or comparable position constituted a denial of his request for an extension of his medical leave. Not only is this claim absent from the Final Pretrial Order, it also does not appear in Plaintiff's Second Amended Complaint (Doc. 241) or in Plaintiff's Trial Brief (Doc. 325). More importantly no evidence was adduced at trial on this claim. The County would be manifestly prejudiced by introduction of a new claim at this late stage after the trial evidence is closed. The parties did not stipulate to submit this particular claim to a bench trial, and no motion was made to include this claim within the confines of the case. Accordingly, Plaintiff cannot assert this claim and it is not a proper subject of the bench trial portion of this case.

employment contract is Exhibit "A" which is part of the agreement. Exhibit A provides that Plaintiff "shall not bill or retain proceeds for any professional services performed by Core Physician [Plaintiff] at [Kern] Medical Center until such time as this Agreement is amended . . . ." The agreement further provides that "KMC shall bill and retain all professional fees for professional services performed at [Kern] Medical Center."

4.    Plaintiff and the County executed another term employment contract effective October 5, 2002 (Pl. Ex. 139), which terminated the prior contract.    This new contract provided for a term of October 5, 2002, to October 4, 2007.    Unlike the prior agreement, this agreement granted Plaintiff the right to earn and receive professional fees.

5.    The employment contract contains no provision about renewal.

6.    At all relevant times, the FMLA/CFRA applied to the County.

7.    The County provided Plaintiff with a reduced work schedule medical leave under the FMLA/CFRA from December 16, 2005, to April 16, 2006.

8.    In April 2006, Plaintiff submitted a request to extend his medical leave. (Pl. Ex. 250). In connection with his request, Plaintiff submitted a form entitled Certification of Health Care Provider, Medical Leave Of Absence. (Pl. Ex. 249).    This form is signed by Paul Riskin, M.D., a psychiatrist, and dated April 26, 2006.    On the form, there is a question which asks whether "it is medically necessary for employee/patient to be off work on an intermittent basis or to work less than the employee's normal work

**6**

schedule in order to be treated for [a] serious health condition." This question is answered "yes" followed by the statement: "[t]his employee is unable to work full time and requires part-time or less to avoid worsening of his serious medical condition." Another part of the form asks Dr. Riskin to provide the estimated number of hours per day the employee (Plaintiff) is able to work and the written response indicates "1-2" days per week.

9.   On April 28, 2006, Plaintiff attended a meeting regarding his medical leave situation.  Those present at the meeting included Plaintiff and three other individuals: Peter Bryan, then CEO of KMC, Karen Barnes, the County Counsel, and Steve O'Connor from Human Resources.

10.   After the April 28 meeting, Plaintiff went on full-time medical leave under the FMLA/CFRA until June 16, 2006.  As the parties stipulated, Plaintiff took medical leave from December 16, 2005, to June 16, 2006.

11.   In connection with the April 28 meeting, Bryan composed a memorandum (Pl. Ex. 251) summarizing the meeting in his words. In the memorandum, Bryan states: "I also mentioned that after Monday [May 1, 2006], it would be preferable for you not to have an intermittent work schedule and it would be easier on the department to just have you on leave until your status is resolved."  Bryan testified that it was Plaintiff's idea to go on full-time medical leave.   This trial testimony conflicts with Bryan's deposition testimony, which counsel read in open court, that Bryan did not recollect Plaintiff saying, either way, whether he (Plaintiff) wanted to go on full-time leave or not.

12.   Plaintiff testified that he requested an extension of

his modified work schedule and that, during the meeting, Bryan conveyed a desire to have a full-time department chair. Plaintiff described Bryan's communication as one-way. Plaintiff testified that he really had no choice to refuse full-time leave and he did not believe raising an objection to the full-time leave would do any good.

13. Bryan required Plaintiff to inform him (Bryan) by June 16, 2006, whether Plaintiff would resign or return to work full-time. Prior to that date, Plaintiff sent a correspondence to Bryan (Pl. Ex. 256) in which Plaintiff explained that he underwent nasal surgery in May and subsequently fractured his foot. In the correspondence, Plaintiff asked for an extension on the June 16 deadline. Bryan responded to Plaintiff's correspondence in an e-mail dated June 13 (Pl. Ex. 267 at 0001526) followed up by a letter dated June 14 (Pl. Ex. 267 at 0001525). Bryan informed Plaintiff that he would grant Plaintiff a Personal Necessity Leave for ninety (90) days. Plaintiff took that Personal Necessity Leave. As Bryan testified, the Personal Necessity Leave started June 16, 2006.

14. After going on Personal Necessity Leave, Plaintiff and the County executed an amendment to Plaintiff's employment agreement effective October 3, 2006. (Pl. Ex. 283.) The amendment reduced Plaintiff's base salary and altered his job duties. The amendment changed Section 1 of Article II (Compensation) in the employment agreement and also replaced Exhibit "A" to the employment agreement with Exhibit "A" of the amendment. The amendment did not change the other terms of the employment agreement, which remained in full force and effect.

15. Plaintiff resumed working for the County at KMC under the

employment agreement as amended.

16. Defendant County subsequently placed Plaintiff on paid administrative leave on December 7, 2006.

17. David Culberson, the Interim Chief Executive Officer, decided to place Plaintiff on paid administrative leave. He made the decision with the input and participation of Steve O'Connor from Human Resources, Dr. Dutt (Chair of the Pathology Department), Karen Barnes (County Counsel), and Margo Raison (Labor Counsel).

18. The County placed Plaintiff on paid administrative leave via letter dated December 7, 2006, signed by Steve O'Connor on behalf of Culberson. (Pl. Ex. 317.) The letter reads:

> This is to notify you that you are being placed on administrative leave with pay effective immediately. You will remain in this status pending resolution of a personnel matter. Pursuant to Kern County Policy and Administrative Procedures Manual section 124.3, during this period of paid administrative leave, you are to remain at home and available by telephone during normal business hours, specifically, Monday through Friday between the hours of 8 a.m. and 5 p.m. Further, during this leave period, you are not to come to Kern Medical Center (KMC) or its satellite facilities or contact any employee or faculty member of KMC for any reason other than seeking medical attention. In accordance with KMC policy, access to and usage of any and all equipment or systems has been suspended.
>
> Failure to comply with the instructions of this letter is grounds for disciplinary action up to and including termination of your employment with the County of Kern.
>
> Please bring to my attention any request you may have to access hospital premises or personnel during this time. I may be reached through my assistant . . . .

19. Then-existing section 124 of the Kern County Policy and Administrative Procedures Manual (Pl. Ex. 104) is entitled "Disciplinary Actions" and contains three subsections (124.1, 124.2, 124.3). Section 124.3 entitled "Administrative Leave with Pay" provides:

9

**A department head may place an employee on administrative leave with pay if the department head determines that the employee is engaged in conduct posing a danger to County property, the public or other employees, or the continued presence of the employee at the work site will hinder an investigation of the employee's alleged misconduct or will severely disrupt the business of the department.**

**During the administrative leave, the employee shall be ordered to remain at home and available by telephone during the normally assigned work day. A department head may, if necessary, adjust the employee's work schedule to provide availability during normal business hours, Monday through Friday, 8:00 AM to 5:00 PM. A department head may not order an administrative leave with pay for a period in excess of five assigned workdays within a single pay period without the written authorization of the Employee Relations Officer in the County Administrative Office. Changes in duty status following the issuance of a notice of proposed action are as provided in Civil Service Rule 1700 st. seq., not this section.**

20.   Plaintiff's operative employment agreement provides that Plaintiff is subject to "all applicable KMC and County policies and procedures." (Pl. Ex. 139 at 139.014.)

21.   Plaintiff remained on paid administrative leave until his employment agreement expired on October 4, 2007.

22.   Plaintiff continued to receive his base salary while on administrative leave.  Culberson acknowledged, however, that he was aware that by placing Plaintiff on administrative leave, Plaintiff would not be able to earn professional fees (which Plaintiff could earn in accordance with his employment agreement).  Plaintiff's expert witness, Stephanie Rizzardi, testified that Plaintiff lost professional fees while on paid administrative leave.

23.   The jury awarded damages for lost professional fees and earnings.

24.   In   connection   with   Plaintiff's   placement   on   paid administrative leave, the County did not provide Plaintiff with a

hearing, whether before or after his paid administrative leave commenced, and did not provide him with an explanation of the "personnel matter" or reason for the leave.

## IV. CONCLUSIONS OF LAW

### A. FMLA/CFRA Claim

1. "Article III, § 2, of the Constitution confines federal courts to the decision of 'Cases' or 'Controversies.'" *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997). Standing and mootness are aspects of the case-or-controversy requirement. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000); *Arizonans for Official English*, 520 U.S. at 64, 67; *ACLU v. Lomax*, 471 F.3d 1010, 1015-16 (9th Cir. 2009).

2. In terms of standing, "Article III's 'case' or 'controversy' provision creates an irreducible constitutional minimum of standing for all federal court plaintiffs." *M-S-R Pub. Power Agency v. Bonneville Power Admin.*, 297 F.3d 833, 843 (9th Cir. 2002) (internal quotation marks omitted). Whether a plaintiff has standing is evaluated as of time the operative complaint is filed. *See County of Riverside v. McLaughlin*, 500 U.S. 44, 51 (1991) (analyzing standing as of the time the "second amended complaint was filed"); *Thomas v. Mundell*, __ F.3d __, 2009 WL 2032335, at *4 (9th Cir. July 15, 2009). In terms of mootness, Article III's case-or-controversy provision also creates a restriction, "at all stages of [litigation], not merely at the time the complaint is filed," as to which cases are "fit for federal-court adjudication." *Arizonans for Official English*, 520 U.S. at 67.

3. "The federal courts are under an independent obligation

to examine their own jurisdiction, and standing is perhaps the most important of [the jurisdictional] doctrines." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (alteration in original) (internal quotation marks omitted). The independent obligation to examine jurisdiction extends to mootness. *Lomax*, 471 F.3d at 1015-16.

4. A plaintiff in federal court "must demonstrate standing separately for each form of relief sought," *Friends of the Earth, Inc.*, 528 U.S. at 185, "whether it be injunctive relief, damages or civil penalties," *Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 985 (9th Cir. 2007). Likewise, such claims must be analyzed to determine whether they are moot. *See, e.g., Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1170 (9th Cir. 2007).

5. Standing requires that "(1) the plaintiff suffered an injury in fact, i.e., one that is sufficiently 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical,' (2) the injury is 'fairly traceable' to the challenged conduct, and (3) the injury is 'likely' to be 'redressed by a favorable decision.'" *Bates*, 511 F.3d at 985 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

6. "[F]or a plaintiff seeking prospective injunctive relief," such as Plaintiff here, for standing to exist, the plaintiff

> "must demonstrate that he has suffered or is threatened with a concrete and particularized legal harm coupled with a sufficient likelihood that he will again be wronged in a similar way. As to the second inquiry, he must establish a real and immediate threat of repeated injury. . . . In addition, the claimed threat of injury must be likely to be redressed by the prospective

injunctive relief."

*Bates*, 511 F.3d at 985 (citations and internal quotation marks omitted). With respect to the last inquiry, "Art. III judicial power exists only to redress or otherwise to protect against injury *to the complaining party*." *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000) (emphasis in original) (internal quotation marks omitted).[2]

7. Even if a plaintiff has standing with respect to a claim for relief at the time the complaint is filed, mootness considerations "require courts to look to changing circumstances that arise after the complaint is filed," and "[i]f a live controversy no longer exists, the claim is moot." *Lomax*, 471 F.3d at 1016 (internal quotation marks omitted). "The case-or-controversy requirement demands that, through all stages of federal judicial proceedings, the parties continue to have a personal stake in the outcome of the lawsuit." *Carty v. Nelson*, 426 F.3d 1064, 1071 (9th Cir. 2005).

8. With respect to his FMLA/CFRA claim, Plaintiff does not

---

[2] Without citing any authority, Plaintiff argues that the federal concern for standing is "ameliorated where state law specifically authorizes injunctive relief." The case-or-controversy requirement, mandated by the United States Constitution and applicable in federal court, is not "ameliorated" by state law. In federal court, Article III standing requirements are equally applicable to state law claims. *See Qwest Corp. v. City of Surprise*, 434 F.3d 1176, 1180 (9th Cir. 2006); *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1021-22 (9th Cir. 2004) (reversing district court's conclusion that plaintiff had standing to pursue an injunctive relief claim under state law); *Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1001-02 (9th Cir. 2001); *Cantrell v. City of Long Beach*, 241 F.3d 674, 683 (9th Cir. 2001). Plaintiff's claim for injunctive relief under the CFRA is not exempt from Article III standing requirements.

13

seek damages; rather he seeks "prospective injunctive relief in the form of an order requiring [Kern County] to train its staff to proficiency regarding compliance" with "reduced work schedule leave rights" under the FMLA/CFRA.

9. In *Walsh v. Nevada Department of Human Resources*, the Ninth Circuit concluded that the plaintiff, Nancy Walsh, "lacked standing to request injunctive relief to force the Department to adopt and enforce lawful policies regarding discrimination based on disability." 471 F.3d 1033, 1036 (9th Cir. 2006). The court determined that the plaintiff failed to satisfy the redressability requirement of standing that she "is likely to be redressed by the relief she seeks." *Id.* at 1037. The court noted that the plaintiff "is no longer an employee of the Department" and "there is no indication in the complaint that [she] has any interest in returning to work" for the defendant. *Id.* "Therefore, she would not stand to benefit from an injunction requiring the anti-discriminatory policies she requests at her former place of work." *Id.* She thus "lacked standing to sue for injunctive relief from which she would not likely benefit." *Id.*; *cf. Arizonans for Official English*, 520 U.S. at 67 (concluding that a plaintiff's claim for injunctive relief as to an Arizona constitutional provision, Article XXVIII, was moot; provision applied only to public employees, and after the commencement of litigation plaintiff "left her state job in April 1990 to take up employment in the private sector, where her speech was not governed by Article XXVIII" at which "point, it became plain that she lacked a still vital claim for prospective relief.").

10. Judicial notice of the Second Amended Complaint, filed

**14**

October 7, 2008, is taken.

11.   Plaintiff's employment relationship with the County ended on October 4, 2007, well before he filed his Second Amended Complaint.   The Second Amended Complaint does not request Plaintiff's reinstatement or allege any intent to resume employment with the County.

12.   The evidence at trial did not demonstrate that Plaintiff sought re-employment with the County at or around the time he filed the Second Amended Complaint (or thereafter). The County had no interest in renewing Plaintiff's employment contract when it expired in October 2007 or in retaining him as an employee at or around the time he filed the Second Amended Complaint (or thereafter).

13.   Viewing the circumstances as they existed at the time of the operative pleading, the evidence shows no "sufficient likelihood that [Plaintiff] will again be wronged [by the County] in a similar way," *Bates*, 511 F.3d at 985 (internal quotation marks omitted), as the County no longer employs him and there is no reasonable prospect that Plaintiff will resume employment with the County.

14.   In addition, just as in *Walsh*, Plaintiff "would not stand to benefit from an injunction," 471 F.3d at 1037, that requires the County to train its staff regarding reduced work schedule leave rights under the FMLA/CFRA.  "Art. III judicial power exists only to redress or otherwise to protect against injury *to the complaining party*." *Vermont Agency of Natural Resources*, 529 U.S. at 771 (emphasis in original) (internal quotation marks omitted). Plaintiff's requested injunction would not provide *him,* the

complaining party, any redress or protection against a future violation of the FMLA/CFRA as he is no longer employed, and not likely to be employed, by the County and subject to the staff whom he requests be "trained."[3]

15. Plaintiff lacks standing to request injunctive relief to require the staff of the County to be trained on reduced work schedule leave rights under the FMLA/CFRA.

16. Even assuming, *arguendo*, that Plaintiff had standing at the time of the operative pleading, Plaintiff's claim for injunctive relief is moot. He is not an employee of the County, is not seeking reinstatement, and there is no reasonable likelihood that he will resume employment with the County. He has no personal stake in an injunction which requires staff of the County to be trained. *See Arizonans for Official English*, 520 U.S. at 68 n.22 ("Mootness has been described as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).") (internal quotation marks omitted).

---

[3] **Plaintiff argues that *Armstrong v. Davis*, 275 F.3d 849, 861 (9th Cir. 2001) supports the conclusion that Plaintiff has standing. In *Armstrong*, however, it was clear that the plaintiffs (there disabled prisoners and parolees) faced the prospect of further discrimination by the State of California during the parole and parole revocation hearing process. Here, by contrast, Plaintiff does not face the prospect of further FMLA/CFRA-proscribed activity by the County. Moreover, consistent with the Ninth Circuit's later decision in *Bates*, *Armstrong* expressly recognized that, for standing purposes, where a "plaintiff seeks injunctive relief, he must demonstrate that *he* is realistically threatened by a repetition of [the violation]." *Armstrong*, 275 F.3d at 860–861 (emphasis added) (alteration in original) (internal quotation marks omitted). *Plaintiff* does not face a realistic threat of repetition of the alleged FMLA/CFRA violations.**

17.   Plaintiff lacks standing to pursue his injunctive relief claim under the FMLA/CFRA or, if *arguendo* standing exists, the claim is moot.   Accordingly, the claim is dismissed.[4]

**B.   § 1983 Claim – Procedural Due Process**

18.   Section 1983 creates a federal cause of action for the deprivation, under color of state law, of rights guaranteed by the United States Constitution. *San Bernardino Physicians' Servs. Med. Group, Inc. v. County of San Bernardino*, 825 F.2d 1404, 1407 (9th Cir. 1987).   At issue here is the right to procedural due process under the Fourteenth Amendment.   Plaintiff claims that his placement on paid administrative leave deprived him of a property interest without due process and he requests damages.   Plaintiff has standing to assert this claim for relief, and it is not moot.

19.   "The Fourteenth Amendment protects individuals against deprivation of liberty or property by the government without due process." *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).  In this case, Plaintiff claims a deprivation of a property interest (and not a liberty interest).   To prevail on his

---

[4] **In his briefing, Plaintiff also requests an injunction requiring the County to train its staff to proficiency regarding "compliance with disability rights under FEHA" and "protection against retaliation under" the FMLA/CFRA.   The parties did not stipulate to submit the FEHA disability claims or the FMLA/CFRA retaliation claims, or the associated relief, to a bench trial. Plaintiff's requested injunctive relief – to train County staff to proficiency regarding compliance with disability rights under FEHA and protection against FMLA/CFRA retaliation – goes beyond the confines of the stipulated bench trial and cannot be considered. Plaintiff also lacks standing with respect to these claims for injunctive relief (and even assuming he had standing, these claims are moot). Nonetheless, as a practical matter, it is inconceivable that the County is not knowledgeable of its employment law duties placed in issue by the entirety of this case.**

constitutional claim, Plaintiff must establish: "(1) a property interest protected by the Constitution; (2) a deprivation of the interest by the government; and a (3) lack of required process." *Ulrich v. City & County of San Francisco*, 308 F.3d 968, 974 (9th Cir. 2002).

### i. Property Interest

20. "Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). Federal constitutional law, however, helps determine "whether that interest rises to the level of 'legitimate claim of entitlement,'" i.e., a cognizable property interest, for Fourteenth Amendment purposes. *Loehr v. Ventura County Cmty. Coll. Dist.*, 743 F.2d 1310, 1314 (9th Cir. 1984) (internal quotation marks omitted); *see also Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756-57 (2005).

21. No cognizable property interest "can exist in the outcome of a decision unmistakably committed . . . to the discretion of the [public entity]." *Ulrich*, 308 F.3d at 976 (alteration in original) (internal quotation marks omitted). Accordingly, to have a legitimate claim of entitlement to something, such as a benefit, the decision to grant or take it away must be removed from agency discretion. *See Peacock v. Bd. of Regents of the Univs. & State Colls. of Ariz.*, 510 F.2d 1324, 1327 (9th Cir. 1975); *see also Gonzales,* 545 U.S. at 756; *Logan v. Zimmerman Brush Co.*, 455 U.S.

422, 430 (1982). Thus, "a state law which limits the grounds upon which an employee may be discharged, such as conditioning dismissal on a finding of cause, creates a constitutionally protected property interest" in continued employment. *Dyack v. Commonwealth of the Northern Mariana Islands*, 317 F.3d 1030, 1033 (9th Cir. 2003) (internal quotation marks omitted). On the other hand, where "a state employee serves at will, he or she has no reasonable expectation of continued employment, and thus no property right." *Id.* at 1033; *see also Clements v. Airport Auth. Of Washoe County*, 69 F.3d 321, 331 (9th Cir. 1995). "The hallmark of property . . . is an individual entitlement" "which cannot be removed except 'for cause.'" *Logan*, 455 U.S. at 430.

22. Independent sources from which property interests or individual entitlements can arise include, among others, a municipality's personnel rules, *McGraw v. City of Huntington Beach*, 882 F.2d 384, 390 (9th Cir. 1989), or the terms of an employment contract, *San Bernardino Physicians' Services Medical Group, Inc.*, 825 F.2d at 1407-08; *Walker v. Northern San Diego County Hospital District*, 135 Cal. App. 3d 896, 901 (1982).

### a. Property Interest At Stake

23. Plaintiff entered into a written employment agreement with the County in October 2000 (Pl. Ex. 120) setting a term of employment from October 24, 2000, to November 30, 2006. This written agreement was voluntarily terminated by the parties' consent on October 5, 2002.

24. Plaintiff entered into a subsequent written employment agreement with the County effective October 5, 2002 through October 4, 2007. This agreement was in effect at the time of Plaintiff's

19

placement on paid administrative leave (with the amendments as noted above). According to the terms of this agreement (paragraph 10), and as testified to by Karen Barnes (County Counsel), Plaintiff was not a civil service employee.

25. Pursuant to California Government Code Section 31000 (which is specifically referenced in Plaintiff's employment agreement) the County is expressly authorized to "contract" with individuals for the provision of "special services" including "medical" services.[5] *See* Cal. Gov't Code § 31000. Plaintiff's contract with the County was one for special services as authorized by § 31000. In turn, Section 3.04.020 of Title 3 of the Kern County Code provides that "[a]ll county employees shall be included in the civil service system *. . . except*," among others, "[a]ll

---

[5] California Government Code § 31000 reads as follows: "The board of supervisors may contract for special services on behalf of the following public entities: the county, any county officer or department, or any district or court in the county. Such contracts shall be with persons specially trained, experienced, expert and competent to perform the special services. The special services shall consist of services, advice, education or training for such public entities or the employees thereof. The special services shall be in financial, economic, accounting (including the preparation and issuance of payroll checks or warrants), engineering, legal, medical, therapeutic, administrative, architectural, airport or building security matters, laundry services or linen services. They may include maintenance or custodial matters if the board finds that the site is remote from available county employee resources and that the county's economic interests are served by such a contract rather than by paying additional travel and subsistence expenses to existing county employees. The board may pay from any available funds such compensation as it deems proper for these special services. The board of supervisors may, by ordinance, direct the purchasing agent to enter into contracts authorized by this section within the monetary limit specified in Section 25502.5 of the Government Code."

persons providing services to the county under contract . . . ." §
3.04.020.[6]   Plaintiff provided services to the County under
contract and was not governed by the civil service rules.   Any
property interest Plaintiff had is not confined by, and must arise
from an authority other than, the civil service rules.

26.   Plaintiff's written employment agreement gave Plaintiff
a right to be employed as a core physician for five years (from
October 5, 2002 to October 4, 2007).   According to the terms of his
agreement, the County could "terminate" the term employment
agreement "at any time *for cause*." (Emphasis added.)   No other part
of the agreement gave the County the right to terminate his
employment relationship without cause.   Accordingly, Plaintiff had
a protected property interest in his continued employment through
October 4, 2007.

27.   The County continuously employed Plaintiff at full pay,
albeit on leave, through the remainder of his term.   Nonetheless,
Plaintiff can establish a due process violation based on his
placement on administrative leave if Plaintiff's property interest
in continued employment included a property interest in  "active
duty," *Deen v. Darosa*, 414 F.3d 731, 734 (7th Cir. 2005), or a
"property interest in avoiding placement on administrative leave
with pay," *Qualls v. Cook*, 245 F. App'x 624, 625 (9th Cir. 2007)."[7]

28.   Plaintiff's employment contract specified that he was
subject to "all applicable KMC and County policies and procedures."

---

[6] **The Kern County Code is available on LexisNexis.**

[7] **The facts in *Deen* are distinguishable but the terminology
"active duty" is borrowed as a useful alternative label for the
interest referred to in *Qualls* as the "property interest in
avoiding placement on administrative leave with pay."**

21

One such policy was the "Kern County Policy and Administrative Procedures Manual." Culberson's letter notified Plaintiff that he was being placed on administrative leave on December 7, 2006. The letter invoked Kern County Policy and Administrative Procedures Manual section 124.3.

29. The general heading of section 124 is "Disciplinary Actions." Section 124.3, entitled "Administrative Leave with Pay," specifies grounds on which an employee can be placed on paid administrative leave:

> A department head may place an employee on administrative leave with pay if the department head determines that the employee is engaged in conduct posing a danger to County property, the public or other employees, or the continued presence of the employee at the work site will hinder an investigation of the employee's alleged misconduct or will severely disrupt the business of the department.

30. No other provision of or governing Plaintiff's term employment agreement granted the County the right to place Plaintiff on paid administrative leave. By specifying the grounds on which Plaintiff could be placed on paid administrative leave, and by not contractually providing for any other right to place Plaintiff on paid administrative leave, the County implicitly limited its authority to place Plaintiff on paid leave to the specified reasons. *See Sanchez v. City of Santa Ana*, 915 F.2d 424, 429 (9th Cir. 1990).

31. This conclusion – that the County limited its authority to place Plaintiff on paid leave to the specified reasons - is also bolstered by Culberson's testimony. Mr. Culberson testified that he, in conjunction with others, came upon section 124.3 when determining whether there were grounds for placing someone on paid

administrative leave. This confirms that the County considered section 124.3 as the source of its authority to place Plaintiff on paid administrative leave. Culberson further testified that, in accordance with section 123.4 of the Kern County Policy and Administrative Procedures Manual, the County had the ability to place employees on paid administrative leave, that he and those who aided his decision made sure the policy was followed, and he, in fact, followed the policy in placing Plaintiff on administrative leave.

32. Culberson testified that he determined Plaintiff's continued presence would "severely disrupt the business of the department" as stated in section 124.3. Culberson's acknowledgment that 124.3 provided the ability to place employees on paid administrative leave, and Culberson's claimed faithful adherence to that policy, supports the conclusion that the County limited its authority to place Plaintiff on administrative leave to the reasons specified in section 124.3.

33. Testimony from County Counsel, Karen Barnes, does not alter the conclusion. Barnes testified that, according to her interpretation and that of the County Counsel's office, section 124.3 provides "guidance" to the County as the employer for the placement of an employee on paid administrative leave, which includes placement of the employee at home. In its bench trial briefing, the County does not squarely argue that Barnes's "guidance" testimony demonstrates that the County is not limited to the grounds specified in section 124.3 when deciding whether to place an employee on administrative leave. Any such argument

would, for several reasons, lack merit. Barnes did *not* testify that there are *additional* grounds, besides those listed in section 124.3, on which an employee can be placed on paid administrative leave or that the grounds listed in section 124.3 are otherwise not exhaustive. Moreover, Barnes's testimony is consistent with the conclusion that the County's authority to place Plaintiff on administrative leave was limited to the grounds specified in section 124.3. On its face, section 124.3 does provide "guidance" in the sense that it tells the County when it may place an employee on paid administrative leave. Finally, if the County wanted to provide itself with broad discretion to place an employee on paid administrative leave whenever the County saw fit, it could have easily drafted such language. However, section 124.3 sets forth a concrete set of grounds on which an employee may be placed on paid administrative leave. Barnes's testimony does not negate the conclusion that the County limited its authority to place Plaintiff on paid administrative leave to the reasons specified in section 124.3.

34. In its bench trial briefing, the County argues that no language in section 124.3 grants rights to employees, and this interpretation is consistent with Barnes's testimony that the section provides "guidance" to the County as the employer. This argument misses the mark: the issue is not whether the provision, on its face, grants an employee the right to due process; rather the issue is whether section 124.3 creates a property right because it limits the discretion of the County to place an employee on paid administrative leave.

35.  The evidence preponderates to show that by delineating the grounds on which Plaintiff could be placed on paid administrative leave and by not providing for any additional grounds, the County limited its authority to place Plaintiff on paid administrative leave to the grounds specified. The County did not have unfettered discretion to place Plaintiff on paid administrative leave.

36.  The presence of *some* limitation on a decision-maker's authority does not necessarily mean a property interest has been created. *Compare Jacobson v. Hannifin*, 627 F.2d 177, 180 (9th Cir. 1980) (concluding that a Nevada statute did not create a legitimate claim of entitlement to a license where "[t]he only substantive restriction imposed upon the [decision-maker's] exercise of authority [was] the requirement that the basis for its decision be reasonable") *with Parks v. Watson*, 716 F.2d 646, 657 (9th Cir. 1983) (concluding that a property interest existed where a statutory scheme placed "significant substantive restrictions" on the decision-maker's authority to "vacate" city streets despite the fact that the decision-maker was directed to consider "the public interest;" and noting that "a determination as to whether the public interest will be prejudiced, while obviously giving a certain amount of play in the decisional process, defines an articulable standard."). The degree of the limitation on the decision-making helps determine whether the limitation creates a property interest. *See Ressler v. Pierce*, 692 F.2d 1212, 1215 (9th Cir. 1982); *see also Stiesberg v. California*, 80 F.3d 353, 357 (9th Cir. 1996) (recognizing that a "significant substantive restriction

on decision making" can create a property interest) (internal quotation marks omitted).

37.  In *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 539 (1985), the Supreme Court concluded that certain public employees had a property interest in continued employment.  The limitation on decision-making authority in *Loudermill* provided that employees could not be dismissed except "for incompetency, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, violation of such sections or rules of the director of administrator services or the commission, or any other failure of good behavior, or any other acts of misfeasance, malfeasance, or nonfeasance in office." *Id.* at 539 n.4.

38.  In *Federal Deposit Insurance Corp. v. Henderson*, 940 F.2d 465 (9th Cir. 1991), the court concluded that an employee had a property interest in continued employment.  The employment contract provided that the decision-maker could terminate the employee without cause upon ninety days advance notice; otherwise the decision-maker could terminate the employee immediately for "cause" and cause was defined in the agreement as including a "breach of the Agreement, illegal activity, and *misconduct injurious to the Bank's interest*." *Id*. at 470 (emphasis added). Based on the contract provisions, the Ninth Circuit determined that the employee had a property interest in continued employment for ninety days. *Id.* at 476.

39.  In *Wheaton v. Webb-Petett*, 931 F.2d 613, 616-17 (9th Cir. 1991), the court concluded that a management employee had a

property interest in continued employment. The limitation on the decision-making authority in *Wheaton* provided that employees could be removed if "unable or unwilling to fully and faithfully perform the duties of the position satisfactorily." *Id.*

40. Finally, in *Williams v. County of Los Angeles*, 22 Cal. 3d 731, 736 (1978) the court concluded that a public employee had a property interest in employment where his discharge could occur upon "a showing of unsatisfactory service."

41. Here, the substantive grounds on which Plaintiff could be placed on paid administrative leave set forth in section 124.3 were just as limiting on decision-making authority as, if not more restrictive than, the grounds for dismissal in *Loudermill*, *Henderson*, *Wheaton* and *Williams*. Plaintiff has proved, by a preponderance of the evidence, that the County's authority to place Plaintiff on administrative leave was constrained to a significant degree. Section 124.3 sets forth "what is, in essence, a 'for cause standard,'" *Logan*, 455 U.S. at 431, for placing an employee on paid administrative leave. "Once that characteristic is found, the types of interests protected as 'property' are varied and, as often as not, intangible, relating to the whole domain of social and economic fact." *Id.* at 430 (internal quotation marks omitted).

42. The evidence preponderates to show that Plaintiff had a cognizable property interest, or a legitimate claim of entitlement to, active duty (or in avoiding placement on administrative leave with pay). This conclusion is supported by express language in Plaintiff's employment agreement.

43. Plaintiff's term employment agreement with the County

27

could not be terminated by the County except "for cause." Part of the agreement included Plaintiff's remuneration, which is referred to in the agreement as his "compensation" plan. The total "compensation" plan consists of "base salary," "professional fee payments" and "other income." The agreement recognizes that the "purpose of the [compensation] plan is to provide market-based, performance-driven compensation."

44. Given that his agreement expressly provided that he could earn professional fees and that these fees were part of his "performance-driven compensation," the parties mutually understood that Plaintiff's compensation was tied to performance, and that Plaintiff would be in a position to perform, i.e., on active duty. Plaintiff's express contractual right to earn and receive professional fees as part of his total compensation naturally included an ancillary entitlement to not be thwarted from actively performing his services so that he could obtain the fruits of his bargain.

45. Plaintiff has proved, by a preponderance of the evidence, that Plaintiff had a cognizable property interest in active duty or in avoiding placement on administrative leave with pay.

ii. Deprivation Of A Property Interest

46. The County placed Plaintiff on paid administrative leave for several months and, in so doing, deprived him of his property interest in active duty employment. The parties stipulated in the Final Pretrial Order that any acts or omissions of the County were under color of law.

47. Plaintiff has proved, by a preponderance of the evidence,

that he was deprived of his property interest in active duty under color of state law. This deprivation had an economic effect that was more than *de minimis*. *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 530 (7th Cir. 2000) (recognizing that, to be actionable, a deprivation of a property interest must have more than *de minimis* impact).

### iii. <u>The Process Due</u>

48. "[O]nce it is determined that the Due Process Clause applies, the question remains what process is due." *See Loudermill*, 470 U.S. at 541 (internal quotation marks omitted). Notice and an opportunity to be heard are required fundamental aspects of due process. *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002) ("[W]e have determined that individuals whose property interests are at stake are entitled to notice and an opportunity to be heard.") (internal quotation marks omitted); *United States v. James Daniel Good Real Property*, 510 U.S. 43, 53 (1993) ("The right to prior notice and a hearing is central to the Constitution's command of due process" and some exceptions "to the general rule requiring predeprivation notice and hearing" are "tolerat[ed]" in "extraordinary situations") (internal quotation marks omitted); *Loudermill*, 470 U.S. at 546 ("The essential requirements of due process . . . are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement."); *Matthews v. Eldrige*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.") (internal

quotation marks omitted); *United States v. Alisal Water Corp.*, 431 F.3d 643, 657 (9th Cir. 2005) ("At its core, due process requires that a party have adequate notice and opportunity to be heard.").

49.   The full scope or precise contours of what process was due need not be determined.   The County placed Plaintiff on paid administrative leave summarily without any pre-deprivation or post-deprivation opportunity to be heard.   Plaintiff was not afforded the bare minimum of due process.

50.   Plaintiff has proved, by a preponderance of the evidence, that he was deprived of a property interest in active duty without due process.

   iv.   **Damages**

      a.   **Monell Liability**

51.   In a § 1983 case, a municipality cannot be liable for a constitutional tort on the basis of respondeat superior.   *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).   Rather, "[l]iability may attach to a municipality only where the municipality itself causes the constitutional violation."   *Ulrich*, 308 F.3d at 984 (internal quotation marks omitted). "[M]unicipalities may be held liable under § 1983 only for acts for which the municipality itself is actually responsible, that is, acts which the municipality has officially sanctioned or ordered." *Eggar v. City of Livingston*, 40 F.3d 312, 314 (9th Cir. 1994) (internal quotation marks omitted).

52.   To impose liability on a municipality under § 1983, a plaintiff must identify a municipal "policy" or "custom" that caused the alleged constitutional deprivation.   *Bd. of the County*

*Comm'r of Bryan County v. Brown*, 520 U.S. 397, 403 (1997); *see also Ulrich*, 308 F.3d at 984.

53.    A plaintiff can establish a municipal policy or custom in a number of ways. "A plaintiff can establish a 'policy or custom' by showing: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with force of law; or (3) . . . that the constitutional injury was caused by a person with final policymaking authority." *Megargee v. Wittman*, 550 F. Supp. 2d 1190, 1205 (E.D. Cal. 2008). A plaintiff can establish a municipal policy also by "showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (internal quotation marks omitted). In addition, a decision by the municipal entity's governing body constitutes a policy for *Monell* purposes. *See Brown,* 520 U.S. at 403; *Bateson v. Geisse*, 857 F.2d 1300, 1303 (9th Cir. 1988); *Evers v. Custer County*, 745 F.2d 1196, 1203 (9th Cir. 1984).

54.    The mere existence of a municipal policy or custom is not enough to establish liability.  The policy or custom must be the "moving force" behind the alleged constitutional violation. *Galen v. County of Los Angeles*, 477 F.3d 652, 667 (9th Cir. 2007) (quoting *Monell*, 436 U.S. at 694-95).

55.    In the Final Pretrial Order, the parties stipulated that "Defendant *County* placed Plaintiff on paid administrative leave on December 7, 2006." (Emphasis added.)  The County's admission that

the "County" placed Plaintiff on paid administrative leave supports a finding that the County ordered or ratified the placement of Plaintiff on paid administrative leave, which occurred without any attendant due process. In addition, the evidence also preponderates to show that section 124.3 of the Kern County Policy and Procedure Manual constitutes an express policy of the County, and that Culberson, the Chief Executive Officer, relied upon that County policy to place Plaintiff on paid administrative leave.

56. County Counsel, Karen Barnes, referred to the Kern County Policy and Administrative Procedures Manual as the "County Policy" and stated that it provided guidance to the County as the employer with respect to placement of an employee on paid administrative leave. This testimony establishes that the Kern County Policy and Administrative Procedures Manual, including section 124.3, constitutes County policy. Culberson's reliance on the Manual underscores this point. Plaintiff was notified that he was being placed on administrative leave by a letter dated December 7, 2006, issued by Culberson (and signed by Steven O'Connor). The letter cited Kern County Policy and Administrative Procedures Manual section 124.3. Culberson testified that he had the authority, in accordance with 123.4 of the Kern County Policy and Administrative Procedures Manual, to place any employee on administrative leave, "we follow the policy," and the Manual was followed in placing Plaintiff on paid administrative leave. Culberson testified that he concluded that Plaintiff's continued presence would "severely disrupt the business of the department" as stated in section 124.3.

57. The evidence preponderates to show that section 124.3 of

the Kern County Policy and Administrative Procedural Manual is an express County policy and that it was the moving force behind Plaintiff's placement on administrative leave without due process. Section 124.3, which Culberson relied upon, authorized the placement of Plaintiff on paid administrative leave without notice or a hearing, and Culberson testified that Plaintiff's placement on administrative leave was proper under section 124.3. *See Vinyard v. King*, 728 F.2d 428, 433 (10th Cir. 1984) (municipal hospital liable for deprivation of a property interest in continued employment without due process where it authorized the employee's termination without affording due process protections); *Kay v. N. Lincoln Hosp. Dist.*, 555. F. Supp. 527, 529 (D. Or. 1982) (denying summary judgment as to *Monell* liability where the municipal entity's written policy authorized the "immediate discharge" of the plaintiff without due process protections); *see also Lalvani v. Cook County,* No. 98 C 2847, 2000 WL 198459, at *7 n.6 (N.D. Ill. Feb. 14, 2000).

58. Plaintiff has proved, by a preponderance of the evidence, that a County policy was actually responsible for the deprivation of his property interest in active duty without due process, *i.e.*, that a policy of the County was the moving force behind the constitutional deprivation.

### b. Amount Of Damages

59. Based on the evidence, the deprivation of Plaintiff's property interest in active duty had an economic impact on his professional fees. Plaintiff requests a damages award in an amount that represents the professional fees that he claims to have lost

33

during the period that he was on paid administrative leave. Compensatory damages can be awarded for procedural due process violations. *See Brady v. Gebbie*, 859 F.2d 1543, 1557 (9th Cir. 1988). Plaintiff cannot be awarded additional amounts for his claimed loss of professional fees as a result of his placement on administrative leave.

60. In the jury trial portion of this case, the jury concluded that Plaintiff's placement on paid administrative leave was unlawful under the FMLA and the FEHA because it was effected in retaliation for engaging in certain activities. The jury also determined that Plaintiff was harmed by such retaliation, and the jury awarded damages which included lost earnings and "professional fees." In both his FMLA/FEHA retaliation claim and in his procedural due process claim, the underlying act which Plaintiff claims damaged him is the same, i.e., his placement on paid administrative leave. At this juncture, it cannot be concluded that the deprivation of Plaintiff's property interest in active duty caused any identifiable harm separate and apart from the harm caused by the County's unlawful conduct under the FMLA/FEHA in placing Plaintiff on paid administrative leave for retaliatory reasons. Accordingly, to avoid double recovery, a damages award on the procedural due process violation is inappropriate. *Kassman v. Am. Univ.*, 546 F.2d 1029, 1034 (D.C. Cir. 1967) ("Where there has been only one injury, the law confers only one recovery, irrespective of the multiplicity of parties whom or theories which the plaintiff pursues.").

61. Due regard for the jury verdict requires a denial of

**34**

damages on Plaintiff's due process claim. The jury found that Plaintiff's placement on paid administrative leave was unlawful and retaliatory under the FMLA/FEHA and that Plaintiff was harmed thereby. The jury awarded damages on Plaintiff's claims, including his FMLA/FEHA retaliation claim, and this award included lost professional fees. The jury has already determined that Plaintiff was damaged by his placement on administrative leave and fully compensated him to the extent he was damaged thereby. The court must respect this jury determination as to the extent of the damages and cannot depart from it by awarding additional or different damages as a result of Plaintiff's placement on paid administrative leave. *See Ag Servs. of Am., Inc. v. Nielsen*, 231 F.3d 726, 732 (10th Cir. 2000) ("The true test is whether the jury verdict by necessary implication reflects the resolution of a common factual issue. If so, the district court may not ignore that determination, and it is immaterial whether, as here, the district court is considering equitable claims with elements different from those of the legal claims which the jury had decided (as may often be the case)."); *Wade v. Orange County Sheriff's Office*, 844 F.2d 951, 954 (2nd Cir. 1988) ("[W]hen the jury has decided a factual issue, its determination has the effect of precluding the court from deciding the same fact issue in a different way.").

62. Courts "should take all necessary steps to ensure that the plaintiff is not permitted double recovery for what are essentially two different claims for the same injury." *California v. Chevron Corp*, 872 F.2d 1410, 1414 (9th Cir. 1989); *see also EEOC*

*v. Waffle House, Inc.*, 534 U.S. 279, 297 (2002) ("[I]t goes without saying that the courts can and should preclude double recovery by an individual.") (internal quotation marks omitted). To prevent double recovery for the same injury – the wrongful placement of Plaintiff on paid administrative – compensatory damages should not be awarded on Plaintiff's due process claim.

63. For these reasons, compensatory damages are not awarded on Plaintiff's procedural due process claim. Plaintiff is, by law, fully compensated except for nominal damages. *See Floyd v. Laws*, 929 F.2d 1390, 1402 (9th Cir. 1991) (concluding that upon a finding of a "constitutional violation, an award of nominal damages is mandatory"). Plaintiff is entitled to an award of nominal damages on his procedural due process claim.

64. Pursuant to Rule 58, a judgment will be entered consistent with these Findings of Fact and Conclusions of Law.

65. Plaintiff shall lodge with the court a form of judgment consistent with these Findings of Fact and Conclusions of Law within five (5) days following electronic service of these findings.

IT IS SO ORDERED.

**Dated:    August 5, 2009**              **/s/ Oliver W. Wanger**
                                   UNITED STATES DISTRICT JUDGE

36