**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAVID F. JADWIN, D.O.,<br><br>                    Plaintiff,<br><br>          v.<br><br>COUNTY OF KERN,<br><br>                    Defendant. | 07-CV—0026-OWW-DLB<br><br>MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR ADDITIONAL FINDINGS OF FACT AND CONCLUSIONS OF LAW (Doc. 399) |

**I.   INTRODUCTION**

Before the court is Plaintiff David F. Jadwin, D.O.'s, ("Plaintiff") motion for "additional findings of fact and conclusions of law."  Plaintiff requests an award of "liquidated damages" under the Family and Medical Leave Act ("FMLA") and prejudgment interest.  The County of Kern ("County") opposes the motion.  The following background facts are taken from the parties' submissions in connection with the motion and other documents on file in this case.[1]

**II.   BACKGROUND**

**A.   Procedural Background**

In this employment case, Plaintiff submitted several of his claims to a jury.  On June 8, 2009, the jury returned verdicts in favor of Plaintiff.  By stipulation, certain of Plaintiff's claims were not submitted to the jury for determination.  Instead, as to

---

[1] **In connection with his motion, Plaintiff requests judicial notice of various documents on file in this case such as, among others, the operative complaint.  (Doc. 400).  Judicial notice is taken of the existence of these documents.**

these claims, the parties agreed that they would be tried by the court sitting without a jury. On August 4, 2009, Findings of Fact and Conclusions of Law were issued on these claims. Subsequently, Plaintiff filed his motion for additional findings of fact and conclusions of law. Because Plaintiff's motion involves determinations made by the jury, the jury findings must be addressed.

1. <u>Jury Trial</u>

a. <u>Claims</u>

At trial, Plaintiff presented five claims to the jury. As to each, for the most part, the jury found in Plaintiff's favor.

i. <u>Oppositional Retaliation-FMLA/FEHA</u>

The first claim the jury determined was Plaintiff's claim for retaliation under the FMLA and the California Fair Employment and Housing Act ("FEHA") on the theory that Plaintiff engaged in oppositional activity against the County/Kern Medical Center management and, as a consequence, the County retaliated against him. On this claim, the jury found that the County retaliated against Plaintiff for: (a) complaining internally about discrimination, harassment or retaliation; (b) filing a charge with the Department of Fair Employment and Housing; (c) filing a lawsuit containing claims based on the FEHA; (d) filing a lawsuit containing claims based on the California Family Rights Act ("CFRA")[2]; and (e) filing a lawsuit containing claims based on the FMLA. (Doc. 384 at 2.) On the verdict form, the jury was asked separately whether the retaliation for filing a lawsuit containing

_____

[2]  The CFRA is part of the FEHA.

**2**

claims based on the FMLA was "willful," and the jury answered the question "yes." (*Id.* at 3.)  In the jury instructions, "willful" was defined as meaning that the "County failed to act in good faith and lacked reasonable grounds to believe that its actions complied with the FMLA." (Doc. 386 at 17.)

As for the acts of retaliation, the jury determined that the County engaged in retaliation by: (a) removing Plaintiff from his position as Chair of the Pathology Department (at Kern Medical Center); (b) creating a hostile work environment for Plaintiff; (c) failing to renew his employment contract; and (d) placing Plaintiff on paid administrative leave on December 7, 2006. (Doc. 384 at 4.) The jury determined that Plaintiff's engagement in oppositional activity was a motivating reason behind the County's retaliatory actions. (*Id.* at 5.)  The jury also found that Plaintiff was harmed by the County's retaliatory conduct, and that the County's retaliatory conduct was a substantial factor in causing Plaintiff harm or damage. (*Id.* at 6-7.)

<b>ii.   <u>Medical Leave Retaliation-FMLA/CFRA</u></b>

On his second claim for retaliation for taking medical leave under the FMLA or CFRA, the jury concluded that the County retaliated against Plaintiff, i.e., took adverse employment action against Plaintiff, by: (a) creating a hostile work environment for Plaintiff; (b) removing him from his position as Chair of Pathology at KMC; and (c) failing to renew his employment contract. (Doc. 384 at 8.)  The jury was separately asked whether any such retaliation under the FMLA was "willful," and the jury answered "yes." (*Id.*) As to whether Plaintiff's taking of medical leave was a motivating reason "for any of the adverse employment actions" identified

3

above, the jury answered "yes" and found that the County's retaliatory conduct caused Plaintiff harm or damage, and that the County's retaliatory conduct was a substantial factor in causing Plaintiff harm or damage. (*Id.* at 9-11.)

### iii.  Disability Discrimination-FEHA

Plaintiff's third claim was for discrimination based on a mental disability (chronic depression).  The jury concluded that the County discriminated against Plaintiff based on his mental disability by, among other things, removing him from his position as Chair of the Pathology Department. (Doc. 384 at 14-15.)  The jury determined that Plaintiff was harmed by the discrimination, and that such discrimination was a substantial factor in causing Plaintiff harm or damage. (*Id.* at 16-17.)

### iv.   Failure To Make Reasonable Accommodation-FEHA

Plaintiff's fourth claim was that the County failed to reasonably accommodate Plaintiff's mental disability (chronic depression).  The jury found that the County knew that Plaintiff had a mental condition (chronic depression) that limited his ability to work full time and that County failed to provide Plaintiff with a reasonable accommodation. (Doc. 384 at 18-19.) The jury also determined that Plaintiff was harmed by the County's failure to provide a reasonable accommodation, and that the failure to provide a reasonable accommodation was a substantial factor in causing Plaintiff harm or damage. (*Id.* at 20-21.)

### v.   Failure To Engage In An Interactive Process-FEHA

Finally, the jury determined whether the County failed to engage in an interactive process with Plaintiff.  The jury concluded that Plaintiff had a mental disability that was known by

**4**

the County, that Plaintiff was willing to participate in an interactive process, and the County failed to participate in a timely good-faith interactive process with Plaintiff to determine whether a reasonable accommodation could be made for his disability. (Doc. 384 at 22, 24-25.)  The jury concluded that the County's failure to participate in an interactive process with Plaintiff harmed Plaintiff and was a substantial factor in causing harm or damage. (*Id.* at 26-27.)[3]

        b.  <u>Damages</u>

As to damages, the jury made the following award:

If you have found that any discrimination or retaliation by Kern County was the cause of damage to Dr. Jadwin on any of his claims, what damages do you award?

Mental and emotional distress
and suffering.      $0.00

Reasonable value of necessary medical
care, treatment, and services received to the
present time.      $30,192.00

Reasonable value of necessary medical
care, treatment and services which with
reasonable probability will be required in
the future.      $0.00

Reasonable value of earnings and
professional fees lost to the present
time.      $321.285.00

Reasonable value of earnings and
professional fees which with reasonable
probability will be lost
in the future.      $154,080.00

Total damages.      <u>$505,457.00</u>

---

[3] **The jury found against the County on its defense that Plaintiff's employment contract was not renewed by reason of Plaintiff's conduct and alleged violation of the employer's rules and contract requirements and/or that Plaintiff's behavior was the cause of the nonrenewal of his contract.**

1  (Doc. 384 at 29.)   On June 18, 2009, a "Partial Judgment On

2  Verdicts Of Trial Jury" (hereafter "Partial Judgment") was entered

3  in favor of Plaintiff and against the County in the amount of

4  $505,457. (Doc. 389.)

5        2.  <u>Bench Trial</u>

6        On June 19, 2009, after the Partial Judgment was entered, the

7  parties filed their briefing as to claims which the parties agreed

8  were to be tried by the court sitting without a jury.  The claims

9  to be decided by the court without a jury included Plaintiff's

10 claim for interference with his rights under the FMLA/CFRA and a

11 deprivation of Plaintiff's due process rights under the Fourteenth

12 Amendment (made actionable via 42 U.S.C. § 1983).  With respect to

13 his FMLA/CFRA claim, Plaintiff contended that the County interfered

14 with (or violated) his rights under the FMLA/CFRA by: (i) requiring

15 him to take more FMLA/CFRA leave than medically necessary to

16 address the circumstance that precipitated his need for leave

17 (i.e., that the County required Plaintiff to take full-time leave

18 instead of extending Plaintiff's reduced work schedule leave); and

19 (ii) mislabeling some of his medical leave as "personal necessity

20 leave" instead of properly designating it FMLA/CFRA leave.  With

21 respect to the Fourteenth Amendment, Plaintiff claimed that his

22 placement on administrative leave with pay deprived him of property

23 without due process in violation of the Fourteenth Amendment.

24 Plaintiff requested injunctive relief with respect to his FMLA/CFRA

25 claim and damages with respect to his due process claim.

26       On August 8, 2009, Findings of Facts and Conclusions of Law

27 were issued on the submitted claims.  As to the FMLA/CFRA claim for

28 injunctive relief, it was determined that Plaintiff lacked standing

to assert his claim or, assuming standing existed at the time of the operative pleading, the claim had become moot.   As to the procedural due process claim, it was determined that Plaintiff's due process rights were violated.   However, to avoid double recovery, Plaintiff was awarded only nominal damages.[4]

B.   **Plaintiff's Motion**

   1.   **Liquidated Damages And Prejudgment Interest**

   On August 10, 2009, Plaintiff filed his motion for additional findings of fact and conclusions of law.   In his motion, Plaintiff ultimately requests that the court enter a "judgment for Plaintiff for FMLA liquidated damages in the amount of Plaintiff's economic damages of $505,457.00 [the total sum of the jury award], plus pre-judgment interest . . . ." (Doc. 399 at 9.)   To reach this result, Plaintiff requests that certain "additional" findings of fact and conclusions of law be made.   As to findings of fact, Plaintiff proposes that the court find as follows:

   1. Defendant County was at all relevant times aware of the prohibitions against retaliation contained in FMLA. This was established at trial by the testimony of numerous key officers of Kern Medical Center, as well as by deposition testimony excerpts that were read into the record.

   2. Per the jury's verdicts, Defendant County retaliated against Plaintiff for engaging in certain oppositional activities in violation of FMLA. See Doc. 384, p. 2.

   3. Per the jury's verdicts, such retaliation was willful. See Doc. 384, p. 3.

   4. Per the jury's verdicts, Defendant County retaliated

---

   [4]   The jury had already determined, in the jury trial portion of the case, that Plaintiff was harmed by his placement on paid administrative leave.   The jury awarded Plaintiff as much damages for this harm as the jury determined was warranted.

against Plaintiff for taking medical leave under FMLA. See Doc. 384, p. 8.

5. Per the jury's verdicts, such retaliation was willful. See Doc. 384, p. 8.

. . . .

As to the conclusions of law, Plaintiff proposes that the court conclude:

1. Defendant County's retaliations against Plaintiff, in violation of FMLA, for complaining internally about medical leave retaliation and filing a lawsuit containing claims based on FMLA, were 'willful' within the meaning of FMLA, justifying an award of liquidated damages. Defendant County did not meet its "substantial" burden of proof to show that its violations of FMLA were in good faith and based on reasonable grounds, and therefore failed to overcome the 'strong presumption' in favor of awarding liquidated damages under FMLA.

2. Defendant County's retaliations against Plaintiff, in violation of FMLA, for taking medical leave were 'willful' within the meaning of FMLA, justifying an award of liquidated damages. Defendant County did not meet its 'substantial' burden of proof to show that its violations of FMLA were in good faith and based on reasonable grounds, and therefore failed to overcome the 'strong presumption' in favor of awarding liquidated damages under FMLA.

3. Plaintiff is entitled as a matter of law to prejudgment interest from the date the right to recover vested.

4. Plaintiff is entitled to recovery of liquidated damages under FMLA in an amount equal to Plaintiff's economic damages plus pre-judgment interest at the prevailing California rate of 10%.

The County objects to Plaintiff's request for liquidated damages under the FMLA on numerous grounds, procedural and substantive. As to the former, the County contends that Plaintiff's motion was untimely filed. As to the latter, the County argues that certain damages awarded by the jury are not eligible for inclusion in an FMLA liquidated damages calculation. The County also argues that no liquidated damages can be awarded in any event under the FMLA

8

because Plaintiff advanced multiple non-FMLA theories of liability and the general jury verdict did not specify which damages were caused by the FMLA violations.   The County's opposition does not specifically address Plaintiff's request for prejudgment interest.

### 2.   Additional Briefing

Plaintiff's motion was unaccompanied by a notice of motion requesting a hearing date, and in his briefing, Plaintiff did not otherwise request a hearing.   With no hearing date requested, an opposition deadline was set by minute order.   After Plaintiff's motion was received, a minute order was entered that required "[a]ny opposition" to be submitted by August 25, 2009. (Doc. 402.) The County timely filed its opposition on August 25, 2009.   That, however, did not end the briefing.

Even though the minute order did not authorize or set a deadline for a reply brief, Plaintiff filed a reply on August 31, 2009.   Believing that Plaintiff's reply brief exposed, "for the first time, an extraordinary and fundamental defect in Plaintiff's case," the County later filed a "Special Supplemental Memorandum In Opposition To Plaintiff's Reply Memorandum."   Plaintiff rejoined with a "Sur-Reply To Defendant's Special Supplemental Memorandum In Opposition To Plaintiff's Reply Memorandum."   No further briefing was submitted.

Although no further briefing beyond an opposition was authorized by the court, given that both parties went beyond what was ordered and neither sought court approval to file their additional briefs, discretion is exercised to consider the entirety of the briefing to the extent it is helpful to resolving the issues

**9**

before the court and in the interests of justice.[5]

### III.   DISCUSSION AND ANALYSIS

**A.   Preliminary Procedural Matter – Timeliness**

In the briefing, Plaintiff claims to be moving under Rule 52(b) for additional findings of fact and conclusions of law. At the time Plaintiff's motion was filed, that section provided as follows:

> On a party's motion filed no later than 10 days after the entry of judgment, the court may amend its findings--or make additional findings--and may amend the judgment accordingly. The motion may accompany a motion for a new trial under Rule 59.

Fed. R. Civ. P. 52(b). Effective December 1, 2009, Rule 52(b) was amended. The amendment changed only the time by which the motion must be filed from no later than 10 days to "no later than 28 days after the entry of judgment."

The County argues that the "judgment" applicable to Plaintiff's motion, i.e., the judgment Plaintiff really seeks to add to or amend, is the Partial Judgment entered on June 18, 2009. According to the County, Plaintiff had until 10 days after entry of the Partial Judgment on the jury's verdicts to file his motion under Rule 52(b).[6] Plaintiff, however, waited until "seven weeks

---

[5] In the future, faithful adherence to court orders is expected.

[6] The County claims that the applicable 10-day deadline to file Plaintiff's 52(b) motion is set forth in "Rule 54(d)." (Doc. 403 at 2.) This may be a typo, but if not, the County's contention is plainly erroneous. *Rule 52(b)*, on its face, supplies the applicable deadline – 10 days under the old version of the rule, 28 days under the new version. Accordingly, there is no need, and it is improper, to resort to *Rule 54(d)* to determine the deadline by

after" to file his motion, i.e., until August 10, 2009.  On the County's reasoning, even if amended Rule 52(b) and its new 28-day time period applied, Plaintiff's motion, having been filed seven weeks after the Partial Judgment, would still be untimely.

In response, Plaintiff argues that the time period did not, and cannot, begin to run from the Partial Judgment.  According to Plaintiff, the Partial Judgment did not constitute a "judgment" under Rule 52(b) and thus did not trigger Rule 52(b).  Plaintiff's argument is confusing because, based on Plaintiff's logic, the Findings of Fact and Conclusions of Law, which adjudicated less than all the claims in the case, would also not constitute a "judgment" and would not trigger Rule 52(b).  Apart from this argument and apart from whether Plaintiff's motion was timely under Rule 52(b), a review of the substance of Plaintiff's motion reveals that it cannot be brought under Rule 52(b).

Rule 52 applies only to actions tried "without a jury or with an advisory jury." Fed. R. Civ. P. 52(a); *see also Torres v. City of Los Angeles*, 548 F.3d 1197, 1205 n.5 (9th Cir. 2008) (concluding, in a civil rights case, that Rule 52 did not apply because the "case was being tried to a jury" and thus the district court should not have issued findings of fact and conclusions of law under Rule 52 in response to a Rule 50(a) motion raising a qualified immunity defense); *Tsai v. Rosenthal*, 297 F.2d 614, 618 (8th Cir. 1961) ("Rule 52 applies only to . . . actions tried to a court without jury."). Plaintiff's motion, however, cannot be

which to file a Rule 52(b) motion.  Even if Rule 54(d) had any applicability (which it does not), there is no 10-day time limit mentioned in Rule 54(d).

regarded as requesting a mere addition to or amendment of the Findings of Fact and Conclusions of Law entered in the bench trial portion of this case.  To the contrary, Plaintiff's motion is, in substance, an attempt to supplement or augment the judgment entered on the *jury's* verdicts, i.e., to amend the Partial Judgment.

The bench trial portion of this case addressed Plaintiff's FMLA/CFRA interference claim for injunctive relief and Plaintiff's procedural due process claim.  Only nominal damages were awarded in the bench trial portion of the case, and that was only on Plaintiff's procedural due process claim.  Plaintiff's motion for additional findings of fact and conclusions of law, however, requests that the damages the *jury* awarded be augmented pursuant to the FMLA's interest and liquidated damages provisions.  In pertinent part, the FMLA provides:

> Any employer who violates section 2615 of this title shall be liable to any eligible employee affected--
>
> (A) for damages equal to--
>
>> (i) the amount of--
>>
>>> (I) any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation; or
>>>
>>> (II) in a case in which wages, salary, employment benefits, or other compensation have not been denied or lost to the employee, any actual monetary losses sustained by the employee as a direct result of the violation, such as the cost of providing care, up to a sum equal to 12 weeks (or 26 weeks, in a case involving leave under section 2612(a)(3) of this title) of wages or salary for the employee;
>>
>> (ii) *the interest on the amount described in clause (i)* calculated at the prevailing rate;

and

(iii) *an additional amount as liquidated damages equal to the sum of the amount described in clause (i) and the interest described in clause (ii)*, except that if an employer who has violated section 2615 of this title proves to the satisfaction of the court that the act or omission which violated section 2615 of this title was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of section 2615 of this title, such court may, in the discretion of the court, reduce the amount of the liability to the amount and interest determined under clauses (i) and (ii), respectively; and

(B) for such equitable relief as may be appropriate, including employment, reinstatement, and promotion.

29 U.S.C. § 2617(a)(1)(A)-(B)(emphasis added). Plaintiff' request for prejudgment interest and liquidated damages under the FMLA is premised on the theory that the damages the *jury* (not the court) awarded ($505,457) are all attributable to the FMLA violations which the *jury* (not the court) determined the County had committed. Plaintiff, in substance, seeks to supplement or amend the Partial Judgment entered on the jury's verdicts by adding to it interest and liquidated damages under the FMLA. That Plaintiff's Rule 52(b) motion is tied to the jury's verdicts, and not the bench trial portion of this case, is made pellucid by the fact that there are no FMLA damages in the Findings of Fact and Conclusions of Law from which to compute interest or liquidated damages under the FMLA.

Apart from the FMLA and its interest and liquidated damages provisions, Plaintiff seeks prejudgment interest on his supplemental state law damages claims. (Doc. 399 at 7-8.) However, these claims were tried to *the jury* (not the court). The only state law claim tried to the court sitting without a jury was

13

Plaintiff's claim under the CFRA for equitable relief. No compensatory damages were awarded on this claim on which prejudgment interest can be computed. This further establishes that Plaintiff's Rule 52(b) motion seeks to augment the Partial Judgment entered on the jury's verdicts awarding damages, not the Findings of Fact and Conclusions of Law issued in the bench trial.[7]

A review of the substance of Plaintiff's motion reveals that Plaintiff is seeking to augment, with interest and additional damages, the Partial Judgment entered on the jury's verdicts, not the Findings of Fact and Conclusions of Law issued in the bench trial. Because Rule 52 applies only to actions tried without a jury or an advisory jury, Plaintiff cannot use Rule 52(b) to alter or amend the Partial Judgment entered on the jury's verdicts. Plaintiff cannot otherwise use Rule 52 to amend the Findings of Fact and Conclusions of Law because the interest and augmented damages Plaintiff seeks arise out of the jury trial portion of this case and the jury's damage awards, not the bench trial or any bench trial damages. Rule 52(b) does not permit an amendment of the Findings of Fact and Conclusions of Law which adds interest and damages to the jury's (not the court's) damage awards. For all these reasons, Plaintiff's motion is not properly asserted under Rule 52(b).

---

[7] Plaintiff's motion does not include any request for prejudgment interest on the nominal damages awarded in the bench trial portion of this case on his procedural due process claim. This is understandable. Prejudgment interest is an element of compensatory damages. *See Osterneck v. Ernst & Whinney*, 489 U.S. 169, 175 (1989). Nominal damages, by contrast, are not compensatory in nature. They are awarded to vindicate rights. *Cummings v. Connell*, 402 F.3d 936, 942 (9th Cir. 2005).

Despite incorrectly labeling his motion as a Rule 52(b) motion, there is authority suggesting that discretion exists to treat Plaintiff's motion as one made under the appropriate rule or source of authority. *See Credit Suisse First Boston Corp. v. Grunwald,* 400 F.3d 1119, 1124 (9th Cir. 2005) (deciding to "look beyond the motion's caption to its substance" to determine whether it should be treated as a motion under Rule 59 or Rule 54) (internal quotation marks omitted)*; Craft v. Campbell Soup Co.,* 177 F.3d 1083, 1084 n.4 (9th Cir. 1999) (treating a motion for summary judgment as a *de facto* motion to compel arbitration), *abrogated on other grounds by Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001); *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 n.2 (9th Cir. 1995) (treating a motion to dismiss for lack of jurisdiction as one for failure to state a claim); *Monte Vista Lodge v. Guardian  Life Ins. Co. of Am.*, 384 F.2d 126, 129 (9th Cir. 1967) ("[A] party should not be bound at his peril to give the proper nomenclature for his motion. . . . So long as he makes a timely motion and states the grounds therefor, the court should grant relief appropriate thereto."). The question remains: under what rule or authority, if any, is Plaintiff's motion properly brought, and is Plaintiff's motion timely?

Post-trial motions for prejudgment interest are typically governed by Rule 59(e), whether the prejudgment interest is discretionary, *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 175 (1989), or mandatory, *McCalla v. Royal MacCabees Life Ins. Co.*, 369 F.3d 1128, 1131 (9th Cir. 2004). *See also Adidas Am., Inc. v. Payless Shoesource, Inc.*, No. 01-1655-KI, 2009 WL 30226, at *7 (D. Or. Feb. 9, 2009). Similarly, Rule 59(e) has been considered the

proper basis of a post-judgment motion for statutory liquidated damages. *See., e.g.*, *Reyher v. Champion*, 975 F.2d 483, 489 (8th Cir. 1992) (concluding that Rule 59(e) applied to a post-judgment motion for mandatory liquidated damages under the ADEA).  Applying Rule 59(e) in this case, however, is problematic because there is no "judgment" within the meaning of Rule 59(e) to alter or amend.

As explained in *Balla v. Idaho State Board of Corrections*,

> Rule 59(e) provides: 'A motion to alter or amend the judgment shall be served not later than 10 [now 28] days after entry of the judgment.' Fed. R. Civ. P. 59(e) (emphasis added). Rule 59(e) 'clearly contemplates entry of judgment as a predicate to any motion.' *Stephenson v. Calpine Conifers II, Ltd.*, 652 F.2d 808, 812 (9th Cir. 1981) ( Stephenson ), *overruled in part on other grounds*, *In re Washington Public Power Supply System Securities Litigation*, 823 F.2d 1349, 1350-52, 1358 (9th Cir. 1987) (en banc).
>
> The word 'judgment' as used in the Federal Rules of Civil Procedure is defined in Rule 54(a). A judgment 'includes a decree and any order from which an appeal lies.' Fed. R. Civ. P. 54(a). Thus, the word 'judgment' encompasses final judgments and appealable interlocutory orders.
>
> As we stated in *Stephenson*, the requirement of a judgment as a prerequisite to moving for reconsideration under Rule 59(e) protects against the specter of piecemeal review. *Stephenson*, 652 F.2d at 812. This is so because the denial of a Rule 59(e) motion is itself a final, appealable judgment. In *Stephenson*, we observed that 'were we to permit Rule 59(e) motions without entry of judgment, litigants could obtain appellate review of partial judgments by simply appealing a Rule 59(e) order, completely bypassing the requirements of Rule 54(b) and 28 U.S.C. § 1291.' 652 F.2d at 812.

869 F.2d 461, 466-67 (9th Cir. 1989) (citations omitted).  Here, the Partial Judgment entered on the jury's verdicts was not a final judgment or an appealable interlocutory order.  The Partial Judgement itself states that "final judgment *shall be* entered" after the conclusion of the bench trial portion of the case. (Doc. 389 at 2.)  Under Rule 54(b):

16

> When an action presents more than one claim for relief--whether as a claim, counterclaim, crossclaim, or third-party claim--or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

No party requested certification of the Partial Judgment under Rule 54(b), nor did the court determine that final judgment should be entered under Rule 54(b) or that there was no just reason for delay. Because the Partial Judgment entered on the jury's verdicts was not a final judgment or appealable interlocutory order, it was not a "judgment" under Rule 59(e). Accordingly, Rule 59(e) cannot supply the appropriate basis for Plaintiff's motion.

With respect to non-final orders, such as the Partial Judgment, the Ninth Circuit has recognized that "[a]s long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or *modify* an interlocutory order for cause seen by it to be sufficient." *City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (internal quotation marks omitted) (emphasis removed) (emphasis added). This inherent power is grounded "in the common law and is not abridged by the Federal Rules of Civil Procedure." *Id.* at 887. In addition to the inherent power to modify a non-final order, Rule 54(b) authorizes a district court to revise a non-final order "at any time before entry of a judgment adjudicating all the claims." Fed. R. Civ. P. 54(b); *see also Am.*

17

*Cas. Co. of Reading, Pa. v. Kemper*, 07-CV-1149-PHX-GMS, 2009 WL 1651284, at *2 (D. Ariz. June 12, 2009); *Am. Rivers v. NOAA Fisheries*, No. CV-04-00061-RE, 2006 WL 1983178, at *2 (D. Or. July 14, 2006).   Under Rule 54(b) a "district court can modify an interlocutory order at any time before entry of a final judgment." *Grunwald*, 400 F.3d at 1124 (internal quotation marks omitted).

The court still has jurisdiction over the case, and a final judgment adjudicating all of Plaintiff's claims has not been entered.   Accordingly, whether Plaintiff's motion is treated as appealing to the court's inherent authority to modify a non-final order, or a motion under Rule 54(b), Plaintiff's motion is timely.

As to inherent authority, a district court may reconsider and modify an "interlocutory decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of controlling law." *Abada v. Charles Schwab & Co., Inc.*, 127 F. Supp. 2d 1101, 1102 (S.D. Cal. 2001); *see also Santa Monica Baykeeper*, 254 F.3d at 885.   "But a court should generally leave a previous decision undisturbed absent a showing that it either represented clear error or would work a manifest injustice." *Abada*, 127 F. Supp. 2d at 1102 (citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988)).

Rule 54(b) does not address the standards which a court should apply when assessing a motion to modify an interlocutory order; however, courts look to the standards under Rule 59(e) and Rule 60(b) for guidance. *See Cal. Dept. of Toxic Substances Control v. Payless Cleaners,* No. CIV. S-02-2389, 2007 WL 2712172, at *2 (E.D. Cal. Sept. 14, 2007); *Am. Rivers*, 2006 WL 1983178, at *2.   "Under

18

Rule 59(e), it is appropriate to alter or amend a judgment if (1) the district court is presented with newly discovered evidence, (2) the district court committed clear error or made an initial decision that was manifestly unjust, or (3) there is an intervening change in controlling law." *United Nat'l Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 780 (9th Cir. 2009) (internal quotation marks omitted). Rule 60(b) permits a district court to provide relief from a final judgment, order or proceeding if the moving party can show: "'(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud . . . , misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.'" Fed. R. Civ. P. 60(b).

The following analysis applies these standards.

B.   **FMLA Liquidated Damages**

With respect to liquidated damages under the FMLA, Plaintiff's motion presents at least two issues. First, what amount of the damages the jury awarded are potentially eligible for inclusion in a liquidated damages computation under the FMLA? Second, with those damages identified, can Plaintiff lawfully be awarded liquidated damages under the FMLA?

1.   **Eligible Damages**

Under the FMLA, when an employer violates § 2615, the

19

aggrieved employee can recover damages equal to the amount of either: "(I) any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation; *or* (II) in a case in which wages, salary, employment benefits, or other compensation have not been denied or lost to the employee, any actual monetary losses sustained by the employee as a direct result of the violation, such as the cost of providing care, up to a sum equal to 12 weeks (or 26 weeks, in a case involving leave under section 2612(a)(3) of this title) of wages or salary for the employee." 29 U.S.C. § 2617(a)(1)(A)(i)(I)-(II) (emphasis added).   The damages figure is then used to compute interest.   The employee is entitled to interest "on the amount described in clause (i)," i.e., on the amount described in either (I) or (II), delineated above. § 2617(a)(1)(A)(ii).

Next, the damages figure and the interest are then combined to provide the liquidated damages amount.   Under the FMLA, the employee is entitled "to an additional amount as liquidated damages equal to the sum of the amount described in clause (i) and the interest described in clause (ii)." § 2617(a)(1)(A)(iii).

With respect to damages, as the County correctly argues, Plaintiff claims loss of compensation under § 2617(a)(1)(A)(i)(I). Plaintiff claims that his wrongful demotion and wrongful placement on administrative leave resulted in lost compensation on which he presented evidence at trial. (*See* Doc. 399 at 2.)   Plaintiff claims he is entitled to the "recovery of lost wages and other compensation lost as a result [of the FMLA violations] as well as liquidated damages in an equal amount plus pre-judgment interest." (Doc. 404 at 3.)   Because Plaintiff is claiming "wages, salary,

**20**

employment benefits, or other compensation denied or lost to such employee by reason of the [FMLA] violation" this case falls under § 2617(a)(1)(A)(i)(I).  As a result, Plaintiff is not entitled to FMLA damages under § 2617(a)(1)(A)(i)(II), and any damages under this section cannot be used for purposes of computing liquidated damages under the FMLA.

At trial, the jury awarded damages in the amount of $30,192 for the "[r]easonable value of necessary medical care, treatment, and services received to the present time."  This amount is not eligible for inclusion in a liquidated damages computation under the FMLA.  Assuming this damage ($30,192) resulted from an FMLA violation, this type of damage falls, if at all, under § 2617(a)(1)(A)(i)(II), not (I).  Because this is a compensation loss case under § 2617(a)(1)(A)(i)(I), the $30,192 awarded for the "[r]easonable value of necessary medical care, treatment, and services received to the present time" is not recoverable as FMLA damages.

This leaves two amounts the jury awarded that are potentially eligible for inclusion in an FMLA liquidated damages computation.  The jury awarded $321.285 for the "[r]easonable value of earnings and professional fees lost to the present time" and $154,080 for the "[r]easonable value of earnings and professional fees which with reasonable probability will be lost in the future."  With respect to the latter amount, these damages also cannot be included in an FMLA liquidated damages computation.

In February 2010, during the pendency of Plaintiff's motion, the Ninth Circuit decided *Traxler v. Multnomah County*, ___ F.3d ___, 2010 WL 669251 (9th Cir. Feb. 26, 2010).  In *Traxler*, the court

concluded that front pay under the FMLA is not a type of damage that falls under § 2617(a)(1)(A)(i)(I) or (II). Rather, an award of front pay is an "equitable remedy" available under § 2617(a)(1)(B). *Id.* at *2-5. An equitable award, like front pay, that falls under § 2617(a)(1)(B) is not eligible for inclusion in a liquidated damages computation because liquidated damages under the FMLA can only accrue from an amount awarded under § 2617(a)(1)(A)(i)(I) or (II). *See* 29 U.S.C. § 2617(a)(1)(A)(iii).

In his trial brief, Plaintiff stated that he is entitled to "front pay" under the FMLA. (Doc. 325 at 11.) At trial, Plaintiff put on evidence of his future losses through his economist, Stephanie Rizzardi, who testified that she calculated future losses based on the salary and other forms of compensation (such as professional fees) Plaintiff lost by virtue of not having his contract renewed, i.e., what he expected to receive had he remained employed with the County. Plaintiff's damages expert projected this loss out to February 2016, Plaintiff's worklife expectancy.[8] The expert also prepared a damages report, which was submitted into the evidence. (Exhibit No. 451.1-451.6.) Given the nature of Plaintiff's evidence regarding future losses, it is apparent that the $154,080 the jury awarded for the "[r]easonable value of earnings and professional fees which with reasonable probability will be lost in the future" represents an award of front pay. Accordingly, even assuming it stems from an FMLA violation, the $154,080 amount is not eligible for inclusion in a liquidated

---

[8] February 2016 is obviously a point in time well beyond the trial in this case.

damages computation under the FMLA.[9]

    2.   **Liquidated Damages**

    Under the FMLA, interest and liquidated damages are keyed to the amount of damages under § 2617(a)(1)(A)(i)(I) or (II).  Because this is a compensation loss case under § 2617(a)(1)(A)(i)(I), Plaintiff is entitled to interest on "any wages, salary, employment benefits, or other compensation denied or lost to such employee *by reason of* the violation," § 2617(a)(1)(A)(i)(I) (emphasis added). *See* § 2617(a)(1)(A)(ii).   Plaintiff is also entitled to an additional amount as "liquidated damages" equal to the sum of "any wages, salary, employment benefits, or other compensation denied or lost to such employee *by reason of* the violation," § 2617(a)(1)(A)(i)(I) (emphasis added), and the interest on that amount. *See* § 2617(a)(1)(A)(iii).

    When an employee has been damaged by reason of an FMLA violation, "[l]iquidated damages are awarded presumptively to [the] employee . . . unless the employer demonstrates that its violation was in good faith and that it had a reasonable basis for believing that its conduct was not in violation of the FMLA." *Cooper v. Fulton County, Ga.*, 458 F.3d 1282, 1287 (11th Cir. 2006); *see also Traxler*, 2010 WL 669251 at *5 (stating that an FMLA violation subjects an employer to liquidated damages unless the employer can prove that its employment action was taken in 'good faith' and that it had 'reasonable grounds for believing that [its action] was not a violation'") (alteration in original) (quoting §

───────────

    [9] Even if this amount could be included in a liquidated damages computation, this would not change the result.

2617(a)(1)(A)(iii)).  **Under the statute, whether the employer acted in good faith and had a reasonable basis for believing that its conduct was not in violation of the FMLA are determinations made by the *court*.  *See* § 2617(a)(1)(A)(iii) (providing that liquidated damages are to be awarded except that, when the employer "proves to the satisfaction of the *court* that the act or omission which violated section 2615 of this title was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of section 2615 of this title, such court may, in the discretion of the court, reduce the amount of the liability . . . .") (emphasis added).  At trial, however, the *jury* determined that the County's FMLA violations were "willful," meaning, for purposes of trial, that the "County failed to act in good faith and lacked reasonable grounds to believe that its actions complied with the FMLA." (Doc. 386 at 17.)  It does not appear that the court has any discretion to depart from these jury determinations. *See Morgan v. Family Dollar Stores, Inc.,* 551 F.3d 1233, 1282-83 (11th Cir. 2008); *Arban v. West Publ'g Corp.*, 345 F.3d 390, 408 (6th Cir. 2003); *Brinkman v. Dep't of Corr.*, 21 F.3d 370, 372-73 (10th Cir. 1994).  Even if such discretion existed, there is no reason to ignore, or to decline to adopt, the jury's determinations.  However, regardless of the "willful" nature of the FMLA violations, the threshold inquiry in this case is whether any damages the jury awarded are damages that occurred "*by reason of,*" § 2617(a)(1)(A)(i)(I), an FMLA violation.**

**The County contends that Plaintiff is not entitled to liquidated damages under the FMLA because there is no way of**

**24**

knowing whether the lost compensation the jury awarded (the $321.285 and the $154,080 amounts)[10] represent damages attributable to an FMLA violation.  Plaintiff advanced multiple FMLA and non-FMLA theories of liability at trial, and the jury did not differentiate its damages and specify whether the damages it awarded were attributable to an FMLA violation or something else.  The County's argument is persuasive.

The words "by reason of" are synonymous with "because of." *See Gross v. FBL Fin. Servs., Inc.*, __ U.S.__, 129 S. Ct. 2343, 2350 (2009).  Reviewing the jury instructions and the jury verdict, it cannot be concluded that the damages the jury awarded were because of an FMLA violation.

As to damages, the jury was instructed that "[i]f you find for the plaintiff on *any* of the plaintiff's claims, you must determine the plaintiff's damages.  The plaintiff has the burden of proving damages by a preponderance of the evidence.  Damages means the amount of money that will reasonably and fairly compensate the plaintiff for any injury caused by the defendant." (Doc. 386 at 29) (emphasis added.)  In the jury verdict form, the question pertaining to damages states: "If you have found that *any* discrimination or retaliation by Kern County was the cause of damage to Dr. Jadwin on *any* of his claims, what damages do you award." (Doc. 384 at 29) (emphasis added.)  The instructions and the verdict form did not require the jury to specify what amount of damages, if any, was attributable to any FMLA violation.  The jury

---

[10]  The County appears to include both amounts in its analysis.

was permitted to award damages on *any* of Plaintiff's claims based on *any* discrimination or retaliation – FMLA or non-FMLA – they found caused Plaintiff damage.   The use of the general undifferentiated verdict form makes it impossible to determine whether the damages the jury awarded were based on an FMLA violation or some other non-FMLA violation.

In *Lilley v. BTM Corp.*, 958 F.2d 746, 753 (6th Cir. 1992) a jury returned a general verdict in favor of the plaintiff on an age discrimination claim and a retaliatory discharge claim.   The jury also reached a general verdict on the issue of willfulness.   In reviewing the jury verdict regarding willfulness, the court stated: "Since the . . . jury returned a general verdict, it is impossible to determine whether its finding [of willfulness] pertained solely to the retaliatory discharge claim, solely to the discrimination claim, or to both." *Id*; *see also Jones v. Miles*, 656 F.2d 103, 106 (5th Cir. 1981) ("Because only a general verdict was returned . . . it is impossible to tell which theory of liability was adopted by the jury . . . .").

Similarly here, it is impossible to determine from the general damages verdict form whether the damages the jury awarded pertain solely to an FMLA violation, solely to a non-FMLA violation (e.g., a FEHA violation), or to both.   The jury could have believed that the County's failure to engage in an interactive process with Plaintiff (a FEHA violation), its failure to provide Plaintiff with a reasonable accommodation (a FEHA violation), and its discrimination against Plaintiff based on his mental disability (also a FEHA violation), sealed Plaintiff's fate with the County

and caused the damages which the jury awarded.  Given the general

verdict, it cannot be ascertained that the damages the jury awarded

were because of an FMLA violation.

     Plaintiff argues that the failure to specifically allocate the

damages "across Plaintiff's claims" is not fatal to his entitlement

to liquidated damages.  Plaintiff argues that he has

> asserted various theories of liability arising from the
> same set of employment actions.  These theories of
> liability are therefore overlapping and redundant as to
> the same set of damages arising from the same set of
> adverse employment actions. In other words, the fact that
> Plaintiff prevailed on his Medical Leave Retaliation
> claim, disability discrimination claims, and procedural
> due process violation claim simply means there are
> alternative theories of liability for recovering the same
> damages.   To require allocation of damages across
> redundant and overlapping claims, as Defendants suggests,
> would be reversible error.

(Doc. 404 at 2.)  For at least a couple of reasons, Plaintiff's

argument is unpersuasive.

     First, an allocation of damages across "redundant and

overlapping claims" has been and can be done by asking the jury to

specify the claims on which they award damages and the amount.  For

example, in *Mangold v. California Public Utilities Commission*, 67

F.3d 1470, 1477 (9th Cir. 1995), plaintiffs Maurice Crommie and

Arthur Mangold pursued redundant and overlapping claims against the

California Public Utilities Commission under the ADEA, the FEHA,

and California common law.  The jury's verdict awarded damages

separately under each claim, as follows:

ADEA Federal Law
Damages:
Mr. Crommie
Loss of earnings                         $63,460
and Benefits:
Liquidated                               $63,460

27

**Damages:**

| | |
|---|---|
| Mr. Mangold | |
| Loss of earnings and Benefits: | $65,462 |
| Liquidated Damages: | $65,462 |

**FEHA State Law Damages:**

| | |
|---|---|
| Mr. Crommie | |
| Loss of earnings and Benefits: | $63,460 |
| Emotional Distress: | $25,000 |
| Mr. Mangold | |
| Loss of earnings and Benefits: | $68,590 |
| Emotional Distress: | $30,000 |

**California Law, Wrongful Employment Action in Violation of Public Policy:**

| | |
|---|---|
| Mr. Crommie | |
| Loss of earnings and Benefits: | $63,460 |
| Emotional Distress: | $25,000 |
| Mr. Mangold | |
| Loss of earnings and Benefits: | $68,590 |
| Emotional Distress: | $30,000 |

*Id.* at 1477 (emphasis added).  In discussing the jury verdict, the Ninth Circuit noted that "since the Plaintiffs could not obtain double recovery, the court entered judgment in favor of Mr. Crommie for $88,460 ($63,460 loss of earnings plus $25,000 emotional distress under FEHA) and $63,460 liquidated damages under ADEA. Similarly, it awarded Mr. Mangold $98,590 ($68,590 loss of earnings plus $30,000 emotional distress under FEHA) and $65,462 liquidated damages under ADEA." *Id.* at 1478-79.  The Ninth Circuit raised no objection to the style of the jury verdict which allocated damages separately across redundant and overlapping claims.

Similarly, in *Farrell v. Tri-County Metropolitan Transportation District*, 530 F.3d 1023, 1024 (9th Cir. 2008),

plaintiff Frank Farrell pursued multiple claims under the FMLA and Oregon's Family Leave Act ("OFLA").  Although FMLA and OFLA claims were submitted to the jury, the jury awarded plaintiff $1,110 in lost wages specifically under the FMLA.

Here, Plaintiff submitted redundant and overlapping claims to the jury, but the jury did not award damages specifically under the FMLA or the FEHA (or the CFRA).  Contrary to what Plaintiff argues, it would have not been "reversible error" to require the jury to allocate damages across Plaintiff's redundant and overlapping claims.  Following Ninth Circuit precedent, Plaintiff could have opted for the approach taken in *Mangold* and *Farrell* and utilized a verdict form which segregated the damages under each of his claims. The verdict form which Plaintiff requested (Doc. 348 at 122; Doc. 377 at 109) and the parties ultimately agreed upon,[11] however, did not segregate damages between Plaintiff's claims.  The court was under no duty, in this civil case, to *sua sponte* recommend a different verdict form.

Even though, under the FMLA, there is a presumption in favor of liquidated damages, this presumption only operates when the requisite foundation — an award of damages under the FMLA — exists. Given the general verdict in this case, whether or to what extent the damages the jury awarded were based on an FMLA violation cannot be determined.  In addition, without knowing whether or to what

---

[11] In Plaintiff's Sur-Reply, Plaintiff acknowledges that "the parties had expressly agreed to use of a single verdict question on the damages" and that the County "agree[d]" to the "'undifferentiated jury verdict.'" (Doc. 406 at 1.)

extent the damages the jury awarded were based of an FMLA violation, any award of liquidated damages under the FMLA runs the risk of improperly doubling the amount the jury may have exclusively awarded on Plaintiff's non-FMLA claims.   For these reasons, Plaintiff's request for an award of liquidated damages under the FMLA cannot be granted.   Whether construed as a motion directed to the court's inherent authority to modify a non-final order or a motion under Rule 54(b), Plaintiff's request for liquidated damages under the FMLA is DENIED.

**B.   Prejudgment Interest**

Unlike his request for liquidated damages, Plaintiff's request for prejudgment interest applies to all of his claims submitted to the jury.   In theory, prejudgment interest is available on Plaintiffs FMLA claims, 29 U.S.C. § 2617(a)(1)(A)(ii), as well as his state law claims under the FEHA and the CFRA, Cal. Civ. Code § 3287(a).   Because prejudgment interest is theoretically available on all of Plaintiff's claims submitted to the jury, the fact that the jury did not specifically allocate the damages among Plaintiff's various claims does not outright preclude an award to Plaintiff for prejudgment interest.   Plaintiff's request for prejudgment interest is, however, problematic.

**1.   Prejudgment Interest**

**a.   FMLA**

Under the FMLA, an employee is entitled to interest, "calculated at the prevailing rate," 29 U.S.C. § 2617(a)(1)(A)(ii), on the amount of "any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the

[FMLA] violation," § 2617(a)(1)(A)(i)(I). *See* § 2617(a)(1)(A)(ii). The FMLA does not define the term "prevailing rate." Several federal courts have used state law interest rates as the "prevailing rate." *Finnerty v. Wireless Retail, Inc.*, No. 2:04-cv-40247, 2009 WL 256855, at *3 (E.D. Mich. Aug. 18, 2009); *Thom v. Am. Standard, Inc.*, No. 3:07 CV 294, 2009 WL 961182, at *6 (N.D. Ohio Apr. 8, 2009); *Hite v. Vermeer Mfg. Co.*, 361 F. Supp. 2d 935, 949 (S.D. Iowa 2005), *aff'd*, 446 F.3d 858 (8th Cir. 2006).

Here, the jury did not specifically allocate the amount of damages attributable to an FMLA violation, making it impossible to select any amount on which to award prejudgment interest exclusively under the FMLA. The only amount on which prejudgment interest could be theoretically awarded under the FMLA is the $321.285 the jury awarded for the reasonable value of earnings and professional fees lost to the present time. As to the other amounts, because this is a compensation loss case under § 2617(a)(1)(A)(i)(I), the jury's award of $30,192 for the "[r]easonable value of necessary medical care, treatment, and services received to the present time" is not recoverable as damages under the FMLA and, by extension, interest could not be awarded on this amount under the FMLA. Because the $154,080 the jury awarded for the "[r]easonable value of earnings and professional fees which with reasonable probability will be lost in the future" represents an award of front pay, this amount falls under § 2617(a)(1)(B) and could not be included in a prejudgment interest computation under § 2617(a)(1)(A)(ii).

      b.   <u>California law</u>

1   With respect to Plaintiff's state law claims, "a federal court

2   exercising supplemental jurisdiction over state law claims is bound

3   to apply the law of the forum state to the same extent as if it

4   were exercising its diversity jurisdiction." *Bass v. First Pac.*

5   *Networks, Inc.*, 219 F.3d 1052, 1055 n.2 (9th Cir. 2000); *see also*

6   *Mangold*, 67 F.3d at 1478 ("The *Erie* principles apply equally in the

7   context of pendent jurisdiction.").   Pursuant to *Erie* principles,

8   (*Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938)), "federal

9   courts sitting in diversity apply state substantive law and federal

10   procedural law." *In re Larry's Apartment, L.L.C.*, 249 F.3d 832, 837

11   (9th Cir. 2001) (internal quotation marks omitted).   Prejudgment

12   interest is substantive for *Erie* purposes. *In re Exxon Valdez*, 484

13   F.3d 1098, 1101 (9th Cir. 2007).   This makes California law

14   applicable to prejudgment interest on Plaintiff's state law claims.

15   As to his state law claims, citing *Currie v. Workers' Comp.*

16   *Appeals Board*, 24 Cal. 4th 1109, 1115 (2001) and California Civil

17   Code § 3287(a), Plaintiff argues that "in an action to recover

18   backpay, interest is recoverable on each salary or pension payment

19   from the date it was due." (Doc. 399 at 8.)   *Currie* determined

20   that, pursuant to California Civil Code § 3287, prejudgment

21   interest could be recovered on a backpay amount awarded to a

22   plaintiff who was wrongfully denied reinstatement.   There, the

23   employer's refusal to reinstate the plaintiff violated California

24   Labor Code § 132a.

25   California Civil Code § 3287(a) provides:

26   Every person who is entitled to recover damages certain,
   or capable of being made certain by calculation, and the
27   right to recover which is vested in him upon a particular

28

32

day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt. This section is applicable to recovery of damages and interest from any such debtor, including the state or any county, city, city and county, municipal corporation, public district, public agency, or any political subdivision of the state.

*Currie* supports Plaintiff's position that, if any backpay the jury awarded was for a FEHA/CFRA violation, Plaintiff can obtain prejudgment interest on this amount under § 3287(a). Under California law, the applicable prevailing prejudgment interest rate appears to be seven percent per annum. *Pro Value Properties, Inc. v. Quality Loan Service Corp.*, 170 Cal. App. 4th 579, 582 (2009); *see also Michelson v. Hamada*, 29 Cal. App. 4th 1566, 1585 (1994).[12]

Plaintiff's reliance on *Currie* and California Civil Code § 3287(a) is nevertheless problematic because, even assuming any backpay awarded in this case is linked to a FEHA/CFRA violation, the jury awarded backpay in one lump sum – $321,285 – without specifying which particular adverse employment action(s) caused what amount of backpay damages. Because this case involves multiple adverse employment actions that occurred at different points in time – not just a one-time wrongful denial of reinstatement as in *Currie* – the generalized backpay award makes it difficult to compute prejudgment interest.

Under California Civil Code § 3287(a), Plaintiff can, in theory, recover prejudgment interest on backpay awarded to him. This interest runs from the day the right to recover the backpay

---

[12] Plaintiff cites no authority for the proposition that the prevailing California rate is ten percent per annum.

1  "vested in him." § 3287(a).  The jury's verdict does not, however,

2  specify the particular adverse employment action(s) on which they

3  based their backpay award, nor the amount of backpay attributable

4  to any particular adverse employment action(s), making it difficult

5  to determine when Plaintiff's entitlement to any discrete amount of

6  the awarded backpay "vested in" Plaintiff.  In this case, at least

7  three adverse employment actions that *could* have lead to an award

8  of backpay are Plaintiff's wrongful removal from his position as

9  Chair of the Pathology Department, his wrongful placement on

10  administrative, and the wrongful non-renewal of his contract, all

11  of which occurred on different dates (July 2006, December 2006, and

12  October 2007 respectively).  To the extent the $321,285 the jury

13  awarded consists of backpay damages caused by these different

14  events, what amount of backpay did the jury attribute to each

15  event?  The current state of the briefing does not adequately

16  address these issues and prejudgment interest cannot be computed at

17  this time.

18  Whether construed as a motion directed to the court's inherent

19  authority to modify a non-final order or a motion under Rule 54(b),

20  Plaintiff's request for prejudgment interest is DENIED WITHOUT

21  PREJUDICE.

22  //

23  //

**34**

**IV.  CONCLUSION**

For the reasons stated:

1.   Plaintiff's motion for liquidated damages under the FMLA is DENIED.

2.   Plaintiff's motion for prejudgment interest is DENIED WITHOUT PREJUDICE.


SO ORDERED
Dated: March 31, 2010

<u>/s/ Oliver W. Wanger</u>
Oliver W. Wanger
United States District Judge